UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAY GLENN,

      Plaintiff,

- against -

THOMAS FORTUNE FAY,
FAY LAW GROUP, P.A.,
STEVEN R. PERLES, and
PERLES LAW FIRM, P.C.,

      Defendants.

Case No. 16-cv-_____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Jay Glenn ("Glenn"), by his undersigned counsel, as and for his Complaint against Defendants herein, alleges as follows:

## NATURE OF ACTION

1. This is a breach of contract action against the lead attorneys for plaintiffs in the action captioned *Peterson v. Islamic Republic of Iran*, Case Nos. 01-cv-2094, 01-cv-2684 (RCL), an action commenced by Marine Barracks bombing victims and their relatives against Iran which was brought in this district.

2. Fay & Perles (defined below), as lead attorneys for the *Peterson* plaintiffs, engaged Glenn as associate counsel in 2003 and agreed to pay him, from the fees awarded to and received by Fay & Perles, the equivalent of 3% of amounts collected on behalf of 103 plaintiffs who were awarded judgments totaling over $309 million as a result of Glenn's efforts, plus 11.11% of amounts collected on behalf of 40 of the plaintiffs introduced by Glenn and who entered into Contingent Retainer Agreements with Glenn (signing both individually and on behalf of Fay & Perles), and who were awarded judgments totaling approximately $112 million.

3. Despite the fact that Glenn fulfilled all of his responsibilities in 2007, when judgments were entered in the *Peterson* action in favor of plaintiffs represented by Glenn, the lead attorneys repudiated their payment obligations to Glenn.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff Glenn is an attorney admitted in Illinois and is a citizen of South Carolina.

7. Defendant Thomas Fortune Fay ("Fay") is an attorney and a citizen of Maryland. Fay is responsible for debts incurred by Fay & Perles.

8. Defendant Fay Law Group, P.A. (f/k/a Fay Kaplan Law, P.A.) ("Fay Law Group") is a law firm whose principal is Fay and whose principal place of business is located in this district. Fay Law Group is a successor to and is responsible for debts incurred by Fay & Perles.

9. Defendant Steven R. Perles ("Perles") is an attorney and a citizen of this district. Perles is responsible for debts incurred by Fay & Perles.

10. Defendant Perles Law Firm, P.C. ("Perles Law Firm," and together with Fay, Fay Law Group, and Perles, the "Defendants") is a law firm whose principal is Perles and whose principal place of business is located in this district. Perles Law Firm is a successor to and is responsible for debts incurred by Fay & Perles.

## BACKGROUND

11. Fay and Perles, who formerly worked together in a partnership known as "Fay & Perles," are lead counsel for the *Peterson* plaintiffs.

12. On May 30, 2003, Judge Royce C. Lamberth entered a default judgment against the defendants in the *Peterson* action as to all issues of liability. The judgment directed that all damages claims be submitted to court-appointed Special Masters, whereupon the court would enter judgment as to each compensatory damages claim following receipt and consideration of reports and recommendations from the Special Masters.

13. Subsequently, Fay & Perles and Glenn entered into an Agreement, dated June 13, 2003 and prepared by Fay & Perles on their letterhead (the "Associate Counsel Agreement"). The agreement:

(a) acknowledged that Fay & Perles would be paid, as their fee, one-third of any recovery by the *Peterson* plaintiffs with whom they had executed Contingent Retainer Agreements;

(b) provided that Fay & Perles agreed to employ Glenn as associate counsel to prove compensatory damages to a Special Master on behalf of certain plaintiffs that had engaged Fay & Perles; and

(c) provided that Glenn would be paid the following from the fees collected by Fay & Perles:

(1) 3% of the gross amount collected from the defendants with respect to compensatory damages as to each client referred to Associate Counsel [by Fay & Perles]; and

(2) an amount equal to the necessary expenses incurred by Associate Counsel in the preparation, prosecution, and administration of the case.

A copy of the Associate Counsel Agreement is attached hereto as Exhibit 1.

14. Fay & Perles ultimately referred 63 plaintiffs to Glenn to represent in damages proceedings before a Special Master.

15. During the course of Glenn's representation, meetings, and discussions with the foregoing plaintiffs, Glenn became aware of additional potential plaintiffs, all relatives of Marine Barracks bombing victims, with whom Fay & Perles (or any other attorneys) had not entered into Contingent Retainer Agreements.

16. After advising Fay that Glenn believed there were additional potential plaintiffs who might retain Fay & Perles, Fay and Glenn orally agreed that if Glenn were to engage additional plaintiffs, he would be paid one-third of the contingent fee received by counsel on such additional plaintiffs' behalf (the "Additional Fee Agreement"), on top of the 3% contingent fee plus expenses payable to Glenn under the Associate Counsel Agreement for representing such additional plaintiffs in damages proceedings before the Special Master.

17. Thereafter, Glenn entered into Contingent Retainer Agreements, both on behalf of Fay & Perles and individually, with 40 additional plaintiffs.

18. Prior to executing each such agreement, Glenn explained to each additional plaintiff that one-third of the contingent fee they were agreeing to pay counsel would go to Glenn, and each additional plaintiff consented to Glenn's being paid that amount from any recovery collected on his or her behalf.

