JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CIV 8287

------------------------------------------------------------x

JAY GLENN,

                         Plaintiff,                                  COMPLAINT

    -against-

THOMAS FORTUNE FAY, STEVEN R. PERLES
and FAY & PERLES,

                         Defendants.

------------------------------------------------------------x

      Plaintiff Jay Glenn ("Glenn"), by his attorney Daniel Cobrinik, hereby commences this civil action against Defendants Thomas Fortune Fay ("Fay"), Steven R. Perles, Esq., ("Perles") and Fay & Perles ("F&P") for legal fees owed in connection with Glenn's legal work on civil lawsuits. The lawsuits all arise from the 1983 bombing of the United States Marine barracks in Beirut Lebanon (the "Beirut Bombing"). In support of his action, Plaintiff Glenn alleges as follows:

## JURISDICTION AND VENUE

    1.    Glenn is a resident of the State of Illinois, with his residence address at 27148 West Lakeview Drive South, Lake Barrington, Illinois 60084.

    2.    Defendant Fay is a resident of Silver Spring, Maryland, with his residence address located at 2048 Merrifields Drive, Silver Springs, Maryland 20906.

    3.    Upon information and belief, defendant Perles is a resident of Florida, but maintains his business address at 1146 19th Street, N.W., 5th Floor, Washington, D.C. 20036.

1

4. On information and belief, defendant F&P is a partnership with its place of business located at 777 6th Street N.W., Suite 410, Washington, D.C. 20001.

5. The amount in controversy in this case exceeds Seventy Five Thousand Dollars ($75,000.00).

6. There is complete diversity of citizenship between the parties.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8. Venue is proper in this Court based on the fact that many of the acts complained of took place here.

9. Glenn seeks to assert a charging lien in New York, where the fees which he seeks to lien are being collected by Defendants.

**PARTIES**

10. Glenn is an attorney admitted to practice law in the State of Illinois and engaged in the practice of law in Illinois.

11. Defendant Fay is an attorney admitted to practice law in the District of Columbia, and engaged in the practice of law in the District of Columbia.

12. Defendant Steven R. Perles is an attorney admitted to practice law in the District of Columbia, and is engaged in the practice of law in the District of Columbia.

13. Defendant F&P is a partnership engaged in the practice of law in the District of Columbia.

14. On information and belief, Defendants Fay and Perles are the only partners in F&P.

## **THE 1983 BEIRUT MARINE CORPS BOMBING LITIGATION**

15. In 1983 terrorists attacked the United States military barracks in Beirut, Lebanon, killing more than 200 Americans and causing many others to suffer horrific injuries (the "Beirut Bombing").

16. Numerous legal actions (the "Beirut Bombing Actions") were commenced against the government of Iran ("Iran") on behalf of the estates of the marines who were killed, the surviving marines and the widows, children, parents and siblings of marines who were killed in the Beirut Bombing.

17. The aforementioned actions were brought under the state sponsored terrorism exception to the Foreign Sovereign Immunities Act.

18. The Beirut Bombing Actions alleged that Iran masterminded the Beirut Bombing, and sought damages from Iran.

19. Starting in or about 2001 Defendant F&P was retained by certain relatives of the Beirut Bombing victims to prosecute their claims (the "F&P Plaintiffs") against Iran in the Beirut Bombing Actions.

20. On or about October 2, 2001, F&P filed Case No. 1:2001-cv-02094 entitled Peterson, et al. v. Islamic Republic of Iran, in the United States District Court for the District of Columbia, and on December 28, 2001 F&P filed a second case entitled Boulos, et al. v. Islamic Republic of Iran, (collectively referred to herein as the "Peterson Actions") on behalf of those victims of the Beirut Bombing who had retained F&P.

## THE AGREEMENT BETWEEN GLENN AND DEFENDANTS

### The Legal Services Fee Agreement

21. Defendants' retainer agreements with their clients in the Peterson Action provided that F&P was to receive a contingent legal fee equal to Thirty Three and One Third Percent (33 1/3%) of any recovery for those plaintiffs.

22. In or about 2001, Defendants retained Glenn as Associate Counsel in the Peterson Action.

23. Defendants asked Glenn to try the damages phase of the Peterson Action before a special master.

24. Because Glenn was not admitted to the bar of the District of Columbia, F&P moved for his admission pro hac vice, so that Glenn could try the damages portion of the Peterson Action.

