# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAY GLENN,

      Plaintiff,

vs.                                                        Civil No.: 1:16-cv-02498-RCL

THOMAS FORTUNE FAY, *et al.,*

      Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS OF
## DEFENDANTS STEVEN R. PERLES AND PERLES LAW FIRM, P.C.

This is the second lawsuit that the Plaintiff – Jay Glenn, Esquire – brings in this Court, and the third lawsuit that he has filed overall, against the same defendants arising out of the same facts. The previous two cases were dismissed, as this one must also be. Glenn first sued the Defendants in this regard in 2010. The claims that Glenn now brings in this action – for breach of contract and quantum meruit – are clearly barred by the three-year statute of limitations, which is plain on the face of the Complaint. The Complaint must, therefore, be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## I.      BACKGROUND

Glenn contends that the Defendants owe him fees. But Glenn sought the same fees in two prior lawsuits, each of which was dismissed. The claims are stale, and the instant case must be dismissed as untimely.

Glenn filed his current Complaint against Perles and the other Defendants – Thomas Fortune Fay and Fay Law Group, P.A. (collectively "Fay") – on December 22, 2016. Perles and Fay were lead counsel in the action captioned *Peterson v. Islamic Republic of Iran*, Case Nos. 01-cv-2094, 01-cv-2684 (RCL) (D.D.C.), a case that they commenced in this Court on behalf of the

Marine Barracks bombing victims and their relatives (the "*Peterson* Case").[1]  Glenn alleges that he entered into contracts with Fay and Perles under which he performed legal services in the *Peterson* case for which he was to be paid a portion of the attorney fees arising out of that case. Glenn claims that Perles and Fay breached the contracts with Glenn, and further, that Fay and Perles have been unjustly enriched by the services provided by Glenn.

Glenn relies upon two purported fee agreements with Defendants, *i.e.*, a written "Associate Counsel Agreement" dated June 13, 2003, and an oral "Additional Fee Agreement" of an unspecified date.  *Complaint,* ¶¶ 13-16.  Glenn alleges that he "fulfilled all of his responsibilities in 2007, when judgments were entered in the *Peterson* action in favor of plaintiffs represented by Glenn . . . ."  *Complaint,* ¶ 3.  Based on these allegations, Glenn seek judgments from this Court for breach of contract and/or quantum meruit arising out of the alleged breaches of the Associate Counsel Agreement and the Additional Fee Agreement.

Yet Glenn frankly admits in his Complaint that the Defendants told him in no uncertain terms in 2010 that they were not going to pay him.  Indeed, Glenn bluntly states that he was "advised by Fay in 2010 that Glenn would not be paid any amount under the Associate Counsel or Additional Fee Agreements." *Complaint*, ¶22.  On the face of the Complaint, therefore, Glenn concedes that the Defendants allegedly breached their purported payment obligations to him in 2010.  This lawsuit, filed more than six years later, is plainly time barred.

Glenn's admission in the text of his Complaint that he was told in 2010 that he was not going to be paid is sufficient in itself for this Court to determine that his claims are barred by limitations.  The Court can and should dismiss this case on that basis alone.

---

[1]  The *Peterson* case and other cases at issue in this lawsuit involved claims by plaintiffs who were injured directly or indirectly as a result of the bombing of the Marine Corps Barracks in Beirut, Lebanon by Iranian agents in 1983. This Court is well aware of the facts and history involved in the *Peterson* case, so they will not be elaborated on here.

In addition to the fact that Glenn admits in his Complaint that his causes of action accrued in 2010, the history of the litigation of his dispute with Defendants makes it undoubtedly clear that his claims are stale.  On November 3, 2010, Glenn filed a lawsuit against Defendants Perles and Fay in the United States District Court for the Southern District of New York in an action styled *Glenn v. Fay, et al.*, Case No. 1:10-cv-08287-WHP.  In the Civil Cover Sheet that accompanied the Complaint that he filed in that Court, Glenn described the Cause of Action in that case as "[b]reach of contract to pay attorneys fees: Filed under 28 U.S.C. 1332."  A true test copy of Glenn's Civil Cover Sheet is attached hereto as Exhibit 1 (the "SDNY Civil Cover Sheet").

