PRIVILEGED AND CONFIDENTIAL
DRAFT, THURSDAY MARCH 30

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAY GLENN,
**Plaintiff,**

**v.**                                          **Case No. 1:16-cv-02498-RCL**

THOMAS FORTUNE FAY,
FAY LAW GROUP, P.A.,
STEVEN R. PERLES, and
PERLES LAW FIRM, P.C.,
**Defendants.**

**REPLY OF DEFENDANTS THOMAS FORTUNE FAY AND FAY LAW GROUP, P.A..
TO PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**I.  Introduction.**

Seven years ago, when Mr. Glenn was told by Defendants that they would not pay

him monies he believed were due to him under contract, the law gave Mr. Glenn two

options:  sue immediately for breach of contract, or wait until all conditions precedent to

Defendants' performance were met and sue then.  Mr. Glenn, himself a lawyer, and his

counsel exercised the former choice.  Mr. Glenn's suit was dismissed on jurisdictional

grounds.  He did not choose, within three years, to pursue his claim in a proper venue.

The law does not permit him to pursue it now.

Mr. Glenn now seeks to avoid the consequences of his well-informed, but perhaps

ill-advised, choice, arguing, essentially, that there was no anticipatory breach of his

contract, because he already had performed, and because his 2010 action for breach of contract did not seek damages.  His arguments confound the separate questions of whether he was permitted to treat the anticipatory repudiation as a breach of contract (he was); whether, by bringing suit for breach of contract, he manifested that choice (he did); and whether the lack of request for, or availability of, damages as a remedy in his 2010 action precluded the statute of limitations from beginning to run (they do not).

 Mr. Glenn also claims that his opponents, by arguing that his 2010 claim was not ripe, lulled him, a lawyer, and his counsel, into inaction and that therefore equity should step in and toll the statute of limitations.  The elements of equitable tolling are not met.

Finally, Mr. Glenn maintains that his naked assertion that the Fay Law Group is a successor to the Fay & Perles law firm, which retained him, suffices to satisfy pleading requirements.  Those requirements require that facts, not naked legal conclusions, be pleaded, and the requirements are not satisfied.

We respond seriatim to the arguments.

## II.  The Anticipatory Repudiation Doctrine Applies to Mr. Glenn's Contract.

Mr. Glenn asserts that the anticipatory repudiation doctrine does not apply to his claim because he asserts he had performed all duties due under his contract, citing Restatement (Second) of Contracts § 253 comment c (1981) ("it is one of the established limits on the doctrine of 'anticipatory breach' that an obligor's repudiation alone … gives rise to no claim *for damages* at all if he has already received all of the agreed exchange for it. The rule stated in Subsection (1) [i.e., that anticipatory breach by a party "before he has received all of the agreed exchange for it" gives rise to a total breach claim] does not, therefore, *allow a claim for damages* for total breach in such a case"), as his primary

authority.  Response, ECF Doc. 16, pp. 11-12 (emphases added).   The cited Restatement section stands only for the proposition that anticipatory repudiation, when treated as a breach, does not give rise to a claim for damages.  The Restatement makes clear that relief by decree for specific performance or equitable relief are available in an action seeking to remedy an anticipatory breach.  Restatement  (Second) of Contracts § 357 (such relief available "against a party who has committed or is threatening to commit a breach.").

Mr. Glenn relies also on Williston on Contracts § 63:61 (4th ed.). Doc. 16 at 12. Williston here deals with a special rule applicable to promises in unilateral contracts, agreements where, in the description by the case cited by Williston as illustrative, "one party is bound to perform notwithstanding the other party's inability or refusal to discharge his or her obligation." *Guglielmi v. Guglielmi*, 431 A.2d 1226, 1228 (R.I. 1981).  That is not the agreement at hand, a bilateral agreement in which  "the parties intend performance by one to be conditioned on *prior* performance by the other." Williston on Contracts § 44:6 (4th ed.) (emphasis added).  *See Guglielimi, supra*, 431 A.2d, 1228 ("[O]rdinarily the covenants and promises in a bilateral contract are mutually dependent.")

The special rule cited by Mr. Glenn evolved to deal with, and is generally applicable to, suits for money damages for breach of installment agreements without acceleration clauses.  *See* Williston on Contracts § 63:60 (4th ed.), and n. 4. ("'It is not intimated that in the bald case of a party bound to pay a promissory note which rests in the hands of the payee, but which is not yet due, such note can be made due by any notice of the maker that he does not intend to pay it when it matures.'")(quoting the  "leading

3

opinion" of the Supreme Court in *Roehm v. Horst*, 178 U.S. 1, 20 S. Ct. 780 (1900)).

