**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JAY GLENN,

    Plaintiff,

vs.

THOMAS FORTUNE FAY, *et al.,*

    Defendants.

Civil No.: 1:16-cv-02498-RCL

### REPLY OF STEVEN R. PERLES AND PERLES LAW FIRM, P.C. TO JAY GLENN'S OPPOSITION TO MOTION TO DISMISS

    The claims advanced by Plaintiff, Jay Glenn ("Glenn"), are barred by the three-year statute of limitations, a point only made further clear by Glenn's Opposition to the Motion to Dismiss filed by Defendants Steven R. Perles and Perles Law Firm, P.C. (collectively, "Perles"). There is no question that, under well-settled District of Columbia law, the statute of limitations on Glenn's claims began to run when he was notified by the Defendants in 2010, in no uncertain terms, that they were not going to pay him. Glenn does not dispute this notice, only its legal import. Under District of Columbia law, however, it is clear that such a notice of a breach of contract is, in itself, an event that triggers the running of limitations. Further, even if the notice to Glenn did not trigger the running of the statute of limitations (despite the clear law to the contrary), Glenn's election to treat the Defendants' anticipatory repudiation as a present breach by filing a lawsuit in 2010 in the Southern District of New York certainly did start the clock running. Finally, despite Glenn's assertion to the contrary, no actions taken by the Defendants reach the level necessary for equitable tolling of the statute of limitations. The Complaint must, therefore, be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The dismissal should be with prejudice.

I. <u>**ARGUMENT**</u>

A. <u>**Glenn's Claims Are Plainly Barred By The Statute Of Limitations.**</u>

When Defendants notified Glenn, in no uncertain terms, in 2010 that they were not going to pay him, this triggered the clock on Glenn's statute of limitations. The long line of cases in the District of Columbia, discussed in greater detail below, demonstrate that this is sufficient in itself for the Court to determine that Glenn's claims are barred by limitations. However, even if the Court accepts Glenn's argument that the Defendants' notice of non-payment to Glenn did not start the running of the statute of limitations (although there is clear law to the contrary), then Glenn's election to treat the Defendants' anticipatory repudiation as a present breach by filing a lawsuit in 2010 certainly did start the clock running.

    1. <u>*Eastbanc* Bars Glenn's Claims Because Glenn Himself Elected to Treat Defendants' Notice as Anticipatory Repudiation Constituting a Present Breach</u>

Glenn ignores and, therefore concedes, every decision cited by Perles, and instead devotes a substantial portion of his Opposition to the case of *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.,* 940 A.2d 996, 1007-07 (D.C. 2008). Glenn argues that the anticipatory repudiation doctrine does not apply in this case because the contracts at issue were unilateral because Glenn's performance was complete at the time Defendants' statements regarding non-payment were made. But it was Glenn himself who declared that the Defendants' statements constituted an "anticipatory breach" when he filed his lawsuit in 2010 in the Southern District of New York.[1]

---

[1] For example, on page 8 of the SDNY Complaint, Glenn refers to actions of Defendants as "Defendants' *Anticipatory Breach* of Their Obligation to Pay Glenn." (Emphasis added). Further, on page 9 of the Complaint, Glenn states, "[b]y virtue of the foregoing, Defendants have *anticipatorily breached* their agreement to pay Plaintiff . . . ." *See* Glenn's 2010 Complaint filed in the U.S. District Court for the Southern District of New York, Exhibit 2 to Perles's Motion to Dismiss (emphasis added).

*Eastbanc* makes it clear that Glenn's claims accrued no later than 2010, because at that time Glenn expressly elected to treat the Defendants' "anticipatory repudiation," as he so labeled it, as a present breach, and his claims are thus time-barred.[2] As *Eastbanc* explains, the accrual of a claim is contingent on the time that the non-repudiating party acknowledges the anticipatory repudiation as a breach. *Id*. ("A so-called anticipatory breach only becomes a wrongful act if the promisee elects to treat it as such.") (quoting *Sheffield v. Paul T. Stone, Inc*. 68 App. D.C. 378, 380 (D.C. Cir. 1938)).

