UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAY GLENN, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | No. 1:16-CV-02498-RCL |
| THOMAS FORTUNE FAY; | § | |
| FAY LAW GROUP, P.A.; | § | |
| STEVEN R. PERLES; AND | § | |
| PERLES LAW FIRM, P.C. | § | |
| | § | |
| DEFENDANTS. | § | |

---

**Memorandum Opinion:**
**Granting in Part and Denying in Part Defendants' Motions to Dismiss**
**Denying the Fay Defendants' Motion for Summary Judgment**

---

Before the Court are the following motions and all responses and replies thereto:

- Defendants Thomas Fay and Fay Law Group's Motion to Dismiss.  (ECF #10).

- Defendants Thomas Fay and Fay Law Group's alternative Motion for Summary Judgment. (ECF #10).

- Defendants Steven Perles and Perles Law Firm's Motion to Dismiss.  (ECF #12).

Because the arguments in each are nearly identical, the Court will refer to the defendants' two motions to dismiss collectively as the "motions to dismiss" except where distinguishing between the two is necessary.  For the following reasons, the Court will **DENY** the motion for summary judgment and **GRANT IN PART AND DENY IN PART** the motions to dismiss.

### Background

Defendants Thomas Fay and Steven Perles were lead counsel for the plaintiffs in *Peterson v. Islamic Republic of Iran*, Case Nos. 01-cv-2094, 01-cv-2684, an action commenced in

1

this Court by victims of the 1983 Beirut barracks bombings and their relatives against Iran.  During

their time as lead counsel, Messrs. Fay and Perles worked together in a partnership known as "Fay

& Perles" ("F&P"), of which each was a principal.  F&P no longer exists as a law firm.  Messrs.

Fay & Perles have dissolved their partnership and have each started new law firms of their own—

Fay Law Group and Perles Law Firm, the other named defendants in this case.

In 2003, this Court entered a default judgment against Iran in the *Peterson* action and

directed that all damages claims be submitted to court-appointed special masters whose reports the

Court would consider in determining each plaintiff's damages.  (*Peterson v. Islamic Republic of

Iran*, 264 F. Supp. 2d 46, 65 (D.D.C. 2003)).  Following the default judgment, F&P entered into

two agreements with Mr. Glenn, the plaintiff in this case (the "Agreements").  In the first, F&P

retained Mr. Glenn to represent the plaintiffs in damages proceedings before the special masters

and the Court (the "Associate Counsel Agreement").  In the second, F&P offered Mr. Glenn an

additional share of their contingency fee if Mr. Glenn could find additional plaintiffs for the

*Peterson* case (the "Additional Fee Agreement").

By all accounts, Mr. Glenn seems to have performed his part admirably.  According to

uncontested portions of the complaint, Mr. Glenn found an additional 40 plaintiffs for the *Peterson*

case and successfully represented all of the plaintiffs in their damages proceedings.   The

culmination of Mr. Glenn's work on behalf of F&P came on September 7, 2007, when this Court

awarded damages totaling more than $309 million to the *Peterson* plaintiffs.  (*Peterson v. Islamic

Republic of Iran*, 515 F. Supp. 2d 25, 60–66 (D.D.C. 2007)).  But despite his work being

completed, Mr. Glenn's payment was not due at that time.  Instead, Mr. Glenn's payments were

due under the Agreements when and to the extent that the judgment was collected upon.  And the

"truth is that the prospects for recovery upon judgments entered in these cases are extremely remote." (*In re Islamic Republic of Iran Terrorism Litg.*, 659 F. Supp. 2d 31, 37 (D.D.C. 2009)).

Despite the remote chances of recovery, F&P repudiated their obligations under the Agreements in 2010. At that time, Mr. Glenn sued Messrs. Perles and Fay and F&P in New York, seeking a declaratory judgment that the Agreements were still valid and other related relief (but not damages). (*Glenn v. Fay*, No. 10-cv-8287-WHP (S.D.N.Y. 2010)). That declaratory judgment suit was dismissed on jurisdictional and venue grounds.

Six more years passed with no significant developments in this case. Then, in 2016, the Supreme Court decided *Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016), which made certain Iranian assets available to satisfy judgment against Iran, including the *Peterson* judgment. On June 6, 2016, those assets were approved for distribution to the plaintiffs (including the *Peterson* plaintiffs) and their attorneys. But the defendants once again refused to pay Mr. Glenn for his services. In December, Mr. Glenn filed this action seeking payment pursuant to the Agreements. Mr. Glenn asserts breach of contract and quantum meruit claims against all of the defendants. The defendants have moved to dismiss on various grounds.

