# Exhibit A to Declaration of Steven G. Storch

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 17-7012**                                            **September Term, 2017**

FILED ON: FEBRUARY 16, 2018

DEBORAH D. PETERSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES C. KNIPPLE (DECEASED), ET AL.,
        APPELLEES

v.

ISLAMIC REPUBLIC OF IRAN, MINISTRY OF FOREIGN AFFAIRS AND IRANIAN MINISTRY OF INFORMATION AND SECURITY,
        APPELLEES

COOK COLLECTION ATTORNEYS, PLC AND DAVID J. COOK, ESQ., LIENHOLDER,
        APPELLANTS

Consolidated with 17-7013

Appeals from the United States District Court
for the District of Columbia
(No. 1:01-cv-02094)

Before: TATEL, SRINIVASAN and PILLARD, *Circuit Judges*.

## **J U D G M E N T**

The court considered these appeals on the record from the United States District Court for the District of Columbia, and the briefs and arguments of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the order of the district court be **AFFIRMED** for the reasons stated in the memorandum accompanying this judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED R. APP. P. 41(b); D.C. CIR. R. 41(b).

## PER CURIAM

                                                 **FOR THE COURT:**
                                                 Mark J. Langer, Clerk

BY:       /s/
            Ken Meadows
            Deputy Clerk

*Peterson, et al. v. Islamic Republic of Iran, et al.*, No. 17-7012 (consolidated with 17-7013)

## MEMORANDUM

### I.

Appellants David Cook and Cook Collection Attorneys, PLC (collectively, Cook) and Jay Glenn appeal from the district court's order quashing their notices of attorney's charging liens against the Qualified Settlement Fund (QSF), a New York-based trust currently administered "for the benefit of the plaintiffs" in this case. *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 101 (D.D.C. 2016). Plaintiffs were United States service members (or family or estates thereof) killed or injured in a 1983 suicide bombing in Lebanon. The district court found sufficient evidence that Hezbollah carried out the attack with the assistance of Defendants the Islamic Republic of Iran and its Ministry of Information and Security and, because Defendants failed to appear, the court entered default judgment. *See Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003).

Various counsel acting on behalf of Plaintiffs managed to find, freeze, and eventually seize $1.75 billion from an Iran-linked New York bank account. *See Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1319-21 (2016); *Peterson*, 220 F. Supp. 3d at 101. Those funds were deposited in the QSF pending distribution. Hundreds of plaintiffs expect to be paid what they are owed. So do a number of lawyers, including Appellants Cook and Glenn. Cook and Glenn claim they are due compensation for work they did, under the leadership of lead litigation counsel Thomas Fay and Steven Perles, to help to achieve the successful resolution for Plaintiffs. Plaintiffs are appellees here, still represented by Fay & Perles.[*]

This appeal concerns only Cook's and Glenn's efforts to establish that, pending resolution of their claims for fees and costs, those claims are secured by funds Plaintiffs obtained in the judgment. In the order at issue here, the district court emphasized—as do we—that as of yet it has made no determination "whether or how much the attorneys here will be compensated." *Peterson*, 220 F. Supp. 3d at 105.

Fay & Perles's own "Contingent Retainer Agreement" with each plaintiff accorded them "33 1/3 % of the total gross recovery." Joint App'x (J.A.) 177; *see also Peterson*, 220 F. Supp. 3d at 102. Glenn contends that Fay & Perles enlisted him to represent certain of the plaintiffs before a special master responsible for deciding the extent of those individual plaintiffs' damages, and that they also hired him to engage certain additional plaintiffs he identified to be represented by Fay & Perles. Glenn Br. 2-3. Glenn contends that Fay & Perles agreed in writing to pay him "3%

---

[*] This judgment refers to "Fay & Perles" as shorthand for lead litigation counsel. Lead litigation counsel comprises multiple parties. *See Glenn v. Fay*, No. 16-cv-2498, __ F. Supp. 3d __, 2017 WL 6501748, at *1 (D.D.C. Dec. 18, 2017). We understand those parties may also be disputing one another's fees, but those issues are not before us in this appeal.

3

of the gross amount collected" on judgments for plaintiffs he represented before a special master, and, orally, to pay him one-third of amounts Fay & Perles collected on plaintiffs he engaged for them. *Id.*; *see also* J.A. 408, 410; *Peterson*, 220 F. Supp. 3d at 102. Cook, for his part, contends that Fay & Perles enlisted him to help collect on the judgment, and that his retainer entitled him to "a contingency fee of 10% on any net recovery, as received." J.A. 318; *Peterson*, 220 F. Supp. 3d at 102.

