# Exhibit C to Declaration of Steven G. Storch

# *Steven R. Perles' Memorandum of Points and Authorities In Support of Motion for Prompt Distribution of Undisputed Funds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.,<br><br>                Plaintiffs,<br><br>vs.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>                Defendants. | 10-cv-4518 (KBF) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PROMPT DISTRIBUTION**
**OF UNDISPUTED FUNDS**
**AND ASSIGNMENT OF DISPUTED FUNDS TO MEDIATION**

      Steven R. Perles ("Perles") requests that the Court order the Trustee of the Qualified Settlement Fund ("QSF"), the Honorable Stanley Sporkin, to promptly distribute all <u>undisputed</u> attorney fees funds and to deposit the <u>disputed</u> attorney fee funds into the registry of the Court. Furthermore, Perles requests an Order directing the claimants to those disputed funds, all of whom are attorneys, to participate in mediation to resolve the disputes pertaining to those disputed attorney fee funds. Perles further requests an Order assigning The Honorable Denise Cote of this Court to serve as the mediator in this regard.

**BACKGROUND**

      Through the admirable efforts of a number of attorneys[1], the victims of the 1983 bombing of the Marine Corps Barracks in Beirut, Lebanon, and their family members, obtained judgments not only for liability against Iran but also for significant monetary judgments after

---

[1] Perles and Thomas Fortune Fay spearheaded the litigation beginning in the United States District Court for the District of Columbia in 2001 and since then have served as lead counsel throughout the long history of these cases.

1

nearly two decades of litigation. Against all odds and contrary to the predictions of many, the plaintiffs through their attorneys were able to seize and monetize assets in New York which have commonly been referred to as the "Clearstream Assets." Those assets were sufficient to satisfy a great portion, but not all, of the monetary damages judgments entered in favor of the plaintiffs. The proceeds of those assets have been deposited into a QSF under the auspices of this Court, with Judge Sporkin serving as the Trustee.

Thankfully a large percentage of the plaintiffs' portion of the QSF funds has been distributed, although certain funds remain undistributed to the plaintiffs for various reasons. At the same time, the portion of the QSF that represents earned attorney fees – approximately one-third of the total – has been the subject of virtually ceaseless squabbling, motions, protests, liens, litigation, and arbitration among the attorneys, some of whom entered appearances in one or more cases, and some of whom appeared only later in order to demand a portion of the attorney fees.

In December of 2016, the Trustee paid out a total of $250,000,000 to the various attorneys who have appeared in the cases. But $300,349,487.74 of attorney fees remains unpaid from the QSF.

On June 7, 2017 (Document 775), this Court appointed Kathleen M. Massey of the Dechert law firm to serve as Special Master with regard to the disputes among the attorneys regarding which attorneys should be paid what from the QSF. Special Master Massey accepted reports and documents from the various attorneys and on November 29, 2017 she issued a Report and Recommendation pertaining to the issue of the allocation of attorney fees.[2] (See Document # 863, accepting the Report and Recommendation.) The clear purpose of Special Master

---

[2] Special Master Massey has also addressed other matters not involving attorney fees, which are the subject of separate Reports that she has issued to the Court. Those are not the subject of this Motion.

Massey's Report and Recommendation was to clear funds out of the QSF, a recommendation that Perles supports. Yet merely distributing the funds from the QSF will not resolve the disputes among the attorneys regarding which attorneys are entitled to what fees, although the sum of the disputed attorney-fees-funds are much smaller than the sum of the undisputed attorney-fee-funds. Instead, distribution of funds over which disputes remain will result in additional, and most likely protracted and expensive, litigation or arbitration.[3] For these reasons, Perles requests that the Court proceed to direct the Trustee to distribute the remaining attorney fee funds portion of the QSF, but to allocate the funds into two categories:

A. Undisputed funds, which should be distributed promptly to named attorneys; and

B. Disputed funds, which should be paid over the registry of the Court for disposition following mediation before Judge Cote.

**DETERMINATION OF DISPUTED AND UNDISPUTED FUNDS**

Attached to this Memorandum as Exhibit 1 is a spreadsheet that details the disputed and undisputed attorneys funds.