19. The substance of the Additional Fee Agreement was confirmed in numerous writings to Fay. First, following Glenn's entry into a Contingent Retainer Agreement with each additional plaintiff, Glenn transmitted an executed of the copy of the same to Fay, together with a cover letter confirming that the client was referred by Glenn.

20. Second, following Glenn's entry into each Contingent Retainer Agreement with the relatives of a Marine Barracks bombing victim, Glenn completed a Family Information Sheet indicating client names and family relationship with the victim, and transmitted the same to Fay, together with a letter which provided:

> I located and executed Attorney Client Contracts for [names indicated on Family Information Sheet]. **In accordance with prior discussions, I am entitled to an additional contingent fee of 11.11% of any recovery/interest for these [__] claims.**

Fay & Perles never objected to or questioned Glenn's entitlement to that fee.

21. Third, following the Special Master's entry of a report and recommendation for each Marine Barracks bombing victim and his relatives that Glenn represented, Glenn transmitted a copy of the same to Fay, together with a cover letter indicating the calculation of his fee under both the Associate Counsel and Additional Fee Agreements, and Fay & Perles never objected.

22. On September 7, 2007, Judge Lamberth entered default judgments in favor of the plaintiffs Glenn represented in the amounts provisionally awarded in the Special Master's reports and recommendations (over $309 million). Thus, as of that date his responsibilities as damages attorney were completed. Nevertheless, Glenn was advised by Fay in 2010 that Glenn would not be paid any amount under the Associate Counsel or Additional Fee Agreements.

23. On July 9, 2013, Judge Katherine B. Forrest entered an order in the action captioned *Peterson v. Islamic Republic of Iran*, Case No. 10-cv-4518 (KBF) (S.D.N.Y.) (the "Turnover Action") directing the turnover of approximately $1.9 billion seized from Bank Markazi (a/k/a Central Bank of Iran) to a qualified settlement fund (the "QSF Trust") established for the benefit of certain plaintiffs holding judgments against Iran, including the *Peterson* plaintiffs.

24. On June 6, 2016, an order was entered in the Turnover Action authorizing the distribution of funds from the QSF Trust.

25. Distributions to the *Peterson* plaintiffs (including plaintiffs represented by Glenn) from the QSF Trust have commenced, but no distribution has been made to Glenn to date.

## COUNT I
### (Breach of Contract)

26. Glenn realleges and incorporates by reference the allegations in the preceding paragraphs as if set forth again in full herein.

27. Glenn, on behalf of himself, and Fay, on behalf of Fay & Perles, entered into the Associate Counsel and Additional Fee Agreements.

28. Glenn fully performed his obligations under the Associate Counsel Agreement, and procured judgments on behalf of *Peterson* plaintiffs represented by him totaling over $309 million. In addition, Glenn fully performed under the Additional Fee Agreement, and referred 40 additional clients to Fay & Perles who had not previously engaged counsel in the *Peterson* action, which plaintiffs were awarded judgments as a result of Glenn's efforts totaling approximately $112 million. Pursuant to these agreements, Glenn is entitled to receive from the fees to be received by Defendants an amount equivalent to 3% of amounts collected on behalf of *Peterson* plaintiffs represented by him, 11.11% of amounts collected on behalf of the above-referenced 40 additional plaintiffs, and $15,289 in reimbursable expenses.

29. Defendants breached the Associate Counsel and Additional Fee Agreements by failing to remit to Glenn his contingent fee award plus expenses from distributions made from the QSF Trust to Fay & Perles with respect to the *Peterson* plaintiffs represented by Glenn.

30. Glenn has suffered damages in an amount to be determined at trial.

## COUNT II
### (Quantum Meruit)

31. Glenn realleges and incorporates by reference the allegations in the preceding paragraphs as if set forth again in full herein.

32. Glenn provided valuable legal services to Fay & Perles by serving as damages attorney for 103 plaintiffs for whom Fay & Perles served (and Defendants serve) as lead counsel in the *Peterson* action.

33. Fay & Perles accepted and benefited from the legal services provided by Glenn.

34. Glenn advised Fay & Perles (and Defendants) that he expected to be paid for such legal services when fees were received by Fay & Perles.

35. To date, Defendants have not paid Glenn for any legal services rendered by him.

36. As a result, Defendants have been unjustly enriched by receipt and enjoyment of legal services without payment and for which payment was expected and requested, the value of which shall be determined at trial.

WHEREFORE, Glenn seeks a judgment against Defendants jointly and severally in the amount due to Glenn under the Associate Counsel and Additional Fee Agreement, together with prejudgment interest and costs and such other and further relief as this Court deems just and proper.

Dated: December 22, 2016                    STORCH AMINI PC

                                            By: /s/ Bijan Amini
                                                Bijan Amini
                                            140 East 45th Street, 25th Floor
                                            New York, New York 10017
                                            Tel: (212) 490-4100
                                            Fax: (212) 490-4208
                                            bamini@samlegal.com

                                            *Attorneys for Plaintiff Jay Glenn*