25. Glenn has known the Fay family for 50 years, and Fay has been Glenn's brother-in-law since 1967.

26. In light of this long family relationship, Glenn trusted Fay implicitly.

27. Defendants Fay and Perles did not know when or whether they would ever collect a judgment against Iran in the Peterson Action.

28. On information and belief, Fay and Perles did not want to pay any of the attorneys who worked with them on the Peterson Action on an hourly basis, because they did not have any money coming in from the case. All of the attorneys who worked with defendants on the Peterson Action – including Glenn -- agreed to payment on a contingency basis.

29. In June, 2003, Defendants offered to pay Glenn Three Percent (3%) of any damages which he proved and which were recovered on behalf of the plaintiffs in the Peterson Action (the "Legal Services Fees").

30. Glenn accepted Defendants' offer.

31. On or about June 13, 2003, Glenn signed an Agreement (the "Legal Services Contract", Exhibit A hereto), which provided in pertinent part that Glenn would be paid Three Percent (3%) of any damages which he proved and which Defendants' clients recovered in the Peterson Case.

32. Fay and Perles delivered a fully executed copy of the Agreement (Exhibit A) to Glenn four years later, on or about June 23, 2007, thereby acknowledging in writing their agreement to pay Glenn Three Percent (3%) of any damages which he proved and which were recovered on behalf of plaintiffs in the Peterson Action.

**The Legal Referral Fees Agreement**

33. After starting work on the Peterson Action, Glenn realized that defendants had failed to identify all the potential plaintiffs who they should have joined in the Peterson Action.

34. Glenn located additional plaintiffs with claims against Iran (the "Glenn Plaintiffs").

35. Glenn offered to identify such additional potential clients for F&P, if F&P would pay him a standard referral fee equal to one third of F&P's contingency fee.

36. Beginning in or about 2003 and continuing to March, 2010, Fay told Glenn numerous times that F&P would pay Glenn a standard referral fee equal to Thirty

Three and One Third (33 1/3%) of any legal fee F&P earned for each such Plaintiff that Glenn referred to F&P (the "Legal Referral Fees").

37. Based on this promise and subsequent correspondence to his brother-in-law Fay, Glenn referred Forty (40) plaintiffs to F&P.

38. All of these Glenn Plaintiffs were joined in the Peterson Action, and became F&P Plaintiffs as a result of Glenn's work.

39. Glenn submitted the Special Master recommendations to Fay and F&P and each transmittal specified the Special Master's recommendation and projected Fees, both the Damage Attorney Award and Referral Fees.

## **THE PETERSON ACTION**

40. In March 2003, The U.S. District Court for the District of Columbia conducted a trial to determine the liability of Iran in the Peterson Action, and the amount of the damages to be awarded to the families of the victims of the Beirut Bombing.

41. Glenn was instrumental in proving the damages suffered by the plaintiffs 103 of the plaintiffs in the Peterson Action.

42. As a result of Glenn's work, and the work of other attorneys, the court issued a judgment holding Iran liable to the plaintiffs in the Peterson Action for compensatory damages totaling $2,656,944,877.00.

43. No punitive damages were awarded in the Peterson Case.

44. The judgment in the Peterson Case is now final and non-appealable.

**THE SUBSEQUENT PETERSON COLLECTION ACTIONS**

45. On information and belief, in 2008, F&P initiated numerous collection actions against Iran (the "Peterson Collection Actions").

46. On information and belief, two Peterson Collection Actions are now pending in the Southern District of New York, and Peterson has been joined as a necessary party in a third proceeding.

47. Glenn provided information to F&P which led to two collection actions against Iran in the Northern District of Illinois,

48. On March 18, 2008, F&P commenced proceedings in the Northern District of Illinois Case #:1:08-cv-0152 entitled Deborah D. Peterson, et al. v. Islamic Republic of Iran, et al v. Garnishee Field Museum of Natural History, Garnishee The University of Chicago. This case is now on appeal before the 7thd Circuit Court of Appeals 08-2764.

49. Glenn served as local counsel for the Illinois Peterson Collection Cases until Fay terminated him in 2009.

50. On information and belief, the Peterson Collection Actions sought to satisfy the judgment in the Peterson Action from Iran's secret bank accounts in American banks, and from other assets belonging to Iran but located in the United States.

51. On information and belief, as a result of the Peterson Collection Actions, more than Two Billion Dollars ($2,000,000,000.00) in assets belonging to Iran have been frozen to pay damages to the Peterson Action plaintiffs, and to pay attorneys' fees for F&P and the other attorneys in the Peterson Action.