Glenn's Complaint in that action described the same written and oral contracts that are at issue in this instant case.  A true test copy of the Complaint that Glenn filed in 2010 in the U.S. District Court for the Southern District of New York is attached hereto as Exhibit 2 (the "SDNY Complaint").  Glenn included the following allegations in the SDNY Complaint:

> 56. Defendants never paid Glenn any money for proving approximately $309,741,881.00 in 103 damage claims in the Peterson Action.
>
> 57. Defendants never paid Glenn any money for contacting, interviewing and contracting Forty (40) referral plaintiffs resulting in $111,750,000.00 in claims in the Peterson Action.
>
> 58. Defendants never reimbursed Glenn for the out-of-pocket costs that he incurred in contacting, interviewing, travel, conducting formal hearings and preparing post-hearing briefs in 103 damage claims.
>
> 59. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $9,292,256.43 plus interest for Legal Services Fees pursuant to his Legal Services Contract, as payment for his work proving damages for 103 plaintiffs in the Peterson Action.
>
> 60. Pursuant to the parties' agreement, Glenn is entitled to recover $15,288.56 in out of pocket expenses that he paid in connection with his duties as Associate Counsel, including identification and referral of the Glenn Plaintiffs, and his representation of all the F&P Plaintiffs in the Peterson Action.

> 61. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $12,416,666.66) [sic] for Legal Referral Fees for the Forty (40) victims of the Beirut Bombing that Glenn referred to F&P.

SDNY Complaint, Exhibit 2.  Furthermore, in Count I of the SDNY Complaint, Glenn sued for breach of contract, alleging: "64. By virtue of the foregoing, Defendants have anticipatorily breached their agreement to pay Plaintiff for Legal Services Fees and Legal Referral Fees in an amount not less than $21.7 Million plus interest."  SDNY Complaint, ¶ 64, Exhibit 2.

Even though the SDNY Civil Cover Sheet and the SDNY Complaint are not attached to the Complaint that initiated this case, this Court is clearly entitled to review them when considering the instant Rule 12(b)(6) motion to dismiss, without treating it as a motion for summary judgment. *See, e.g., E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and <u>matters of which we may take judicial notice</u>.") (emphasis added); *Gumpad v. Commissioner of Social Security Admin.,* 19 F. Supp. 3d 325, 327-28 (D.D.C. 2014) ("[A] court may consider, without triggering the conversion rule [under which a motion to dismiss would be converted into a motion for summary judgment], 'matters of which . . . judicial notice' may be taken . . . such as an agency decision contained in the administrative record.").

Pleadings containing statements that Glenn presented to the Southern District of New York are documents of which this Court is entitled to take judicial notice.  "The court may take judicial notice of public records from other court proceedings." *Lewis v. Drug Enf. Admin.*, 777 F.Supp.2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).  This is recognized in Rule 201 of the Federal Rules of Evidence, which provides, in part:

(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: . . .

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The Advisory Committee Notes to subdivision (b) of F.R.E. 201, quoted above, explains:

This rule is consistent with Uniform Rule 9(1) and (2) which limit judicial notice of facts to those "so universally known that they cannot reasonably be the subject of dispute," those "so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute," and those "capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." The traditional textbook treatment has included . . . specific topics as facts relating to the personnel and <u>records of the court</u>, Id. § 327, and other governmental facts, Id. § 328.

(Emphasis added).

The Southern District of New York, and the United States Court of Appeals for the Second Circuit, where Glenn filed his original action in 2010, have expressly recognized the right of a court to take judicial notice of pleadings that have been filed in another case when deciding a motion to dismiss. "The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action as a public record pursuant to Federal Rule of Evidence 201(b))." *Ndremizara v. Swiss Re America Holding Corp.*, 93 F.Supp.3d 301, 313 n.7 (S.D.N.Y. 2015); *see also, Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other court . . .."); *HSA Residential Mortg. Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 361 (E.D.N.Y. 2003) ("It is proper to take judicial notice of pleadings from other lawsuits attached to a defendant's motion to dismiss . . . .").

There can be no dispute that, as of November 3, 2010, when Glenn initiated his suit for fees in the Southern District of New York, he believed that Defendants had breached their contracts with him, that he had been damaged, and that he was able to articulate specific damages figures.

Glenn subsequently filed an Amended Complaint and a Second Amended Complaint in the SDNY action.  The Southern District of New York dismissed the action on July 29, 2011, for lack of *in rem* jurisdiction and improper venue.[2]  See the Order of the Southern District of New York, a copy of which was obtained from Pacer (Document 32) and is attached hereto as Exhibit 3.

On July 14, 2016, five and a half years after he sued Defendants in the Southern District of New York, and virtually five years after that action was dismissed, Glenn filed a new suit, this time in this Court, also arising out of the Associate Counsel and Additional Fee Agreements.  That action was styled *Glenn v. Fay*, 1:16-cv-01452-RCL.  In that action, Glenn included only one claim, for declaratory judgment, to the effect that he is entitled to be paid out of the fees to be paid to Fay and Perles once such fees are distributed in connection with the *Peterson* case.  See the Complaint, Document 1, Case 1:16-cv-01452-RCL.  Glenn did not include claims in that previous lawsuit for breach of contract or for quantum meruit because any such claims would clearly have been barred as untimely.  That action was dismissed by this Court on December 6, 2016, *sua sponte*.[3]  See Documents 16 and 17, Case 1:16-cv-01452-RCL.