The special considerations regarding installment contracts are discussed at length in *Keefe Co. v. Americable Int'l, Inc.*, 755 A.2d 469, 472-4 (D.C. 2000), on which Mr. Glenn relies, and are the source of the quotation he cites.  Doc. 16, n. 5.  The special considerations relate to whether all damages should be available immediately upon breach, even though future installments are not yet due. *Keefe Co., supra,* 755 A.2d, 472-4. They have no effect on the kind of relief Mr. Glenn sought in his 2010 action.  The only other D.C. authority on which Mr. Glenn relies on this point, *Brown v. Hornstein*, 669 A.2d 139, 143 (D.C. 1996), Doc. 16, n. 5, does not deal at all with contract doctrines of repudiation and anticipatory breach.  It deals with the issue of whether a statute precluded a tenant from repudiating and rescinding an agreement.  *Id*., 141 ("[W]e cannot agree with Tenant that the statute permits her to repudiate her Stipulation of Settlement under the particular circumstances of this case.").  The New York case on which Mr. Glenn relies, Doc. 16, n. 5, deals with installment payments, *Reprosystem, B.V. v. SCM Corp*., 630 F. Supp. 1099, 1101 (S.D.N.Y. 1986) (the "agreement is a unilateral contract which requires Muller to make payments at scheduled intervals."), as does the Maryland case on which he relies, Doc. 16, n. 5 (citing *Phelps v. Herro*, 215 Md. 223, 230, 137 A.2d 159, 163 (1957), which notes, "An action cannot be sustained on a promissory note before maturity on the ground that the maker had declared his intention not to pay it. A tenant's repudiation of his lease does not give his landlord an immediate right of action for future rent.").  *Phelps* specifically relies on *Roehm v. Horst*.  *Id*., 163.  The doctrine on which Mr. Glenn relies simply has no application here.

*Eastbanc*, states the law that does govern this case. *Eastbanc* did not require Mr. Glenn to treat repudiation as a breach, it merely allowed him to. It incorporated Williston's thinking in doing so:

> Under modern contract principles, an aggrieved party also may be entitled to sue prior to breach if the other party has anticipatorily repudiated the contract. *See, e.g., Roehm v. Horst,* 178 U.S. 1, 13, 20 S.Ct. 780, 44 L.Ed. 953 (1900); 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 63:32 (4th ed.1993). "The aggrieved party is entitled to sue either when the anticipatory repudiation occurs or at the later time for performance under the contract. The time of accrual consequently depends on whether the injured party chooses to treat the anticipatory repudiation as a present breach." 1 Corman, § 7.2.1, at 488. In essence, this rule gives the plaintiff an option—sue now (if the contract has been repudiated in anticipation of nonperformance) or sue later (at the time of nonperformance).

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008)(emphasis added). *Eastbanc* also made clear, again citing Williston, that Mr. Glenn could manifest his choice in the exact way he did: by filing "an action for breach of contract. 23 Williston & Lord § 63:55, at 666." *Id*. 940 A.2d at1007–08.

Once Mr. Glenn manifested his choice, the statute of limitations began to run. It ran out long ago. This is true with regard both to his breach of contract claim and to the quantum meruit claim derived from it. *See* Fay Memorandum in Support of Motion to Dismiss, ECF Doc. 10, at 4-5. Mr. Glenn's reliance, with regard to his quantum meruit claim, on a Colorado case, Doc. 16, 13-14, which deals with when a claim for damages arises under Colorado law, and does not discuss the choice *Eastbanc* offers to pursue other relief for anticipatory breach, does nothing to undercut that assertion.

**III. Mr. Glenn has not established entitlement to equitable tolling because of**

**"lulling".**

Mr. Glenn cites a sole case, *Bailey v. Greenberg*, 516 A.2d 934 (D.C. 1986), in arguing that the statute of limitations here should be tolled because of "lulling." *Bailey* is inapposite, as the doctrine it invokes deals with the fiduciary duties of insurance companies, and even there the court notes, "cases in [t]his jurisdiction have interpreted this principle narrowly." *Id.*, 9 (footnote omitted).

The court stated the general rule: "[A]n insurance company is not deemed to have waived a contractual limitations period, and is not estopped to assert the limitations period as a bar to a claim, unless the company has conceded liability and some discussion of a settlement offer has occurred." *Id.*, 938–39. It surveyed cases, and concluded, "no estoppel or waiver was found [when] the inducement by the insurance company not to file suit ended well before the limitations period expired." *Id.*, 939. It noted that in cases involving statutory limitations periods "the courts are even more reluctant to find waiver or estoppel." *Id.* It observed, "courts generally are reluctant to find the claimant has been misled by the insurance company where the claimant was sophisticated in business matters or had retained legal counsel." *Id.*

Here, the Defendants owed no fiduciary duty to Mr. Glenn. Any representations they did make ended long before the statute of limitations ran. Mr. Glenn, a lawyer, was a sophisticate, and he was represented by counsel. And Defendants, unlike the insurance company in *Bailey*, never made promises to Mr. Glenn that they would give him what he wanted if he just waited; they told him they would never give him what he wanted. *See id.*, (the plaintiff was told that the insurance company would pay, and plaintiff's counsel was assured on multiple occasions that payment would be made, the court finding that the

plaintiff "had received a virtual promise to pay.")   They made only arguments as adversaries in a courtroom.  Any reliance Mr. Glenn placed on those arguments was, at the very least, ill advised and irrational.