*Eastbanc* sinks Glenn's argument that he did not elect to treat the Defendants' anticipatory repudiation as a present breach by filing a lawsuit in 2010. "The time of accrual consequently depends on whether the injured party chooses to treat the anticipatory repudiation as a present breach." *Id.* (citation omitted). Glenn unquestionably elected to treat the 2010 notice as a present breach by suing Perles and Fay in 2010 in the Southern District of New York based upon this very notice.[3]

Glenn attempts to argue in his Opposition that the only way a party may elect to treat an anticipatory repudiation as a wrongful act is by suing for damages, *i.e.*, that a lawsuit for declaratory judgment does not suffice. Yet the decisions cited by Glenn in his Opposition,

---

[2] Glenn also argues that *Eastbanc* does not apply to the instant case because "[a]t the time Defendants told Glenn that they would not be paying him as they had promised, he had already fully performed." *See* Glenn's Opposition, p. 2. This is not correct. In fact, Glenn never performed as required under the contract. Instead, other attorneys had been required to step in to complete the tasks that he was supposed to have completed. This issue is not necessary for purposes of resolving this motion to dismiss, but Perles wishes to point out for the record the falsity of Glenn's statements in this regard.

[3] In Count I of the SDNY Complaint, Glenn sued for breach of contract, alleging: "64. By virtue of the foregoing, Defendants have anticipatorily breached their agreement to pay Plaintiff for Legal Services Fees and Legal Referral Fees in an amount not less than $21.7 Million plus interest." Exhibit 2 to Perles's Motion to Dismiss. Moreover, in the Civil Cover Sheet that accompanied the Complaint that he filed in that Court, Glenn described the Cause of Action in that case as "*[b]reach of contract* to pay attorneys fees: Filed under 28 U.S.C. 1332." Exhibit 1 to Perles's Motion to Dismiss (emphasis added).

3

including *Eastbanc*, simply do not support this assertion. Instead, the cases that Glenn cites make clear that a party may treat an anticipatory repudiation as a present breach in any number of different ways, to include, but certainly not limited to, filing a lawsuit. While the *Eastbanc* Court notes that "[o]ne method of manifesting such an election is to file an action for breach of contract," it certainly does not state that this is the *only* method. *Eastbanc*, at 1007-08. Similarly, in *Silver Air v. Aeronautic Dev. Corp.,* 656 F. Supp. 170 (S.D.N.Y. 1987), cited by Glenn in his Opposition at footnote 7 on page 8, the court found that the plaintiff manifested its acceptance of the defendant's repudiation by retaining the defendant's security deposit, not by filing a suit for damages. *Id*. at 178. Glenn has not cited a single decision that requires a suit for damages to demonstrate an election to treat an anticipatory repudiation as a present breach. These decisions demonstrate that some intentional action to treat a repudiation as a breach is sufficient. Glenn's 2010 lawsuit clearly constitutes just such an intentional action.

Simply stated, Glenn elected to treat the Defendants' notice that they were not going to pay him as a breach, and he sued accordingly, for breach of contract and declaratory judgment. He is bound by his election, and his current lawsuit, filed years later, is untimely.

2. Limitations Began to Run in 2010
   <u>When Glenn Was Told That He Would Not Be Paid</u>

As explained above, *Eastbanc* does not avoid Glenn's dismissal. Furthermore, the application of Eastbanc, even if it did apply, would be preempted by a long line of cases that hold that Glenn's claims began to run when he was notified by the Defendants, in no uncertain terms, in 2010 that they were not going to pay him.

*See Allison v. Howard University,* 209 F. Supp. 2d 55 at 60 (D.D.C. 2002) (holding that the date from which the statute of limitations began to run was the date "the decision was made and communicated to the plaintiff."); *News World Communications, Inc. v. Thompsen,* 878 A.2d

4

1218, 1224–25 (D.C. 2005) ("[T]he statute of limitations began to run no later than [the date] Ms. Thompsen had performed her last service to the Times, [and] the Times had declined to compensate her . . ., for by that date she had been definitively told that she would not be paid."); *Pardue v. Center City Consortium Sch. of Archdiocese of Wash., Inc.,* 875 A.2d 669, 679 (D.C. 2005) (holding that notice of appellee's "failure to pay . . . gave rise to [appellant's] claim and marked the accrual of her cause of action."); *Medhin v. Hailu,* 26 A.3d 307, 311 (D.C. 2011) ("When Hailu represented to Medhin that he would not pay any commission, Medhin could have sued to enforce his rights under the parties' brokerage agreement."); *LoPiccolo v. American University*, 840 F. Supp. 2d 71, 78 (D.D.C. 2012) (holding that the statute of limitations begins to run "when a party has been made aware that the other is refusing to perform."); *Gauer v. Gallaudet Univ.,* 915 F. Supp. 2d 145, 148 (D.D.C. 2013) (holding that the statute of limitations for breach of an employment contract began to run from the date the plaintiff received notice that his contract would not be renewed for the following school year and holding that notice of a later breach was itself a breach of contract, thus triggering the statute of limitations).  Notably, in his Opposition, Glenn barely addresses the numerous cases cited by Perles, referencing them only briefly in a footnote.  Moreover, Glenn fails to cite any authority that contradicts the holdings set forth in the aforementioned cases.  Thus, Glenn has effectively conceded these arguments.