### Summary of the Parties' Arguments: Motions to Dismiss

I.     **The Defendants' Arguments**

   **A. The Defendants Argue that Mr. Glenn's Claims Are Time-Barred.**

The defendants acknowledge that they repudiated any contracts they had with Mr. Glenn in 2010, telling him explicitly that they would not pay him anything. Despite this repudiation, they argue that all claims in Mr. Glenn's suit should be dismissed as time-barred.

The defendants argue that both of Mr. Glenn's causes of action accrued and the statutes of limitations began to run in 2010. They point to two events, both occurring in 2010, at least one

of which triggered the statute of limitations: (1) their anticipatory repudiation of the contracts and their making that repudiation known to Mr. Glenn, and (2) Mr. Glenn's filing a declaratory judgment action against the defendants in New York seeking to uphold the contract.   The defendants argue that under D.C. law, their unequivocal anticipatory repudiation of the contracts, made known to Mr. Glenn, was sufficient to constitute a breach that triggered the running of the statutes of limitations for both of Mr. Glenn's claims.   Alternatively, they argue that Mr. Glenn, by filing the declaratory judgment action, elected to treat their anticipatory repudiation as a breach of contract and thereby triggered the running of the statutes of limitations.

In Washington, D.C., the statute of limitations for contract actions is three years.  (D.C. Code § 12-301(7)).   The statute of limitations for quantum meruit / unjust enrichment claims is three years as well.  (D.C. Code § 12-301(8) (setting a three-year statute of limitations for all causes of action not specially prescribed elsewhere in § 12-301)).   So if Mr. Glenn's causes of actions accrued in 2010, then the statutes of limitations expired in 2013, long before Mr. Glenn filed the present suit in 2016.   Therefore, the defendants argue that all of Mr. Glenn's claims should be dismissed as to all defendants.

### B. Fay Law Group Argues that It Cannot Be Held Liable for the Acts of Fay & Perles.

One of the defendants, Fay Law Group ("FLG"), argues that Mr. Glenn alleges no facts in his complaint from which a claim against it can plausibly be inferred.   In his complaint, Mr. Glenn alleges that FLG "is a successor to and is responsible for debts incurred by Fay & Perles." (ECF #1 at 2, ¶8).   FLG argues that this "is a conclusion of law, not a statement of fact," and that Mr. Glenn pleads no facts that actually support this conclusion.   Thus, because FLG did not itself enter into a contract with Mr. Glenn and because Mr. Glenn alleges no facts that would make FLG

liable on contracts entered into by Fay & Perles or by Mr. Fay, the complaint contains no facts from which a claim against FLG can plausibly be inferred and must be dismissed as to FLG.

## II.     The Plaintiff's Arguments

### A.  Mr. Glenn Argues that His Claims Are Not Time-Barred.

In response to the defendants' arguments that his claims run afoul of the statute of limitations, Mr. Glenn raises three independent arguments: (1) that the doctrine of anticipatory repudiation is inapplicable to this case, (2) that even if the doctrine of anticipatory repudiation were applicable to this case, he did not elect to treat the repudiation as a present breach, and (3) that the statute of limitations should be equitably tolled.

#### 1.  Mr. Glenn Argues that the Doctrine of Anticipatory Repudiation Does Not Apply to this Case.

Mr. Glenn acknowledges that the defendants repudiated any obligation to pay him under the Agreements in 2010. But Mr. Glenn argues that neither this anticipatory repudiation nor his reaction to it could trigger the statute of limitations in this case. He argues that the doctrine of anticipatory repudiation applies only to bilateral contracts "that are still executory on both sides," not to unilateral contracts. (ECF #16 at 11). Stated simply, an anticipatory repudiation of a unilateral contract gives rise to no breach-of-contract claims; such a claim only accrues when the obligor's performance finally became due.

The Agreements were initially bilateral contracts. Mr. Glenn asserts that he fully performed his end of the Agreements no later than 2007. He argues that this full performance converted the bilateral contracts to unilateral obligations/contracts—all that remained was for the defendants to pay him. And because the Agreements were unilateral in 2010 when the defendants repudiated, neither that repudiation nor any reaction to it could support a breach-of-contract claim or trigger the running of the statute of limitations. Rather, Mr. Glenn argues that because he had

fully performed his end of the bargain, a claim for breach-of-contract could not accrue until payment was due under the Agreements. Payment under the Agreements was conditioned on the defendants' successful recovery on the 2007 judgment, which did not begin to occur until June 2016. That, Mr. Glenn argues, is when a breach-of-contract action accrued and the statute of limitations began to run. This suit, then, is timely.