Pending resolution of the various claims for fees and costs, Glenn and Cook each asserted entitlement to an attorney's charging lien. The district court denied them any such liens against judgment proceeds flowing to Plaintiffs. The court emphasized that neither Cook's nor Glenn's agreement established a right to recovery against Plaintiffs' portion of the judgment; each attorney claimed a fee to be paid only from Fay & Perles's portion. The court noted that "Glenn claims that his additional fee came out of Fay and Perles' contingency fee, and not the plaintiffs' recovery." *Peterson*, 220 F. Supp. 3d at 108. "While Glenn may have a claim against Fay and Perles based on their agreement, he can assert no charging lien against plaintiffs here." *Id*. For his part, Cook similarly "failed to show that plaintiffs . . . agreed to have Cook's fee paid from their judgment." *Id.* at 109. The district court stressed that its "decision here should not be taken as an opportunity to delay plaintiffs' recovery further." *Id.* at 111. The court reiterated that it had yet to decide the merits of the attorneys' relative entitlements to fees and expenses. *Id*.

Counsel have since informed us that proceedings are now underway to determine the merits of both Glenn's and Cook's claims to fees from Fay & Perles—Glenn's in the district court, and Cook's in arbitration. *See Glenn v. Fay*, No. 16-cv-2498, __ F. Supp. 3d __, 2017 WL 6501748 (D.D.C. Dec. 18, 2017) (denying dispositive motions on Glenn's breach of contract claims); Cook's Notification of Withdrawal of One of Two Issues on Appeal (Jan. 3, 2018) (describing status of Cook's arbitration proceedings); Oral Arg. Rec. at 40:00-40:25, 41:15-41:30, 42:20-42:40. We have before us only the narrow issue whether the district court correctly denied attorney's charging liens.

## II.

A lien acts as security for a debt, and its existence and validity are distinct from the merits of the debt itself. A lien may be provided by statute (as with a mechanic's lien), by express terms of the parties' contract (Fay & Perles say their retainer agreement with Plaintiffs includes a right to such an express lien against the judgment), or as an equitable matter by operation of law. *See Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996). An equitable attorney's charging lien is of the third type, running by operation of law against funds obtained as a result of the attorney's work on the client's behalf. *Id*. The law of the District of Columbia applies here, and it provides that an attorney's charging lien arises by operation of equity from a lawyer-client agreement "from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered." *Id*. (emphasis omitted). In other words, a lawyer's lien against a client's funds may arise by operation of law, but it requires proof of (1) an agreement between lawyer and client (2) contemplating that the lawyer's fee will be paid from the client's judgment. *See Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 941 F.2d 1217, 1219 (D.C. Cir. 1991) (per curiam); *Hahn v. Or. Physicians'*

4

*Serv.*, 786 F.2d 1353, 1355 (9th Cir. 1985).

The equitable rationale for such a lien is apparent. Many a meritorious case will never be brought unless counsel agree to represent plaintiffs based, for example, on a contingent agreement to be paid from any funds that may be recovered. But once in receipt of a judgment—the full amount of which typically will have been calculated to make the client whole—the client may be unwilling to relinquish part to the attorney, or unable to do so in the face of prior creditors who would consume the judgment. By claiming an implied lien, the attorney invokes the power of the court to preserve the judgment pending payment of the contracted-for charges. The attorney thus stakes "claim to the equitable interference by the court to have [the client's] judgment held as a security for his debt." *Lyman v. Campbell*, 182 F.2d 700, 702 (D.C. Cir. 1950). In the District of Columbia, "the trend of the modern decisions . . . [is] to protect the right of the attorney to receive compensation." *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1170 (D.C. 1991) (brackets omitted).

The question here is whether either Cook or Glenn is entitled to invoke the power of the court to withhold payment of any part of the judgment from Plaintiffs pending payment of costs and fees to which to Cook and Glenn may be entitled. The district court held that they are not, and we agree.

We are told that, while much of the distribution of damages to Plaintiffs has occurred, its completion is being delayed at least partly in view of Cook's and Glenn's pending claims for attorney's fees and costs. Counsel for Plaintiffs reported at oral argument that "much of the money has been distributed [to Plaintiffs], but some of the money is still being retained by Judge [Stanley] Sporkin, who is the trustee of the QSF"; counsel represented to the court that "this litigation is part of the hold-up." Oral Arg. Rec. at 15:45-16:15. Cook's counsel added that he believed that "something in the neighborhood of 95% has been distributed to the plaintiffs." *Id.* at 26:50-27:00.

Cook's and Glenn's lien claims do not support any such delay. Their disputes are manifestly with Fay & Perles, and not with Plaintiffs themselves. Although Glenn avers that he informed clients he referred to Fay & Perles that he would be compensated for their referrals, the district court correctly observed that any such payment "came out of Fay and Perles' contingency fee, and not the plaintiffs' recovery." *Peterson*, 220 F. Supp. 3d at 108. And, for essentially the reasons stated by the district court, the agreement Cook struck with Fay & Perles similarly does not constitute an agreement with Plaintiffs "to have Cook's fee paid from their judgment." *Id.* at 109. So neither Glenn nor Cook had the sort of agreement with Plaintiffs that D.C. law requires before a lien could be asserted against the portion of the judgment flowing to Plaintiffs themselves. *See Wolf*, 682 A.2d at 197; *Elam*, 598 A.2d at 1169; *Democratic Cent. Comm. of D.C.*, 941 F.2d at 1219. Neither Glenn nor Cook has equitable grounds unilaterally to hold up full distribution to Plaintiffs as a means of obtaining leverage for their own fees and costs against Fay & Perles (or against others who may have competing claims to the lawyers' one-third of the judgment).