A summary of Exhibit 1 is as follows:

Undisputed funds that should be distributed at this time:    $267,516,710.31
Disputed funds that should be mediated:    $ 34,609,915.79

Undisputed funds are those that Perles agrees should be distributed and to which no dispute exists. Disputed funds are those to which a dispute has been made regarding the appropriate allocation of the funds among the various attorneys. Specifically, the disputes arise as the result of claims to fees by the following attorneys: Joseph Peter Drennan, Patrick Donahue, Dan Gaskill, and John Karr (deceased, via his partner Theodore Allison) (which Perles

---

[3] By letter to Special Master Massey dated December 15, 2017, a copy of which is attached as Exhibit 2, counsel for Perles noted Perles's objections to the Special Master's Report and reserved his rights regarding the disputed funds, among other things.

3

has referred to collectively as the "Follow-On Attorneys," or "FOA") and the law firm of Heideman, Nudelman & Kalik ("HNK").

Perles maintains that funds for the cases in which the FOA and/or HNK participated should be allocated at the rate of two-thirds to the partnership known as the Fay and Perles FSIA Litigation Partnership ("F&P"), which consists of attorneys Fay and Perles and which spearheaded this litigation, whereas other attorneys involved in those cases maintain that F&P is entitled to only one-third or even one-quarter of the fees. In differentiating between disputed and undisputed funds, Perles has treated one-third (33%) of the fees as being payable to the FOA and/or HNK, depending on the case. The difference between that amount and the amount that the FOA and/or HNK claim is the disputed amount.

An example using one of the Follow-On Cases[4] will illustrate this methodology. In the *Anderson* case, total attorney fees payable are $966,957.82. Fees payable out of that total to the New York Collection Attorneys (that is, Bonner, Vogel, and Fleischman) total $137,791.49. The balance of fees payable to all other attorneys who handled the case (after payment to the New York Collection Attorneys) is $829,166.33. In the *Anderson* case, FOA attorneys Donahue, Drennan, and Gaskill claim that collectively they are entitled to 75% of those fees. Their claim is for $621,874.75, collectively. Perles maintains that the FOA are entitled to 33% of the fees

---

[4] All of the liability cases arising out of the bombing were filed in the U.S. District Court for the District of Columbia. The initial, and lead, case is styled *Peterson v. Islamic Republic of Iran*, 01-cv-2094-RCL (D.D.C.). After the *Peterson* case was filed, other cases arising out of the bombing were filed on behalf of other victims or family members. Those cases were filed in the same court and were also assigned to Judge Royce Lamberth. Those cases relied on the pleadings and proceedings in the original *Peterson* case. In fact, in each of those cases, the plaintiffs asked the Court to take judicial notice of the trial and the liability judgment awarded in the initial *Peterson* case. Accordingly, as those cases followed on after *Peterson* and relied on that case, they are referred to as the "Follow-On Cases." The Follow-On Cases include the following cases, all naming the Islamic Republic of Iran as a defendant: *Anderson, Arnold, O'Brien, Taylor, Valore, Spencer I, Spencer II, Murphy, Bland, Brown, Bond, Fain, Worley*, and *Davis*.

collectively, which is $276,361.14 (which is $92,120.38 to each of the three FOA in the *Anderson* case.) Perles treats that amount as undisputed. The difference of $345,513.61 is disputed. Exhibit 1 summarizes the totals of disputed and undisputed fees for all cases.[5]

Perles requests an Order directing the Trustee to distribute the undisputed funds to the attorneys pursuant to Exhibit 1, and an Order directing the Trustee to pay the amount reflected as disputed into the Registry of the Court to be held pending mediation among the attorneys involved.

Perles notes that Exhibit 1 is built on spreadsheets previously prepared by Caragh Fay and the Fay Law Group, which were previously submitted to the Trustee and to the Special Master, and to which, as far as Perles understands it, the FOA and HNK have consented or otherwise raised no objection.

**MEDIATION WOULD FACILITATE EXPEDITIOUS RESOLUTION OF DISPUTES**

Perles requests that the disputed funds be the subject of mediation because that will be a prompt and efficient means of addressing and resolving the outstanding disputes among the competing attorneys for the attorney fee funds portion of the QSF. This Court will recall that Judge Denise Cote served admirably as the mediator in connection with disputes that arose in the case of *In re 650 Fifth Avenue*, 08-cv-10394 (S.D.N.Y.) (for example, see Document 2074 in that case), which has parallels to the instant matter. Judge Cote would be ideal to act a mediator with respect to this matter, and Perles requests that the issues pertaining to the disputed attorney fee funds be sent to her for that purpose.