52. On information and belief, these payments will begin shortly.

53. On information and belief, the Defendants will recover several hundred million dollars in legal fees for their representation of the Beirut Bombing victims in the Peterson Action.

**DEFENDANTS' ANTICIPATORY BREACH OF THEIR OBLIGATION TO PAY GLENN**

54. On information and belief, Defendants intend to withhold from Glenn the payments which are due him under his agreements with Defendants.

55. Defendants have told Glenn in substance that they will not pay him any of the Legal Referral Fees which they previously agreed to pay as a condition for Glenn referring the 40 Glenn Plaintiffs.

56. Defendants never paid Glenn any money for proving approximately $309,741,881.00 in 103 damage claims in the Peterson Action

57. Defendants never paid Glenn any money for contacting, interviewing and contracting Forty (40) referral plaintiffs resulting in $111,750,000.00 in claims in the Peterson Action.

58. Defendants never reimbursed Glenn for the out-of-pocket costs that he incurred in contacting, interviewing, travel, conducting formal hearings and preparing post-hearing briefs in 103 damage claims.

59. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $9,292,256.43 plus interest for Legal Services Fees pursuant to his Legal Services Contract, as payment for his work proving damages for 103 plaintiffs in the Peterson Action.

60. Pursuant to the parties' agreement, Glenn is entitled to recover $15,288.56 in out of pocket expenses that he paid in connection with his duties as Associate Counsel, including identification and referral of the Glenn Plaintiffs, and his representation of all the F&P Plaintiffs in the Peterson Action.

61. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $12,416,666.66) for Legal Referral Fees for the Forty (40) victims of the Beirut Bombing that Glenn referred to F&P.

62. Defendants have told Glenn that they will not pay the full Legal Services Fees and will not pay the Legal Referral Fees due to Glenn.

## COUNT 1

63. Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 62 as though set forth more fully herein.

64. By virtue of the foregoing, Defendants have anticipatorily breached their agreement to pay Plaintiff for Legal Services Fees and Legal Referral Fees in an amount not less than $21.7 Million plus interest.

65. Plaintiff is entitled to a declaratory judgment that he is entitled to one-third of any attorneys fees recovered by Defendants with respect to the Glenn Plaintiffs, and that he is entitled to Three Percent (3%) of all damages collected on the judgment in the Peterson Action, whether such damages are collected by a turnover proceeding in the Peterson Collection Actions or otherwise.

## COUNT 2

66. Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 65 as though set forth more fully herein.

67. On information and belief, as a result of the Peterson Collection Actions, funds located in New York have been identified and frozen.

68. On information and belief, Defendants and their agents are prosecuting a turnover proceeding in the Southern District of New York, to obtain the frozen Iranian assets and to use them to satisfy the judgment in the Peterson Action.

69. On information and belief, the turnover proceedings in New York are sealed.

70. Glenn is unable to obtain any information about the turnover proceeding in the Peterson Collection Actions from PACER.

71. Defendants have refused to provide Glenn with any information about the turnover proceeding.

72. As an attorney with an interest in receiving payment of legal fees, Glenn has a charging lien against any proceeds recovered as a result of the Peterson Collection Actions and the turnover proceeding now pending in the Southern District of New York.

73. Glenn is also entitled to copies of all pleadings and proceedings in the turnover proceedings, so that he can determine whether and when defendants have been paid in those proceedings.

**WHEREFORE,** Plaintiff prays that the Court enter a judgment:

a)  Declaring that Plaintiff is entitled to recover from Defendants one-third of any attorneys fees recovered by Defendants with respect to the Glenn

Plaintiffs plus Three Percent (3%) of any amounts collected on the judgment in the Peterson 1 Action for those Plaintiffs where Glenn proved damages;

b) Placing a charging lien on any funds or assets recovered as a result of the Peterson Collection Actions, in an amount not less than $23.3 Million.

c) Directing Defendants to provide Glenn with all pleadings and proceedings in the Peterson Collection Actions; and

d) Awarding to Glenn the interest, costs and disbursements as provided for under the law and such other relief as the Court deems just and proper.

Dated: New York, New York
November 2, 2010

_____
Daniel Cobrinik (DC 6406)
Attorney for Plaintiff
475 Park Avenue South – 19th Floor
New York, New York 10016
(212) 725-6888

CERTIFIED AS A TRUE COPY ON

THIS DATE 2/10/17

BY _____
( ) Clerk
(X) Deputy

11