Having failed twice before, Glenn now makes a third attempt to sue Defendants for the exact same alleged wrongs.  As explained below, however, Glenn cannot pursue claims now for breach of contract or quantum meruit because both claims are plainly time barred.

---

[2]  The bases on which the Southern District of New York dismissed Glenn's action there are not relevant here.  The point is that Glenn sued Defendants in 2010 for the same fees arising out of the same facts that he seeks to put at issue in this case in this Court.

[3]  Although Defendants filed separate motions to dismiss in that action, the Court styled its order dismissing the suit as a *sua sponte* decision.

II.   **ARGUMENT**

A.   **Glenn's Claim for Breach of Contract Is Barred By The Statute of Limitations.**

Glenn's claim for breach of contract is plainly barred by the statute of limitations. Contract claims in the District of Columbia are governed by a three-year statute of limitations under D.C. Code § 12-301(7), and that three-year period expired at the latest in 2013.  It necessarily follows that Glenn's claim for breach of contract must be dismissed.

As noted above, Glenn concedes on the face of the Complaint that Fay told him in 2010 the Defendants were not going to pay him under either alleged contract.  *Complaint*, ¶ 22.  Plainly, any such repudiation would constitute the breach of the purported contract and begin the clock on the statute of limitations.  *See Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.,* 940 A.2d 996, 1007-07 (D.C. 2008).  Glenn himself acknowledged as much when he sued the Defendants for this same reason in the Southern District of New York in 2010.

Under *Eastbanc,* the statute of limitations began to run in 2010 when the alleged repudiation occurred, as Glenn plainly alleges (and certainly not later than November 2, 2010, the date of Glenn's filing of the action in the Southern District of New York).  As stated by the D.C. Court of Appeals in *Eastbanc*: "[a] so-called anticipatory breach 'only becomes a wrongful act if the promisee elects to treat it as such." *Id.* (quoting *Sheffield v. Paul T. Stone, Inc.,* 68 App. D.C. 378, 380 (D.C. Cir. 1938)).   Glenn unquestionably elected to treat the 2010 notice as an anticipatory repudiation of the contract, as manifested by the fact that he sued Perles and Fay in 2010 in the Southern District of New York based upon this very notice.

The D.C. Court of Appeals has further held that, when a defendant notified his broker that he would not pay any commission under the parties' agreement, that notice triggered the running of the statute of limitations.  *Medhin v. Hailu,* 26 A.3d 307, 311 (D.C. 2011).  "When Hailu

represented to Medhin that he would not pay any commission, Medhin could have sued to enforce his rights under the parties' brokerage agreement." *Id.* (citing *News World Communications, Inc. v. Thompsen,* 878 A.2d 1218, 1224–25 (D.C. 2005)) ("[T]he statute of limitations began to run no later than [the date] Ms. Thompsen had performed her last service to the Times, [and] the Times had declined to compensate her . . ., for by that date she had been definitively told that she would not be paid."); *see also Pardue v. Center City Consortium Sch. of Archdiocese of Wash., Inc.,* 875 A.2d 669, 679 (D.C. 2005) (holding that notice of appellee's "failure to pay . . . gave rise to [appellant's] claim and marked the accrual of her cause of action").

In *Medhin,* the defendant repeatedly told the broker that he was not going to pay the commission. *Id.* at 309. Three years after the initial refusal to pay, the disputed funds were placed in an escrow account, and four years after that, the plaintiff sued to recover the commission funds. *Id.* The court ruled that the action was time-barred by the statute of limitations because Medhin was well aware that he suffered an injury when he was told that no commission would be paid. *Id.* at 311. Thus, "any claim by Medhin to recover that commission brought more than three years after that notice would be untimely." *Id.* Medhin argued that the notice of refusal to pay did not constitute a breach, and that no breach occurred until the funds were disbursed. *Id.* The court rejected this argument, again stating that "Medhin was well aware of Hailu's decision not to pay him a commission" and the unavailability of the funds did nothing to "affect the running of the statute of limitations." *Id.*

In reliance on the *Medhin* decision, and applying D.C. law, this Court has held that the statute of limitations begins to run "when a party has been made aware that the other is refusing to perform". *LoPiccolo v. American University,* 840 F. Supp. 2d 71, 78 (D.D.C. 2012).