The D.C. Court of Appeals, surveying its own case law, concluded that its very narrow application of the doctrine of equitable tolling "rests on the belief that where the legislature has provided no savings statute, courts would exceed their prescribed role by providing a remedy where the legislature has determined that none should lie."  *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996).  Defendants engaged in no misconduct.  They merely presented arguments to a court.  Their actions warrant no exceptional relief.

## IV.  Mr. Glenn pleaded no facts from which the legal conclusion that the Fay Law Group is a successor to Fay & Perles plausibly can be inferred.

Mr. Glenn asserts that his pleading merely "that one [law firm] is the successor to the other," Doc. 16, 14, suffices to satisfy pleading requirements.  He relies in chief on *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, (D.D.C. 2013), which does not support his position.  *Sodexo* recites the now-familiar pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009):  "[A] complaint must contain sufficient factual matter, acceptable as true, to state a claim to relief that is plausible on its face. ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sodexo,* 930 F. Supp. 2d, 236 (internal quotations and citations omitted).  It then recites alternative standards for establishing successor liability:

> (1) the buyer expressly or impliedly agrees to assume such debts; or (2)
> the transaction amounts to a de facto merger of the buyer and seller; or (3)
> the buying corporation is a "mere continuation" of the selling corporation;

> or (4) the transaction is entered into fraudulently in order to escape
> liability for such debts.

*Id.* Under the first, "the plaintiff must either allege that there was an express agreement to assume the predecessor's liabilities, or, under an implied agreement theory, the plaintiff's allegations must 'do more than show that [the successor] serves [the original entity's] former customers.'" *Id.*, 237.  Here, no such facts are pleaded.  The same is true with regard to the third factor, where the court required the pleading of facts relating to "whether there is a 'common identity of officers, directors, and stockholders in the purchasing and selling corporations[,]' (2) 'the sufficiency of the consideration passing from one entity for the sale of its interest in another[,]' (3) whether the old entity 'failed to arrange to meet its contractual obligations[,]' and (4) 'whether there is a continuation of the corporate entity of the seller.'" *Id.*, 238.

The *Sodexo* court did not discuss merger or fraud, but there are no facts at all pleaded here, once more facts from which merger could be found, *see Fordyce v. Helvering*, 76 F.2d 431, 433 (D.C. Cir. 1935), ("[W]hen employed to define forms of union between two corporations, a merger is said to take place when one of the corporations retains its existence and succeeds to the franchises and acquires the property and assets of the other."), and especially not facts that meet the heightened pleading standards for fraud under Fed. R. Civ. Proc. 9(b).

## V.  Conclusion

Mr. Glenn's claims being time-barred, they must be **DISMISSED WITH PREJUDICE** with regard to Defendants Thomas Fortune Fay and Fay Law Group, P.A.

Mr. Glenn having failed to plead any cognizable claim against Fay Law Group, P.A.. Mr. Glenn's claims against Fay Law Group, P.A., must be **DISMISSED WITH PREJUDICE.**

Respectfully submitted,

FAY LAW GROUP, P.A.

_____/s/ John Vail_____
John Vail, of Counsel    (DC Bar 461512)
777 Sixth Street, NW
Suite 410
Washington, D.C.  20001
(202) 589-1300
Fax  589-1721
john@johnvaillaw.com

BOND & NORMAN LAW, P.C.

By: _____/s/ Ferris Ridgely Bond_____
Ferris Ridgely Bond (D.C. Bar 372607)
777 6th Street, N.W.
Suite 410
Washington, D.C. 20001
202-638-4100 telephone
202-207-1041 fax
Ferrisbond@bondandnorman.com

By: _____/s/ Jane Carol Norman_____
Jane Carol Norman (D.C. Bar 384030)
777 6th Street, N.W.
Suite 410
Washington, D.C. 20001

202-638-4100 telephone
202-207-1041 fax
Janenorman@bondandnorman.com

*Attorneys for Defendants Thomas Fortune
Fay and Fay Law Group, P.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Reply Memorandum was filed electronically via the Court's ECF system and was served electronically at that time on all counsel of record, all of whom are registered to receive filings via the Court's ECF system.