For the same reasons that Glenn's breach of contract claim is time-barred, his quantum meruit claim is also time-barred.  Recognizing that the law in the District of Columbia clearly bars his quantum meruit claim, Glenn relies upon a Colorado case, *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842 (Colo. 2010) (en banc)[4].  Even if this Court chooses to

---

[4] A Colorado state case is of little value to this court on questions of D.C. law, and Glenn does not attempt to explain how a Colorado state court could shed light on D.C. law.  Glenn Opposition at 13-14.

consider the *Melat* case, upon close reading it actually supports Perles's position that Glenn's quantum meruit claim is time-barred. In fact, the *Melat* court held when an attorney learns of the occurrence of the favorable settlement or judgment that will result in payment of the attorneys' fees, this triggers the clock on statute of limtiations. *Id*. at 850. There can be no dispute that, as of November 3, 2010, when Glenn initiated his suit for fees by filing a Complaint in the Southern District of New York (the "SDNY Complaint," attached as Exhibit 2 to Perles's Motion to Dismiss), Glenn was well aware of the entry of the judgments in the "*Peterson* Action" that would result in payment of his attorney's fees. In the SDNY Complaint, Glenn alleges:

> 41. Glenn was instrumental in proving the damages suffered by the plaintiffs 103 of the plaintiffs in the Peterson Action.
> 42. As a result of Glenn's work, and the work of other attorneys, the court issued a judgment holding Iran liable to the plaintiffs in the Peterson Action for compensatory damages totaling $2,656,944,877.00.

SDNY Complaint, ¶¶ 41-42, Exhibit 2 to Perles's Motion to Dismiss. Therefore, under *Melat*, Glenn's quantum meruit claim accrued no later than 2010, when Glenn included these assertions in his lawsuit in New York.

### 3. Specific Damages are not Required; Moreover, Glenn Articulated Damages Figures in 2010

Glenn also argues that the likelihood of recovery was too speculative to sustain a breach of contract action at an earlier date. Glenn Opposition, p. 10. However, the well-settled law demonstrates that Glenn's claims began to accrue when he was notified in 2010 that he would not be paid, regardless of the certainty of the breadth of damages. *See Medhin,* 26 A.3d at 310 ("The limitations period does not run until…notice of 'some evidence of wrongdoing,' and its running is not delayed simply because the claimant does not know…the full 'breadth or nature' of the defendant's wrongdoing) (citing *Brin v. S.E.W. Investors*, 902 A.2d 784, 800 (D.C. 2006)).

Furthermore, by 2010, there is no question that Glenn was able to articulate his damages with specificity and that he believed that the Defendants were likely to recover funds. In fact, Glenn included the following allegations in the SDNY Complaint:

> 56. Defendants never paid Glenn any money for proving approximately $309,741,881.00 in 103 damage claims in the Peterson Action.
>
> 57. Defendants never paid Glenn any money for contacting, interviewing and contracting Forty (40) referral plaintiffs resulting in $111,750,000.00 in claims in the Peterson Action.
>
> 58. Defendants never reimbursed Glenn for the out-of-pocket costs that he incurred in contacting, interviewing, travel, conducting formal hearings and preparing post-hearing briefs in 103 damage claims.
>
> 59. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $9,292,256.43 plus interest for Legal Services Fees pursuant to his Legal Services Contract, as payment for his work proving damages for 103 plaintiffs in the Peterson Action.
>
> 60. Pursuant to the parties' agreement, Glenn is entitled to recover $15,288.56 in out of pocket expenses that he paid in connection with his duties as Associate Counsel, including identification and referral of the Glenn Plaintiffs, and his representation of all the F&P Plaintiffs in the Peterson Action.
>
> 61. Pursuant to the parties' agreement, Glenn is entitled to recover from Defendants approximately $12,416,666.66) [sic] for Legal Referral Fees for the Forty (40) victims of the Beirut Bombing that Glenn referred to F&P.