### 2. Mr. Glenn Argues that He Did Not Elect to Treat the Defendants' Anticipatory Repudiation as a Breach of Contract.

In the alternative, Mr. Glenn argues that even if the doctrine of anticipatory repudiation applies to this case, the statute of limitations did not begin to run in 2010 because he did not elect to treat the defendants' repudiation as a breach of contract. Under D.C. law, a breach-of-contract claim accrues after an anticipatory repudiation only if the promisee chooses to treat the repudiation as a breach. When the defendants repudiated the Agreements in 2010, Mr. Glenn promptly sought a declaratory judgment affirming the validity of the Agreements and the defendants' obligation to pay him under them. Mr. Glenn argues that because his 2010 lawsuit sought a declaratory judgment affirming the contract rather than damages, his filing suit should be interpreted as a reaffirmation of the contract rather than as an election to treat the repudiation as a breach. Therefore, he argues, no cause of action accrued in 2010 and the statute of limitations did not begin to run until 2016.

### 3. Mr. Glenn Argues that the Statute of Limitations, If It Did Begin to Run in 2010, Should be Equitably Tolled.

When Mr. Glenn filed suit for a declaratory judgment in 2010, the defendants argued that such a judgment was improper because any damages resulting from their anticipatory repudiation were entirely speculative—under the Agreements, Mr. Glenn would only be paid if and when the defendants themselves received their attorney's fees (which may have been never).

For that reason, the defendants argued that judicial intervention in the case was premature. Mr. Glenn argues that the defendants' arguments in that case lulled him into inaction because the statute of limitations does not run on a premature case. Therefore, he argues, the statute of limitations should be equitably tolled.

**Analysis: Motions to Dismiss**

**I.      Mr. Glenn's Quantum Meruit Claim Is Time-Barred.**

**A.  The Statute-of-Limitations Analyses for Contract and Quantum Meruit Claims Are Not Identical.**

As a preliminary matter, the Court addresses an error that all of the parties have made. Both the plaintiff and the defendants presuppose that, for statute-of-limitations purposes, as the contract claim goes, so goes the quantum meruit claim. (ECF #10 at 4 (the Fay defendants); ECF #12-1 at 9 (the Perles defendants); ECF #16 at 18 (Mr. Glenn)). But this is not true.

This confusion seems to arise largely from a 1991 case in which this Court said that D.C. law "clearly demonstrate[s] that equity acts by analogy, and that if a legal claim is barred by the statute of limitations then its counterpart in equity is also barred." (*Union Labor Life Ins. Co. v. Sheet Metal Workers Nat. Health Plan*, No. 90-2728, 1991 WL 212232 (D.D.C. Sept. 30, 1991)). But D.C. law has changed in an important way since then. The D.C. Court of Appeals in 2005 fashioned a test to determine when a quantum meruit claim accrues (and when the statute of limitations begins to run) that is separate and distinct from the test for when a breach of contract claim accrues. (*See News World Commc'ns v. Thompsen*, 878 A.2d 1218, 1219 (D.C. 2005) (describing the issue of when the statute of limitations begins to run in a quantum meruit or unjust enrichment claim as "a novel and difficult one" and an issue of first impression). Therefore, it is entirely possible that a breach of contract claim will not be time-barred while a related quantum meruit claim will be time-barred. In fact, that is exactly what will happen in this case.

7

### B. Legal Standard

Quantum meruit claims exist to prevent the unjust enrichment of a defendant. In *Thompsen*, the D.C. Court of Appeals held that a quantum meruit or unjust enrichment claim accrues and the statute of limitations begins to run "when the plaintiff's last service has been rendered and compensation has been wrongfully withheld." (*Thompsen*, 878 A.2d at 1219). This is a two-part test.

The first part of the test is a "'last rendition of services test." (*Id.* at 1224 (quoting *Baer v. Chase*, 392 F.3d 609, 622 (3d Cir. 2004))). The "last rendition of services" test simply asks at what date the plaintiff performed his final service for the defendant. (*Id.*). The statute of limitations begins to run no earlier than the time that final service was performed. But the statute of limitations may begin to run much later than the final rendition of services depending on the second part of the test.