In so holding, we accept the premise (on which all parties seem in accord) that Plaintiffs seek distribution to themselves of only the portion of the recovery—their two-thirds—that is not subject to the lawyers' contingency fee. And the parties before us affirm that they do not seek any

5

part of Plaintiffs' share:

- Fay & Perles acknowledge that any payment of Cook's or Glenn's compensation will be Fay & Perles's responsibility, not Plaintiffs'. *See* Oral Arg. Rec. at 16:30-17:00 (lead litigation counsel representing that they "assume responsibility for," and fully intend to "insulate" Plaintiffs from, any amounts to which Cook establishes he is entitled); *id.* at 39:45-40:00 ("If an award is made [to Cook] in the arbitration, litigation counsel will pay it."); *id.* at 40:30-40:45 ("I can represent that counsel will take the position that they are responsible for an award to Mr. Glenn in the same way.").

- And both Cook and Glenn now offer no objection to full payment being made to Plaintiffs while the lawyers resolve their disputes among themselves. *See* Glenn Br. 7 ("Glenn's charging lien did not assert any interest in plaintiffs' recoveries, but only in that portion that plaintiffs would not be able to retain because it was payable to Fay & Perles—the lien attaches to Fay & Perles' interest in the recoveries, not plaintiffs'."); Oral Arg. Rec. at 25:00-25:20 (Cook: "There has been an understanding between all of the claimants as to the QSF Trust that nobody is making a claim as to Plaintiffs' proceeds, and they can be distributed. There's no delay in that."); *id.* at 26:00-26:30 (Cook: "The charging lien can be limited, and we are perfectly agreeable to that, limiting it to not the plaintiffs' proceeds directly but only that share of the proceeds that go to the litigation attorneys. Nobody wants to hold up money for the plaintiffs, and I think everybody—all counsel are in agreement on that.").

Faced with a dispute over amounts which—all agree—are owed, if at all, by Fay & Perles and can be adequately secured, if at all, by the third of the judgment designated to compensate lawyers, we affirm the decision of the district court that attorneys' charging liens addressed to the Plaintiffs are the wrong mechanism to secure whatever payments Cook and Glenn are due.

We do not, however, understand the district court to have decided whether to release directly to Fay & Perles the lawyers' third of the QSF—i.e. the portion of the judgment set aside to compensate Fay & Perles and anybody to whom they promised a share in exchange for work done for Plaintiffs. Affirmance that Glenn and Cook have no attorney's charging liens against the portion of the judgment flowing to Plaintiffs simply does not address whether their claims are secured vis-à-vis Fay & Perles. Fay & Perles inform us that they enlisted a "small army" of lawyers to labor on Plaintiffs' behalf, and that those lawyers signed on with the expectation that, if and when Plaintiffs' claims succeeded, they would be paid out of Fay & Perles's portion of the judgment. *See* Oral Arg. Rec. at 15:15-15:30. Lead litigation counsel stated at oral argument that they have an "ethical duty . . . to sequester contested funds that are in their possession" until such disputes are resolved. *Id.* at 37:45-38:00.

Perhaps the district court has equitable authority to backstop those assurances. Principles of equity in the District of Columbia may well recognize some or all of the other lawyers' rights to security in judgment proceeds flowing to Fay & Perles. We do not understand the district court

6

to have broadly foreclosed any and all equitable grounds on which Glenn's and Cook's claims—or, indeed, those of any other lawyers similarly situated—might be secured pending resolution of their merits. We need not and do not address any equitable claim beyond the assertion of an attorney's charging lien against claims set to be distributed to Plaintiffs themselves. The district court may, in its judgment, determine whether and how to address any such issue that remains.

### III.

This appeal arose out of complex and long-running litigation, spanning multiple jurisdictions. For well over a decade the district court has ably managed the cases at the heart of all this—Plaintiffs' claims to compensation for their injuries. In the post-judgment phase of this litigation, much of the action has shifted to New York. And since Plaintiffs' recovery, the first priority of all counsel, and of the courts, appropriately has been prompt payment of the compensation to which Plaintiffs are entitled.

The decision we affirm appropriately ensures that the process of paying Plaintiffs from the QSF may proceed to a close. Meanwhile, we have full confidence that the district court, imbued as it is with considerable equitable powers, can continue to guide whatever portion of the lawyers' dispute remains before it to a fair and efficient resolution.