---

[5] Although Perles has submitted this Motion on his own behalf, disputed fees that are ultimately paid to F&P could potentially redound to the benefit of attorney Thomas Fortune Fay, should he elect to participate in the requests set forth in this Motion.

Perles notes that this Court has the authority to send these disputes to mediation as requested by Perles because the funds at issue are clearly under the purview and control of the Court.

## CONCLUSION

For the reasons set forth above, Perles requests that this Court issue an Order directing the Trustee of the QSF to distribute, promptly, all undisputed attorney fee funds, in the amount of $267,516,710.31, in accordance with Exhibit 1.  Perles also request that the Court issue an Order directing the Trustee to pay the disputed attorney fee funds from the QSF, in the amount of $34,609,915.79, to the registry of the Court, and that the Court appoint The Hon. Denise Cote to serve as the mediator with respect to the resolution of the disputes pertaining to the disputed funds.

Dated: March 28, 2018

                                        Respectfully submitted,

                                        */s/ Steven R. Perles*_____
                                        Steven R. Perles, *pro hac vice*
                                        PERLES LAW FIRM, P.C.
                                        1050 Connecticut Avenue, N.W.
                                        Suite 500
                                        Washington, DC 20036
                                        202-955-9055
                                        sperles@perleslaw.com

# *Declaration of Steven R. Perles In Support of Motion for Prompt Distribution of Undisputed Funds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | 10-cv-4518 (KBF) |

**DECLARATION OF STEVEN R. PERLES
IN SUPPORT OF MOTION FOR PROMPT DISTRIBUTION
OF UNDISPUTED FUNDS
AND ASSIGNMENT OF DISPUTED FUNDS TO MEDIATION**

I, Steven R. Perles, an attorney duly admitted to practice law before this Court, declare under penalty of perjury:

1. My name is Steven R. Perles. I am a member of the Perles Law Firm, P.C., attorneys for *Peterson* Plaintiffs in the above-captioned action. I make this declaration in support of the Motion For Prompt Distribution Of Undisputed Funds And Assignment Of Disputed Funds To Mediation.

2. I am an attorney licensed to practice law in the District of Columbia and Virginia. I have been admitted *pro hac vice* in the instant case in this Court.

3. The current motion involves my request that the Court instruct the Trustee of the QSF to pay undisputed fees to the attorneys who represented plaintiffs injured as a result of the 1983 bombing of the Marine Corps Barracks in Beirut, Lebanon. The motion further requests that the Court instruct the trustee to pay disputed fee funds into the Court registry.

1

4.      The disputes at issue arise as the result of claims to fees by the following attorneys: Joseph Peter Drennan, Patrick Donahue, Dan Gaskill, and John Karr (deceased, via his partner Theodore Allison) (which Perles has referred to collectively as the "Follow-On Attorneys," or "FOA") and the law firm of Heideman, Nudelman & Kalik ("HNK").

5.      In my over three decades of private practice of law, I have brought many cases under the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran (Iran) for its state sponsorship of terrorism. As either lead counsel or of counsel, I have represented clients in twenty-two cases against Iran.

6.      Attorney Thomas Fortune Fay and I formed the Fay and Perles FSIA Litigation Partnership (referred to herein as "F&P") in 2001 for, among other things, the purpose of pursuing cases under the FSIA against Iran and other sponsors of terrorism.

7.      Following lengthy investigation, Mr. Fay and I filed the first Complaint against Iran arising out of the 1983 suicide bombing of the U.S. Marine Corps Barracks in Beirut, Lebanon. The initial Complaint was filed in 2001 in the case styled *Peterson v. Islamic Republic of Iran*, case no. 1:01-cv-02094-RCL (D.D.C.) in the U.S. District Court for the District of Columbia. This was the lead case.

8.      F&P took the *Peterson* case to trial on liability. Using the extensive factual material that we developed during our investigation, F&P obtained a liability judgment against Iran and its security apparatus: the Iranian Ministry of Information and Security, or "MOIS." That judgment was entered on May 30, 2003. In establishing Iran's liability, F&P presented evidence from numerous lay and expert witnesses and provided other evidence from which Judge Lamberth was able to determine the liability of Iran and enter judgment accordingly.