This Court has also held that the statute of limitations for breach of an employment contract began to run from the date the plaintiff received notice that his contract would not be renewed for the following school year. *Gauer v. Gallaudet Univ.,* 915 F. Supp. 2d 145, 148 (D.D.C. 2013). The plaintiff in that case alleged that the notice from his employer was an anticipatory repudiation, *i.e.*, "an intention to breach the contract five months hence, at the start of the new academic school year . . . when [defendant's] performance under the employment contract came due." *Id.* at 147-48. The plaintiff in that case contended that the statute of limitations did not begin to run until the first day of the new school year, but the *Gauer* court rejected that argument, holding that notice of a later breach was itself a breach of contract, thus triggering the statute of limitations. *Id.* (citing *Allison v. Howard University,* 209 F. Supp. 2d 55 at 60 (D.D.C. 2002) (holding that the date from which the statute of limitations began to run was the date "the decision was made and communicated to the plaintiff.")).

These cases make it abundantly clear that the statute of limitations on Glenn's breach of contract claim began to run from the date of the anticipatory repudiation – when he received notice from Fay in 2010 that Defendants were refusing to pay him. Glenn frankly confesses that he was "advised by Fay in 2010 that Glenn would not be paid any amount under the Associate Counsel or Additional Fee Agreements." *Complaint*, ¶22. The fact that Glenn was on notice of his claims in 2010 is made even clearer by Glenn's November 2010 lawsuit against Defendants filed in the Southern District of New York arising out of the very same facts. Therefore, Glenn's breach of contract claim is barred by the statute of limitations on the face of the Complaint.

## B. **Glenn's Claim for Quantum Meruit Is Barred By The Statute of Limitations.**

Glenn's claim for quantum meruit is barred by the statute of limitations for the exact same reasons that the contract claim is barred. Like breach of contract claims, quantum meruit claims

in the District of Columbia are governed by a three-year statute of limitations under D.C. Code §12-301(7) and (8).  That three-year period expired long ago.  It necessarily follows that Glenn's claim for quantum meruit must also be dismissed.

In  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1225 (D.C. 2005), the D.C. Court of Appeals held that the statute of limitations began to run on a quantum meruit or unjust enrichment claim at the time the plaintiff performed her last service for the defendant and compensation was expressly denied by the defendant.  In *Thompsen*, the plaintiff had completed a significant amount of work on a magazine idea she had pitched to defendants after they expressed enthusiasm for the idea on multiple occasions.  *Id*. at 1220.  After months of work, the defendants called the plaintiff and told her they would not be moving forward with her idea and she would not be compensated.  *Id*.

In determining the plaintiff's unjust enrichment claim, the Court determined that such a claim accrues when a wrongful act occurs that causes the enrichment to become unjust or unlawful. *Id*. at 1223.  The wrongful act in the plaintiff's case was the defendants' phone call to her indicating that she would not be compensated for the work she already performed on their behalf.  *Id*.  The statement made by Defendants to Glenn in 2010 that they were not going to pay him for his services, *Complaint*, ¶22, is analogous to the phone call referenced in *Thompsen*.  It therefore follows that Glenn's quantum meruit claim accrued in 2010, when he was told that he would not be paid for the services he purportedly provided.

The invalidity of Glenn's quantum meruit claim is further illustrated by *Vila v. Inter-Am. Inv., Corp.*, 596 F. Supp. 2d 28 (D.D.C. 2009).  In *Vila,* a financial consultant brought a quantum meruit claim against an investment company who failed to compensate him for services performed. *Id*. at 30.  The Court held the limitations period on the plaintiff's claim began when the defendant

"unequivocally refused to compensate the plaintiff for his services." *Id.* In reaching its decision, the Court relied on *Thompsen*. *Id.* ("This Court interpreted *Thompsen* to hold . . . that an unjust enrichment claim accrues when enrichment becomes unjust as determined by the point in time when payment has been refused."). Unjust enrichment also occurs when "under the circumstances the defendant's retention of the benefit is unjust." *Id.* (citing *Thompsen*, 878 A.2d 1218 at 1222 (D.C. 2005)). Under *Vila*, it is clear that the statute of limitations on Glenn's quantum meruit claim began as soon as Defendants expressed to Glenn that he would not be paid. At that point, payment had been refused for services already provided, rendering Defendants' retention of those services unjust under the circumstances. That occurred in 2010; Glenn's suit, filed at the end of 2016, is plainly stale.

## III.   <u>CONCLUSION</u>

Glenn's claims for breach of contract and quantum meruit are plainly time barred. Accordingly, the Complaint must be dismissed. Furthermore, the defects in Glenn's lawsuit cannot be remedied, and therefore the dismissal should be with prejudice.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

By:  _____/s/ Douglas M. Bregman_____
Douglas M. Bregman #218354

By:  _____/s/ Geoffrey T. Hervey_____
Geoffrey T. Hervey #415907
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707 – telephone
(301) 961-6525 – facsimile
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com
*Counsel for Defendant Perles*