SDNY Complaint, ¶¶ 56-61, Exhibit 2 to Perles's Motion to Dismiss. Glenn further stated in the SDNY Complaint: "On information and belief, the Defendants will recover several hundred million dollars in legal fees." *See id.* at ¶ 53. Therefore, Glenn's argument that his damages were too speculative is clearly undermined by his own pleadings.

    4.    <u>Glenn's Claims are Plainly Time Barred</u>

To sum up, the statute of limitations on Glenn's claims began to run when he was notified by the Defendants in no uncertain terms in 2010 that they were not going to pay him. Glenn's own pleadings labeled the Defendant's 2010 notice as an anticipatory repudiation, and these filings

7

demonstrate that he elected to treat the notice as a present breach.  Moreover, in 2010, Glenn was aware of the breadth of his damages and was able to state them with specificity in his Complaint filed in 2010 in the Southern District of New York.  SDNY Complaint, ¶¶ 56-61, Exhibit 2 to Perles's Motion to Dismiss.  For these reasons, Glenn's claims are barred by the applicable statute of limitations, and his Complaint must be dismissed with prejudice.

### B.  The Statute of Limitations Cannot Be Equitably Tolled.

Glenn alleges that the statute of limitations should nonetheless be tolled because statements made by the Defendants in the course of the 2010 litigation in the Southern District of New York, *i.e.*, that Glenn's declaratory judgment claim was premature because the Defendants had not yet received any distributions, caused him to delay filing the instant breach of contract action.  However, no actions taken by the Defendants could have lulled Glenn into inaction sufficient to trigger equitable tolling.

Glenn's cited decisions demonstrate that the limitations period may be tolled in instances of fraudulent concealment or intentional wrongdoing, neither of which are present, or even alleged, in this case. *See Bailey v. Greenberg*, 516 A.2d 934 (D.C. 1986); *William J. Davis, Inc. v. Young*, 412 A.2d 1187 (D.C. 1980); *McCloskey & Co. v. Dickinson*, 56 A.2d 442 (D.C. 1947).  In the *Bailey* case, the plaintiff sued the defendant for negligence after she fell on defendant's property.  *Bailey*, at 936.  In that case, the defendant lied to the plaintiff about the identity of his insurer, causing the plaintiff to go through the lengthy insurance process with the wrong insurer, during which time her claims became time-barred.  *Id.* at 936-37.  The court held that the plaintiff's claims were not time-barred because the defendant's fraudulent concealment prevented the plaintiff from suing the correct insurer within the limitations period.  *Id*. at 941.

Similarly, in the *Young* case, a janitor of an apartment complex sued his employer in connection with wages he claimed were wrongfully withheld. *Young* at 1190. After the plaintiff began working for the defendant, unbeknownst to the plaintiff, the minimum wage requirement increased. *Id.* at 1189. In order to prevent paying the plaintiff an increased salary, the Defendant knowingly misrepresented the number of hours the plaintiff worked. *Id.* at 1189. The plaintiff was not aware of the defendant's wrongdoing until after the statute of limitations had run. *Id.* at 1190. Therefore, the Court noted that when the basis of a cause of action is fraudulently concealed from a plaintiff, there is an exception to the statute of limitations, and the Court applied this exception. *Id.* at 1191-92.

There is no fraudulent concealment or intentional wrongdoing alleged or present in this case. Furthermore, Glenn is an attorney. He was well aware in 2010 of the Defendant's purported wrongdoing, and he was required to take every necessary precaution to protect his rights. "[A]n attorney is subject to a different standard than a layperson with respect to knowledge of statutes of limitations…" *Bailey*, 516 A.2d at 940. Therefore, there is no basis for the Court to equitably toll the statute of limitations.

## II.     CONCLUSION

Glenn's claims in this action – for breach of contract and quantum meruit – are clearly barred by the three-year statute of limitations, which is plain on the face of the Complaint. There is no basis to equitably toll the statute of limitations in this case. The Complaint must, therefore,

be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Furthermore, the defects in Glenn's lawsuit cannot be remedied, and therefore the dismissal should be with prejudice.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

By: _____/s/ Douglas M. Bregman_____
Douglas M. Bregman #218354

By: _____/s/ Geoffrey T. Hervey_____
Geoffrey T. Hervey #415907
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707 – telephone
(301) 961-6525 – facsimile
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com
*Counsel for Defendant Perles*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Reply was filed electronically via the Court's ECF system on March 31, 2017 and was served electronically at that time on all counsel of record, all of whom are registered to receive filings via the Court's ECF system.

_____/s/ Geoffrey T. Hervey _____