The second part of the test requires determining when compensation has wrongfully been withheld from the plaintiff. This is important because quantum meruit and unjust enrichment claims can only accrue "when the defendant's enrichment is *unjust*." (*Id.* at 1225 (citing *Vereen v. Clayborne*, 623 A.2d 1190, 1194 (D.C. 1993) (emphasis in original))). Therefore, the defendant must engage in some "wrongful act" that makes the enrichment unjust and gives "rise to a duty of restitution." (*Id.* (quoting *Congregation Yetev Lev D'Satmar, Inc. v. Adar B.B. Corp.*, 596 N.Y.S.2d 435, 437 (2d Dept. 1993))). D.C. law is clear that a wrongful act occurs when a defendant communicates his unequivocal refusal to pay for the services provided by the defendant.[1] (*See id.* at 1224 (finding that the statute of limitations began to run when the defendant "informed [the plaintiff] that she would not be compensated"); *Vila v. Inter-Am. Inv., Corp.*, 596

---

[1] At least when those services were voluntarily sought or accepted in the first place.

F. Supp. 2d 28, 30 (D.D.C. 2009) (holding that "an unjust enrichment claim accrues when enrichment becomes unjust as determined by *the point in time when payment has been refused*.") (emphasis added)).

### C. Application – The Statute of Limitations Began to Run on Mr. Glenn's Quantum Meruit Claim in 2010 and Expired in 2013.

Having set forth the applicable law, its application to these facts is simple. First, Mr. Glenn performed his final service for the defendants in 2007 at the latest. On September 7 of that year this Court entered default judgment in favor of the *Peterson* plaintiffs and awarded them provisional damages to the tune of $309 million. "Thus, as of that date [Mr. Glenn's] responsibilities as damages attorney were completed." (ECF #1 at 5, ¶22). So according to the "last rendition of services" test the statute of limitations on Mr. Glenn's quantum meruit claim could begin to run no earlier than 2007.

Second, the defendants committed a wrongful act that made their enrichment through Mr. Glenn's services unjust. This wrongful act was their unequivocal refusal to pay Mr. Glenn for his services. Per Mr. Glenn's own pleadings, this wrongful act occurred in 2010. (*Id.* ("Glenn was advised by Fay in 2010 that Glenn would not be paid any amount under the Associate Counsel or Additional Fee Agreements.")).

The Court concludes that Mr. Glenn's quantum meruit claim accrued and the statute of limitations on that claim began to run in 2010. By that year, Mr. Glenn had performed his final service for the defendants and the defendants had committed a wrongful act making their enrichment unjust by unequivocally refusing to compensate Mr. Glenn for his services. And because the statute of limitations for a quantum meruit action in D.C. is three years, Mr. Glenn's quantum meruit claim expired in 2013, long before he brought this suit in December 2016. (D.C. Code § 12-301(8)).

As a final argument, Mr. Glenn, citing *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842 (Colo. 2012), argues that the defendants "could not possibly have wanted to pay Glenn out of their own pockets at a time when it was not clear that they themselves would recover any contingent fee at all. Thus, [the] quantum meruit claim should not be held to have accrued until it was clear just what contingent fee Defendants were to receive." (ECF #16 at 19). This argument makes intuitive sense—it would be strange to say that a plaintiff must sue on a theory of unjust enrichment before the exact amount of enrichment can be calculated and before the defendants have actual funds with which to pay.

But despite the innate logic of this argument, the D.C. Court of Appeals has already rejected this line of reasoning. In *Thompsen*, the court discussed and cited with approval the Third Circuit's decision in *Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004). In *Baer*, the plaintiff maintained that he had provided "information, material, and personal stories" to the defendant, who was "the producer and director of the television series *The Sopranos*." (*Thompsen*, 878 A.2d at 1223). The plaintiff provided this material to the defendant in 1995. (*Id.*). *The Sopranos* did not begin to air until 1999. (*Id.*). According to the plaintiff, the defendant used the material that the plaintiff had given to him in episodes of *The Sopranos* without providing compensation to the plaintiff. (*Id.*). The plaintiff sued on a theory of unjust enrichment. (*Id.*).