9. Notably, none of the FOA or HNK participated in the trial conducted by F&P or in obtaining the liability judgment in the original *Peterson* case.[1]

10. Judge Lamberth summarized the extent of the testimony and other evidence presented from lay and expert witnesses over eleven pages of his opinion, which was issued on May 30, 2003, and reported at *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003). In his decision, Judge Lamberth ordered that judgment on liability be entered in favor of the plaintiffs against Iran and its security agency, and he ordered that damages claims be submitted to special masters.

11. The liability judgment obtained on May 30, 2003, did not include damages awards for any plaintiff. Instead, the Court requested damages evidence for each of the 811 *Peterson* plaintiffs. The Court appointed a handful of special masters to hear evidence of damages from each plaintiff and to submit a recommendation to the Court as to the amount of a judgment to be entered in favor of each plaintiff.

12. Because there were so many plaintiffs, and because they were scattered throughout the country, F&P were not able to collect damages evidence from each plaintiff. Therefore, F&P entered into contracts with 14 other lawyers to assist in that regard. Those other lawyers were responsible for taking depositions and collecting other evidence of damages, including pain and suffering, loss of consortium, etc. These additional attorneys have been referred to throughout this matter as the "Damages Attorneys." The evidence that they collected was presented to the special masters for the purpose of determining appropriate dollar damages awards for each plaintiff.

---

[1] Dan Gaskill did participate in the trial to a minor extent, but at the time that he did so, he was a salaried employee of F&P.

3

13. After the *Peterson* case was filed, other cases arising out of the bombing were filed on behalf of other victims or family members. Those cases were filed in the same court and were assigned to the same Judge, Royce Lamberth. Those cases relied on the pleadings and proceedings in the original *Peterson* case. In fact, in each of those cases, the plaintiffs asked the Court to take judicial notice of the trial and the liability judgment awarded in the initial *Peterson* case. Accordingly, as those cases followed on after *Peterson* and relied on that case, they are referred to as the "Follow-On Cases." The Follow-On Cases include the following cases, all naming the Islamic Republic of Iran as a defendant: *Anderson, Arnold, O'Brien, Taylor, Valore, Spencer I, Spencer II, Murphy, Bland, Brown, Bond, Fain, Worley*, and *Davis*.

14. The FOA and/or HNK handled some of those cases, entering their appearances as lead counsel for the plaintiffs. But, those cases were developed by F&P, and the FOA or HNK, depending on the case, were referred into the cases by F&P. All of the Follow-On Cases were developed as a direct result either of referrals by F&P or as a result of work that F&P hired the FOA to perform as Damages Attorneys in the original *Peterson* case.

15. The Follow-On Cases, and the FOA and HNK cases in which they were involved, are set forth in this table:

| Case | Date on which case initiated | Attorneys Now Seeking Fees |
|---|---|---|
| *Valore*, 03-1959 | 09/16/2003 | Drennan, Gaskill, Donahue |
| *Bland*, 05-2124 | 10/30/2005 | HNK |
| *Arnold*, 06-516 | 03/10/2006 | Drennan |
| *Murphy*, 06-596 | 03/31/2006 | Karr |
| *O'Brien*, 06-690 | 04/17/2006 | Drennan, Donahue |
| *Spencer I* (Silvia), 06-750 | 04/24/2006 | HNK |
| *Brown*, 08-531 | 03/27/2008 | HNK |
| *Anderson*, 08-535 | 03/27/2008 | Drennan, Donahue |

4

| *Taylor*, 10-844 | 05/20/2010 | Drennan, Gaskill, Donahue |
| *Spencer II*, 12-042 | 01/10/2012 | Drennan, Donahue, HNK (plaintiff specific) |

16. Even though the Follow-On Cases were separate lawsuits, they were mere cookie-cutter copies of the *Peterson* action. The reality is that the FOA did little more in the Follow-On Cases than was required of the Damages Attorneys in *Peterson*. The Follow-On Cases involved merely repackaging the pleadings and arguments that were perfected in the *Peterson* case by F&P.