In these circumstances, the *Baer* plaintiff argued that the statute of limitations on his unjust enrichment claim could not begin to run until 1999. This was so, he argued, because there was an understanding between the plaintiff and the defendant that the plaintiff would not be "entitled to remuneration until *The Sopranos* became a success." (*Id.*). After all, it would make no sense for the defendant to pay for material that had not yet resulted in a tangible profit to the defendant. But the Third Circuit rejected this argument, finding instead that the plaintiff's

expectations of payment and the air date of *The Sopranos* "did not affect the date on which the statute of limitations began to run." (*Id.*). It did not matter that the plaintiff's materials did not result in money in the defendant's pocket until many years later, or that the plaintiff "did not expect remuneration [if] the series came to naught." (*Id.* at 1225). Instead, the focus of the analysis was "the services he provided." (*Id.* at 1224 (quoting *Baer*, 392 F.3d at 623)). And once those services were provided, the statute of limitation could begin to run.[2] Therefore, the Third Circuit held that the statute of limitations for the unjust enrichment cause of action began to run in 1995, not 1999. (*Id.*).

This case is analogous to *Baer*. Just like the plaintiff in *Baer*, Mr. Glenn provided services that did not result in tangible profits to the defendants for many years. And just like the plaintiff in *Baer*, Mr. Glenn did not expect to be remunerated for his services until the defendants had themselves come into money. But just like in *Baer*, these circumstances have no bearing on the accrual of an unjust enrichment claim. Mr. Glenn rendered his last services to the defendants in 2007 and was told he would not be compensated for his services in 2010. Therefore, Mr. Glenn's unjust enrichment claim accrued in 2010 and lapsed in 2013.

For these reasons, the Court will **GRANT IN PART** the defendants' motions to dismiss. Mr. Glenn's quantum meruit claim will be dismissed with prejudice as to all parties.

---

[2] Unlike D.C., the Third Circuit does not appear to have the requirement of "an unjust act" to trigger the running of the statute of limitations. But this does not change the analysis. The D.C. Court of Appeals in *Thompsen* merely discussed *Baer* to explain why the statute of limitations on an unjust enrichment claim can begin to run even before a defendant was expected to or could ultimately profit from plaintiff's services, not to fully endorse its test for accrual of an unjust enrichment claim.

**II.   Mr. Glenn's Breach of Contract Claim Is Not Time-Barred Because The Doctrine of Anticipatory Repudiation Does Not Apply to this Case**

**A. Legal Standard**

In Washington, D.C., the statute of limitations for contract actions is three years. (D.C. Code § 12-301(7)). "A cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach." (*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008) (quoting 1 CALVIN W. CORMAN, LIMITATION OF ACTIONS § 7.2.1, at 482 (1991))). In general, a "contract is breached if a party fails to perform when performance is due." (*Id.* (quoting 9 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 943 (interim ed. 2002))). "Under modern contract principles, an aggrieved party also may be entitled to sue prior to breach if the other party has anticipatorily repudiated the contract." (*Id.* (citing 23 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 63:32 (4th ed. 1993) ("WILLISTON ON CONTRACTS"))). When a party anticipatorily repudiates a contract, the aggrieved party has two choices: (1) the aggrieved party may treat the anticipatory repudiation as a present breach of the contract and sue now, or (2) the aggrieved party may elect not to treat the anticipatory repudiation as a present breach and wait to sue until final performance is due. (*Id.*). "The time of accrual consequently depends on whether the injured party chooses to treat the anticipatory repudiation as a present breach." (*Id.* (quoting 1 CORMAN § 7.2.1, at 488)). Importantly, the anticipatory repudiation alone is never enough to trigger the running of the statute of limitations. There "is a crucial difference between repudiating a contract and breaching it," and "the force and clarity of a repudiation does not transform it into a breach." (*Id.* at 1006–07). The cause of action for breach of contract only accrues and the statute of limitations only begins to run when the anticipatory repudiation is combined with the plaintiff's choice to treat the repudiation as a breach.

But there is a major limitation to the doctrine of anticipatory repudiation. Traditionally, the doctrine does not apply to unilateral contracts. (*Smyth v. United States*, 302 U.S. 329 (1937) ("[T]he rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money only.")). This limitation applies not only to contracts that were unilateral at their outset, but also to "'bilateral contracts that have become unilateral by full performance on one side.'" (23 WILLISTON ON CONTRACTS § 63:60 (quoting *Phelps v. Herro*, 215 Md. 223 (1957)); *see also* 23 WILLISTON ON CONTRACTS § 63:61 ("[W]hen a bilateral contract has become a unilateral obligation by full performance on one side, anticipatory repudiation of that obligation does not permit the immediate filing of an action.")). Thus, the Seventh Circuit describes the limitation in this way: "if the payee has completely performed his side of the contract and is just awaiting payment, he can't declare a beach and sue for immediate payment just because he has reason (even compelling reason) to doubt that the other party will pay when due. (*Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911 (7th Cir. 2001)).