17. In each of the Follow-On Cases, the pleadings presented were, in all substantive respects, copies of the pleadings in *Peterson*. The substantive allegations were the same. Moreover, to obtain judgments, the FOA and/or HNK, depending on the case, merely asked Judge Lamberth to take judicial notice of the judgment that he entered in *Peterson*, based on the evidence that F&P so painstakingly collected and presented in that case. Neither the FOA nor HNK went to trial in any of the Follow-On Cases. In this regard, the motions for entry of default judgments that they filed were essentially the same as that prepared and filed by F&P in *Peterson*, and the judgments ultimately entered by Judge Lamberth simply referred back to his original judgment in *Peterson*. Indeed, it is not an exaggeration to say that the Follow-On Cases were rubber-stamped copies of the *Peterson* case, in which neither the FOA nor HNK were involved.

18. None of this is surprising because the Follow-On Cases were obviously extensions of the original *Peterson* case, brought before the same judge that had handled the original case.

19. The fees to which the FOA and HNK are entitled are no more than one-third of the total attorney fees due in a given case. Nevertheless, depending on the number of FOA attorneys involved in a given case, the FOA and/or HNK have demanded either two-thirds or three-quarters of the entire attorney fee for the case, leaving F&P with only either one-third or one-quarter. This is contrary to my understanding of the fee arrangements and is seriously disputed by me. It is my contention that two-thirds of the attorney fees due in each of the Follow-On Cases are to be paid two-thirds to F&P with the remaining one-third to be split among whichever other attorneys were involved in the case.

20. $300,349,487.74 is currently the amount of attorney fees that remains unpaid from the QSF. Of that amount, $267,516,710.31 is undisputed and should be distributed without further delay. The remaining $34,609,915.79 is disputed and should be paid into the Court registry and submitted to mediation.

21. The total amount of attorney fees claimed collectively by the FOA and HNK is $67,127,301.55. Of this amount, $34,609,915.79 represents fees in excess of the one-third fee that is payable to the FOA/HNK group as a whole, and it is that amount which is disputed.

22. Attached as Exhibit 1 is a spreadsheet that details the amounts of the undisputed and disputed attorney fee funds.

23. The figures contained in Exhibit 1 come from spreadsheets and similar matters previously presented to the Trustee and to Special Master Massey by Caragh Fay and the Fay Law Group, which, as far as I understand, the FOA and HNK have consented to or otherwise raised have no objection to (not, of course, including the figures represented as Disputed on Exhibit 1).

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C., on March 28, 2018.

                                              */s/ Steven R. Perles*
                                              Steven R. Perles

*Exhibit to Declaration of Steven R. Perles In Support of Motion for Prompt Distribution of Undisputed Funds*