The defendants argue that this limitation is itself limited. They argue that the anticipatory repudiation doctrine is inapplicable only to unilateral contracts for the payment of money in installments, not to unilateral contracts generally. The defendants do not cite any D.C. case law affirmatively supporting this proposition. Granted, Mr. Glenn also does not cite any D.C. case law refuting the proposition. The D.C. courts seem to have been eerily silent on the matter. But when looking for general principles governing the accrual of claims, the D.C. Court of Appeals has relied on well-respected treatises such as LIMITATION OF ACTIONS and WILLISTON ON CONTRACTS (*e.g. Eastbanc*, 940 A.2d at 1004–05 (making use of both of these treatises to explain the law surrounding anticipatory repudiation)). WILLISTON ON CONTRACTS cites with approval the

Ninth Circuit's conclusion that "the general rule [is] that the doctrine of anticipatory breach has no application to suits to enforce contracts for future payment of money only, *in installments or otherwise*." (23 WILLISTON ON CONTRACTS § 63:62 (quoting *John Hancock Mut. Life Ins. Co. v. Cohen*, 254 F.2d 417 (9th Cir. 1958) (emphasis added))).   Therefore, in the absence of a clear statement to the contrary by the D.C. Court of Appeals, this Court concludes that the doctrine of anticipatory repudiation is inapplicable to all unilateral contracts for future payment of money only.

### B. Application – The Agreements Were Unilateral in 2010, So the Doctrine of Breach by Anticipatory Repudiation Is Inapplicable to this Case.

It is clear that the Agreements in this case were unilateral obligations at the time the defendants repudiated them in 2010. The Additional Fee Agreement was a unilateral contract from the outset. That agreement involved the exchange of a promise for an act—F&P promised to pay to Mr. Glenn a portion of the contingent fee received by F&P if Mr. Glenn engaged additional plaintiffs in the *Peterson* case. This is a textbook unilateral contract.

The Associate Counsel Agreement began as a bilateral contract.   That agreement involved an exchange of reciprocal promises—Mr. Glenn promised to represent the *Peterson* plaintiffs in damages proceedings before a Special Master and, in return, F&P promised to pay to Mr. Glenn a portion of any ultimate recovery. This is a textbook bilateral contract. But as the Court discussed earlier, a bilateral contract may become a unilateral contract by full performance on one side.   (23 WILLISTON ON CONTRACTS § 63:60).   This Court awarded damages in the *Peterson* case on September 7, 2007, so by that date at the latest Mr. Glenn completed his end of the bargain. From that point on, the Associate Counsel Agreement was a unilateral obligation or contract. All that remained was for F&P to pay at the required time.

Because the Agreements were both unilateral after 2007, the doctrine of breach by anticipatory repudiation was inapplicable to them after that time. For that reason, the defendants' anticipatory repudiation of the Agreements in 2010 could not give rise to a cause of action for breach of contract. That Mr. Glenn attempted to bring suit in 2010 does not change this—that lawsuit was premature because the doctrine of breach by anticipatory repudiation was inapplicable and no cause of action had arisen. A premature lawsuit does not start the running of the statute of limitations; accrual of a cause of action does. And here, the cause of action could not accrue until the defendants' performance under the contract came due.

The Associate Counsel Agreement is clear about when the defendants' performance (payment) was due—payment was contingent and due "upon collection and to the extent of collection only." (ECF #1-1 at 2). The Additional Fee Agreement is less clear about the specified date of performance, but given the course of dealings between the parties and the contingent nature of the payments, it stands to reason that the defendants' performance under that agreement was also due only upon and to the extent of collection. Therefore, the Court concludes that the defendants did not breach the Agreements until they refused to pay Mr. Glenn following collection of the *Peterson* judgments.

Distributions to the *Peterson* plaintiffs (and related collections of attorney's fees) commenced on June 6, 2016, when Judge Forrest entered an order authorizing the distribution of funds to the *Peterson* plaintiffs and other judgment creditors of Iran. (Order Authorizing Distribution of Funds, ECF No. 651, *Peterson v. Islamic Republic of Iran*, Case No. 10-cv-4518 (KBF) (June 6, 2016)). The defendants' performance was due no earlier than that date. Therefore, Mr. Glenn's cause of action for breach of contract accrued—and the statute of limitations began

to run—no earlier than June 6, 2016. Mr. Glenn's present lawsuit was filed about six months later, on December 22, 2016, well within the three-year limitations period.