| | | | | | | BALANCE OF UNDISPUTED | DISPUTED AMOUNT, WHICH |
|---|---|---|---|---|---|---|---|
| **Total Amount of Moneys Paid to Beirut Cases by this QSF with NO RESERVE & NO TRUSTEE EXPENSES** | $ | 1,651,048,463.23 | UNDISPUTED AMOUNT | | AMOUNTS PAID TO DATE | AMOUNT WHICH SHOULD BE PAID OUT OF QSF | SHOULD BE PAID TO COURT REGISTRY AND MEDIATED |
| | | | | | | | |
| **Total Attorneys Fees** | $ | 550,349,487.74 | | $ | 250,000,000.00 | | |
| | | | | | | | |
| **NY Collection Attorneys** | | | | | | | |
| Salon Marrow- Liviu Vogel | $ | 53,659,075.05 | $ | 53,659,075.05 | $ | 24,375,000.00 | $ 29,284,075.05 |
| Stone Rocco Bonner- James Bonner | $ | 23,081,531.51 | $ | 23,081,531.51 | $ | 10,484,943.00 | $ 12,596,588.51 |
| Fleishman | $ | 3,929,789.36 | $ | 3,929,789.36 | $ | 1,785,133.00 | $ 2,144,656.36 |
| Sub-Total | $ | 80,670,395.92 | | | | | |
| | | | | | | | |
| **Total to Damages Attorneys (only in Peterson & Bonk)** | | | | | | | |
| Bond | $ | 2,041,549.82 | $ | 2,041,549.82 | $ | 927,388.00 | $ 1,114,161.82 |
| Clower | $ | 2,038,585.77 | $ | 2,038,585.77 | $ | 926,041.00 | $ 1,112,544.77 |
| Drennan | $ | 2,804,624.45 | $ | 2,804,624.45 | $ | 1,274,020.00 | $ 1,530,604.45 |
| Einhorn | $ | 1,375,577.62 | $ | 1,375,577.62 | $ | 624,865.00 | $ 750,712.62 |
| Feeney | $ | 3,038,948.05 | $ | 3,038,948.05 | $ | 1,380,463.00 | $ 1,658,485.05 |
| Gaskill | $ | 2,813,729.69 | $ | 2,813,729.69 | $ | 1,278,156.00 | $ 1,535,573.69 |
| Karr | $ | 1,846,566.34 | $ | 1,846,566.34 | $ | 838,815.00 | $ 1,007,751.34 |
| LaSpada | $ | 3,805,184.16 | $ | 3,805,184.16 | $ | 1,728,531.00 | $ 2,076,653.16 |
| Mecit | $ | 1,402,070.70 | $ | 1,402,070.70 | $ | 636,900.00 | $ 765,170.70 |
| Norman | $ | 2,758,692.52 | $ | 2,758,692.52 | $ | 1,253,155.00 | $ 1,505,537.52 |
| Nuta | $ | 2,288,525.46 | $ | 2,288,525.46 | $ | 1,039,578.00 | $ 1,248,947.46 |
| Parsons | $ | 822,280.59 | $ | 822,280.59 | $ | 373,527.00 | $ 448,753.59 |
| Pattin | $ | 2,035,673.10 | $ | 2,035,673.10 | $ | 924,718.00 | $ 1,110,955.10 |
| Sub-Total | $ | 29,072,008.27 | | | | | |

**Lead Attorneys**

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Patrick Donahue | $ 10,746,171.75 | $ 5,037,021.84 | $ 4,945,683.00 | $ 91,338.84 | $ 5,709,149.91 |
| Joseph Peter Drennan | $ 11,724,173.68 | $ 5,623,823.00 | $ 5,421,098.00 | $ 202,725.00 | $ 6,100,350.68 |
| Heidleman Nudelman Kalik | $ 35,189,736.05 | $ 17,660,279.86 | $ 15,938,411.00 | $ 1,721,868.86 | $ 17,529,456.19 |
| John Karr- Theodore Alllison | $ 2,348,609.57 | $ 1,174,304.77 | $ 1,061,795.00 | $ 112,509.77 | $ 1,174,304.80 |
| Dan Gaskill | $ 7,118,610.50 | $ 3,163,817.64 | $ 3,305,679.00 | $ (141,861.36) | $ 4,096,654.21 |
| Sub-Total | $ 67,127,301.55 | | | | |
| | | | | | $ 34,609,915.79 |

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Thomas Fay | $ 138,708,171.23 | $ 138,708,171.23 | $ 62,938,484.00 | $ 75,769,687.23 | |
| Steve Perles | $ 138,708,171.24 | $ 138,708,171.24 | $ 62,938,484.00 | $ 75,769,687.24 | |

**Referral Attorneys (Only Peterson & Bonk)**

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Rothenberg | $ 59,947,508.09 | $ 59,947,508.09 | $ 26,789,058.00 | $ 33,158,450.09 | |
| LaSpada | $ 15,410,816.76 | $ 15,410,816.76 | $ 6,744,572.00 | $ 8,666,244.76 | |
| Fay | $ 10,352,557.34 | $ 10,352,557.34 | $ 4,215,113.00 | $ 6,137,444.34 | |
| Perles | $ 10,352,557.34 | $ 10,352,557.34 | $ 4,215,113.00 | $ 6,137,444.34 | |
| Sub-Total | $ 96,063,439.53 | | | | |

| | | **TOTAL FEES** | **UNDISPUTED** | **PAID TO DATE** | **BALANCE TO PAY NOW** | **DISPUTED; TO MEDIATION** |
|---|---|---:|---:|---:|---:|---:|
| **TOTALS** | | $ 205,805,843.72 | $ 515,881,433.31 | $ 248,364,723.00 | $ 267,516,710.31 | $ 34,609,915.79 |