For these reasons, the defendants' motions to dismiss will be **DENIED** as to Mr. Glenn's breach of contract claim except as stated in Section III below. Because these grounds are sufficient to deny this portion of the defendants' motions, the Court need not and will not reach Mr. Glenn's other arguments (that his 2010 lawsuit was not an election to treat the defendants' anticipatory repudiation as a breach and that the statute of limitations should be equitably tolled).

### III.     Mr. Glenn Fails to State a Claim Against Fay Law Group Because He Alleges Insufficient Facts to Show that Fay Law Group Assumed the Debts and Obligations of F&P.

In his complaint, Mr. Glenn alleges that "Fay Law Group is a successor to and is responsible for debts incurred by Fay & Perles." (ECF #1 at 2, ¶8). Fay Law Group asserts that this is a threadbare legal conclusion insufficient to sustain a claim against it and moves to dismiss all claims against it pursuant to Rule 12(b)(6) for failure to state a claim.

#### A. Legal Standard

A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff's claim for relief must be plausible on its face. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When a court evaluates a claim for facial plausibility, it "accepts well-pleaded factual allegations in the complaint as true and interprets them in the light most favorable to the plaintiff." (*Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012)). These factual allegations may be "in the complaint, documents attached thereto or incorporated therein, and matters of which [the court] may take judicial notice."

(*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)). And while these factual allegations need not be detailed, they must be sufficient to establish liability and not "merely consistent with a defendant's liability." (*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, 236 (D.D.C. 2013)).

## B. Application

Mr. Glenn argues that Fay Law Group must be F&P's successor because were Fay Law Group "not the successor to F&P, there would be no basis for it to recover any fees in the *Peterson* action, because the *Peterson* plaintiffs executed engagement agreements only with F&P." (ECF #16 at 20). Mr. Glenn essentially argues that because Fay Law Group seems to have acquired one of F&P's assets—the right to payment under the Agreements—it must also have acquired associated liabilities—the requirement to pay Mr. Glenn under the Agreements. While this argument has intuitive appeal, it runs counter to long-established D.C. precedent, which makes clear that "[o]rdinarily, a business entity which acquires the assets of another business is not liable for its predecessor's liabilities and debts." (*Sodexo*, 930 F. Supp. 2d at 236 (quoting *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89 (D.C. 1994))). But there are "four exceptions to this general rule where:"

> (1) The buyer expressly or impliedly agrees to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a "mere continuation" of the selling corporation; or (4) the transactions is entered into fraudulently in order to escape liability for such debts.

(*Id.*).[3] Therefore, in order to survive a 12(b)(6) motion to dismiss, Mr. Glenn must have pled facts sufficient to raise a plausible claim that at least one of these four exceptions applies to this case.

---

[3] The Court questions whether this line of authority is truly applicable to this case because there is no evidence of an actual sale or other transaction transferring payment rights from F&P to Fay Law Group. But the *Sodexo* court applied these doctrines in a case in which there also was no actual sale of assets, (*Sodexo*, 930 F. Supp. 2d at 239), and all the

Mr. Glenn argues that the third, "mere continuation" exception applies to this case. To survive a motion to dismiss, a party arguing that this exception applies must allege facts relating to:

> (1) whether there is a common identity of officers, directors, and stockholders in the purchasing and selling corporations, (2) the sufficiency of the consideration passing from one entity for the sale of its interest in another, (3) whether the old entity failed to arrange to meet its contractual obligations, and (4) whether there is a continuation of the corporate entity of the seller.

(*Id.* at 238). Mr. Glenn pleads almost no facts relating to these factors in his complaint. The complaint does state that Fay is a principal of Fay Law Group and a former principal of F&P. So that is one fact relating to a common identity of officers in the purchasing and selling entities. But the complaint also states that Perles, another former principal of F&P, is not a principal of Fay Law Group, which tends to show that the officers of F&P and Fay Law Group do not have an entirely common identity. So the first factor is a wash. Beyond that, however, Mr. Glenn pleads no relevant facts supporting his claim that Fay Law Group is a successor in liability to F&P. The complaint contains no discussion of any consideration passing from Fay Law Group to F&P in exchange for rights to payment under the Agreements. The complaint alleges no facts regarding a failure by F&P to arrange to meet contractual obligations (perhaps the defendants Fay and Perle, as the principals of F&P, were to be personally responsible for them; or perhaps F&P did not believe it had any more contractual obligations; the Court does not know and the complaint does not tell it). And the complaint also alleges no facts showing that the seller's (F&P's) corporate identity has continued in Fay Law Group. Therefore, the Court concludes that Mr. Glenn has not

---

parties rely on this line of authority in making their arguments. Therefore, following the lead of *Sodexo* and the parties, this Court will assume without deciding that these doctrines apply to a case such as this.

pleaded sufficient facts to state a plausible claim that Fay Law Group is a successor in interest to F&P.

Mr. Glenn, relying on *Reese Bros., Inc. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31 (D.D.C. 2007), argues that his pleadings do meet the pleading requirements for the third exception—*i.e.* that Fay Law Group is a mere continuation of F&P. In *Reese Bros.*, a complaint premised on "mere continuation" successor liability survived dismissal when the companies at issue had similar names, shared a common mailing address, and engaged in an identical business. (*Id.* at 41). But the Court is not persuaded that the *Reese Bros.* case helps Mr. Glenn. First, Mr. Glenn's case is weaker than that of the plaintiff in *Reese Bros.* While F&P and Fay Law Group have similar names and both engage(d) in the practice of law, Mr. Glenn does not plead that they have a common mailing address or that the law practice in which Fay Law Group is engaged is identical to the practice in which F&P engaged. Second, and more importantly, the *Reese Bros.* case predates the Supreme Court's *Twombly* and *Iqbal* decisions, which increased the factual hurdle that a complaint must overcome to survive dismissal. *Reese Bros.* explicitly relied on the lesser pleading requirements that the Supreme Court rejected in *Twombly* and *Iqbal*. (*Id.* at 40 (reciting the now-defunct lesser pleading standard under which it was "not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, or plead law or match facts to every element of a legal theory") (internal quotations omitted)). And because *Reese Bros.* relied on a no-longer-applicable legal standard, its result may have been (and likely would be) different had the case been brought today.

The *Reese Bros.* case, then, is a case of weak facts that barely survived a lower pleading standard than exists today. In the present case, the pleaded facts are even weaker and the pleading standard is higher. Therefore, the Court finds that Mr. Glenn fails to plead facts sufficient to state

a plausible claim against Fay Law Group.  The Court will **GRANT** Fay Law Group's Motion to Dismiss as to all claims against it.

### The Fay Defendants' Motion for Summary Judgment

The Fay defendants label their motion as a motion either to dismiss or, in the alternative, for summary judgment.  Given that they make no specific arguments for summary judgment as opposed to dismissal, the inclusion of an alternative motion for summary judgment was most likely done as a safety measure just in case the Court was unwilling to consider the copy of Mr. Glenn's New York lawsuit that the Fay Defendants attached to their motion as part of a motion to dismiss.  But that lawsuit, its outcomes, and the dockets therein are matters of public record of which the Court could simply have taken judicial notice.  And matters which a court can take under judicial notice may be considered as part of a motion to dismiss under Rule 12(b)(6).  (*Abhe & Svoboda*, 508 F.3d at 1059).  For that reason, the Court is able to dispose of the merits of the Fay defendants' motion within the framework of a motion to dismiss and does not need to resort to the framework of a motion for summary judgment.   To the extent, then, that the Fay defendants' motion is construed as a motion for summary judgment, the motion will be **DENIED**.

### Conclusion

For the reasons given above, the Court will take the following actions:

- **GRANT IN PART AND DENY IN PART** the Fay defendants' Motion to Dismiss (ECF #10).
    - The motion to dismiss will be granted as to Fay Law Group.  All claims against Fay Law Group will be dismissed with prejudice and Fay Law Group will be dismissed from this case.
    - The motion to dismiss will be granted in part and denied in part as to Thomas Fay.  The plaintiff's quantum meruit claim against Mr. Fay will be dismissed as time-barred.  But the plaintiff's breach of contract claim will remain before the Court.

- **DENY** the Fay Defendants' alternative Motion for Summary Judgment (ECF #10).

- **GRANT IN PART AND DENY IN PART** the Perles defendants' Motion to Dismiss (ECF #12).
  - The plaintiff's quantum meruit claim against the Perles defendants will be dismissed as time-barred. But the plaintiff's breach of contract claim will remain.

**A separate order shall issue.**

SIGNED this _____15th_____ day of December, 2017.


HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE