# Exhibit E to April 2, 2018 Declaration of Jay Glenn

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*, | |
| Plaintiffs, | Consolidated Case Nos. 01-cv-2094 (RCL) 01-cv-2684 (RCL) |
| - against - | |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | **Re: ECF No. 542** |
| Defendants. | |

**DECLARATION OF JAY GLENN IN OPPOSITION TO
FAY & PERLES' "EMERGENCY" MOTION TO QUASH
HIS AMENDED NOTICE OF CHARGING LIEN**

I, Jay Glenn, hereby declare:

1.      I am an attorney admitted to practice law in the State of Illinois and in this action.
I am also a Vietnam War veteran, having achieved the rank of Captain in the United States Army.
I submit this declaration in opposition to the motion filed by Fay Law Group and Perles Law Firm,
P.C. (together, "Fay & Perles") to quash my Amended Notice of Charging Lien (the "Notice of
Lien").   Except as otherwise indicated, I have personal knowledge of the matters set forth herein
and could testify competently thereto.

2.      Shortly after the commencement of this action in October 2001, and the failure by
Defendants Islamic Republic of Iran and Iranian Ministry of Information and Security to timely
respond to the complaint, Thomas Fay (my brother in law) invited me to assist him and his co-
counsel, Steven Perles (operating with Fay as "Fay & Perles") in proving damages on behalf of
Plaintiffs with whom they had signed Contingent Retainer Agreements, in contemplation of
securing a default judgment, and I agreed to do so.   Fay & Perles also invited roughly a dozen
other persons to serve as so-called "damages attorneys" in this action.   Fay represented to me, and

presumably the other damages attorneys, that we would be paid from amounts recovered on behalf of Plaintiffs we represented.

3.      On December 18, 2002, this Court entered Defendants' default and issued an accompanying memorandum opinion providing Plaintiffs would be eligible to recover damages to the extent they are able to demonstrate they sustained injuries.

4.      At a hearing held on or about March 17, 2003, at which I and the other contemplated damages attorneys were in attendance, this Court admitted me and such other attorneys *pro hac vice* so that we could present Plaintiffs' damages evidence to Special Masters. At the hearing Fay & Perles represented to this Court that damages attorneys would be paid from amounts recovered on behalf of Plaintiffs they represented.[1]

5.      On May 30, 2003, this Court entered a default judgment as to all issues of liability, and ordered that all damages claims be submitted to Court-appointed Special Masters, whereupon this Court would enter judgment as to each compensatory damages claim following receipt and consideration of reports and recommendations from the Special Masters.

6.      Soon thereafter, I entered into an Agreement (the "Associate Counsel Agreement") prepared by Fay & Perles on their letterhead governing my retention as a damages attorney, a true and correct copy of which is attached hereto as Exhibit 1. The agreement acknowledged Fay & Perles would be paid 33-1/3% of any recovery by Plaintiffs they represented as their contingent fee, and provided that I would be compensated as follows:

> (1) 3% of the gross amount collected from the Defendants with respect to compensatory damages as to each client referred [by Fay & Perles] to Associate Counsel [me]; and

[1] I have been advised that the relevant hearing transcript cannot be retrieved via PACER, or from this Court's Court Reporting and Recording Division because the hearing took place more than ten years go.

(2) an amount equal to the necessary expenses incurred by Associate Counsel in the preparation, prosecution, and administration of the case.

The agreement also defined my responsibilities as follows: "preparation of all witnesses for hearing, presentation of all evidence to the Court or Special Master and presentation of all records and medical reports to the Court."

7.     Fay & Perles ultimately referred 63 Plaintiffs to me to represent in damages proceedings before a Special Master, which Plaintiffs are identified on Exhibit 1 to my Notice of Lien.

8.     Contrary to Fay & Perles' assertion in the memorandum in support of their motion, many of those Plaintiffs which I represented were located outside of Illinois.  For example, certain Belmer Plaintiffs were located in Virginia, Young Plaintiffs were located in Michigan and Maine, Phillips Plaintiffs were located in South Carolina and Indiana, Thorstad Plaintiffs were located in Indiana, Virginia, and Florida, Helms Plaintiffs were located in Nebraska, Moore Plaintiffs were located in Missouri, Olson Plaintiffs were located in Minnesota and North Dakota, Scott Plaintiffs were located in Arizona, Wheeler Plaintiffs were located in Minnesota, and Woollett Plaintiffs were located in Oklahoma and Texas.

9.     Beginning even before I entered into the Associate Counsel Agreement, I met with, and devoted substantial time and effort preparing Plaintiffs for the damages proceedings, and I later presented their individual damages cases and damages evidence to the Special Master.  The Plaintiffs were aware of the fact that I was to be compensated out of Fay & Perles' portion of any fees, as discussed below.  During this period, from roughly 2001 to 2007, my professional efforts were focused almost exclusively on maximizing provisional awards by the Special Master to Marine Barracks bombing victims and their families, and I declined alternative professional

3

opportunities in order to maximize their recoveries, when and if the judgments in this action could be monetized as they now have been.

10.     During the course of my representation, meetings, and discussions with these Plaintiffs, I became aware of the existence of additional potential Plaintiffs, all relatives of Marine Barracks bombing victims, with whom Fay & Perles (or any other attorneys) had not entered into Contingent Retainer Agreements.

11.     After advising Fay that I believed that there were additional potential plaintiffs who might retain us, Fay and I orally agreed that if I were to engage additional Plaintiffs on Fay & Perles' behalf, I would be paid one-third of the contingent fee received by counsel on such additional Plaintiffs' behalf ("Additional Fee Agreement"), on top of the 3% contingent fee (plus expenses) payable to me under the Associate Counsel Agreement for representing such additional plaintiffs in damages proceedings before the Special Master.

12.     Thereafter, I entered into Contingent Retainer Agreements, both on behalf of Fay & Perles and individually, with 40 additional Plaintiffs identified on Exhibit 2 to my Notice of Lien.  True and correct copies of 33 such Contingent Retainer Agreements are attached as Exhibits 2A-2G (agreements with Livingston, Belmer, Phillips, Young, Swinson, Moore, and Thorstad Plaintiffs not referred to me by Fay & Perles).[2]

13.     Prior to executing each such agreement, I explained to each such additional Plaintiff that one-third of the contingent fee that they were agreeing to pay counsel would go to me, and each such additional Plaintiff consented to my being paid that amount from any recovery collected on his or her behalf.

---

[2] I have not yet been able to locate the executed agreements with the remaining seven Plaintiffs, but believe Fay & Perles have copies that I had forwarded to them and that they intend to rely on such agreements to collect their own contingent fees from any distribution from the QSF Trust on behalf of those Plaintiffs.

14.     Following my entry into a Contingent Retainer Agreement with each additional Plaintiff, I transmitted an executed copy of the same to Fay, together with a cover letter confirming that the client was referred by me.  True and correct copies of examples of such letters are attached as Exhibit 3.

15.     In addition, following my entry into Contingent Retainer Agreements with the relatives of a Marine Barracks bombing victim, I completed a Family Information Sheet indicating client names and family relationship with the victim, and transmitted the same to Fay, together with a cover letter which provided:

> I located and executed Attorney Client Contracts for [names indicated on Family Information Sheet].  **In accordance with prior discussions, I am entitled to an additional contingent fee of 11.11% of any recovery/interest for these [___] claims.**

A true and correct copy of an example of such transmittal letter is attached as Exhibit 4.  Fay & Perles never objected to or questioned my entitlement to that fee.

16.     Further, following the Special Master's entry of a report and recommendation for each Marine Barracks bombing victim and his relatives that I represented, I transmitted a copy of the same to Fay, together with a cover letter indicating the calculation of my fee under both the Associate Counsel and Additional Fee Agreements, and Fay & Perles never objected.  True and correct copies of examples of such transmittal letters are attached as Exhibit 5.

17.     On September 7, 2007, this Court entered default judgments in favor of the Plaintiffs I represented in the amounts provisionally awarded in the Special Master's reports and recommendations.  Thus, as of that date my responsibilities as a damages attorney were completed.  Even after such date, however, I continued to work on behalf of Plaintiffs herein, serving as local counsel for Plaintiffs in actions against Iran pending in the United States District Court for the Northern District of Illinois, where I am admitted (including the post-judgment collection action

captioned *Peterson v. Islamic Republic of Iran*, Case No. 08-cv-1592 (N.D. Ill.)), without any additional agreements concerning my compensation and for which I have not received any compensation to date.

18.     Nevertheless, Fay & Perles advised me in 2010 they would not pay me any amount under the Associate Counsel or Additional Fee Agreements.  In response, I commenced an action against Fay & Perles (and certain other attorneys identified in my Notice of Lien) in the United States District Court for the Southern District of New York (Case No. 10-cv-8287).  Although that action was dismissed in 2011 (without prejudice) on grounds of lack of jurisdiction and improper venue, while the same was pending Fay acknowledged in the Rule 26(f) report, and his counsel represented to the Court at argument, that Fay & Perles had in fact entered into the Associate Counsel Agreement with Glenn and had agreed to compensate him as provided therein.  True and correct copies of excerpts from the Rule 26(f) report and transcript are attached hereto as <u>Exhibit 6</u> and <u>Exhibit 7</u>.

19.     Following the issuance of the mandate by the Second Circuit on May 24, 2016 in the turnover action captioned *Peterson, et al., v. Islamic Republic of Iran, et al.*, Case No. 10-cv-4518 (KBF) (S.D.N.Y.), I engaged counsel and filed the Notice of Lien in this action, as well as a letter in the turnover action advising of my having filed the Notice of Lien.  A true and correct copy of that letter is attached hereto as <u>Exhibit 8</u>.

20.     Fay & Perles, through Plaintiffs' counsel in the turnover action, responded by letter, dated June 1, 2016, stating that no amount is due under the Associate Counsel or Additional Fee Agreements because the latter "is not reflected anywhere in a writing" and I allegedly "breached [the former] by failing to perform [my] assigned duties."  A true and correct copy of that letter is attached as <u>Exhibit 9</u>.  I did not fail to perform my duties and Fay & Perles have never supported their assertion to the contrary.

6

21.     Thereafter, I filed a motion to intervene in the turnover action.  A true and correct copy of the memorandum of law filed in support of my motion is attached as <u>Exhibit 10</u>.  That motion was denied before an opposition was even submitted, whereupon Fay & Perles moved to quash my Notice of Lien in this action.

22.     Given that Fay & Perles admitted they did not raise any issues with my performance as a damages attorney until three years after judgments were entered in this action and my work in connection therewith had been completed, and that their challenges to the enforceability of the Additional Fee Agreement are meritless both as a legal matter (as discussed in the accompanying memorandum of points and authorities) and as a factual matter (because the Additional Fee Agreement is supported by multiple writings), I believe Fay & Perles' motion to quash my lien is nothing more than a transparent attempt to avoid having to pay amounts owed to me, and perhaps other damages attorneys that have substantially identical agreements with Fay & Perles, now that the Second Circuit issued its mandate and a significant distribution to Plaintiffs (and their attorneys) is anticipated, which was not the case in 2007 when final judgment was entered in Plaintiffs' favor in this action.

23.     In support of their motion, Fay & Perles state my Notice of Lien should be quashed because it was filed to delay distributions to Plaintiffs.  That assertion is patently false.  As a former serviceman, I am acutely aware of the anguish the Marine Barracks bombing caused the victims and their families and want nothing more than to have them to receive their distributions from the recovered assets paid as quickly as possible.  However, my being paid for services rendered will not diminish nor delay their receipt of amounts to which they are entitled, because my compensation is due solely from the contingent fees to be received by Fay & Perles, as indicated above.

7

I declare under penalty of perjury that the foregoing is true and correct. Executed in Mount Pleasant, South Carolina, on June 21, 2016.

Jay Glenn

**EXHIBIT 1**

**Associate Counsel Agreement**

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## AGREEMENT

Fay and Perles have been retained by 153 families for representation in the prosecution of all claims and causes of action against The Islamic Republic of Iran, The Iranian Ministry of Information and Security and their associates and agents, arising out of the terrorist attack upon the Marine Barracks in Beirut, Lebanon on October 23, 1983. Each family has executed a contingent agreement providing for attorneys fees as follows: (1) 33 1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type; and (2) an amount equal to the necessary expenses incurred in the preparation, prosecution and administration of the case. This fee is contingent upon collection and to the extent of collection only.

Fay and Perles wish to employ Associate Counsel for representation of each Client in the prosecution of Clients' claims for compensatory damages. The Associate Counsel will be responsible for preparation of all witnesses for hearing, presentation of all evidence to the Court or Special Master and presentation of all records and medical reports to the Court. All expenses incurred by Associate Counsel will be charged to the Client in accordance with the paragraph above. Clients shall otherwise have no liability for any expenses. The Associate Counsel will, under no circumstances, represent to any vendor, supplier of services or contractor with regard to services, that Associate Counsel is

incurring expenses on behalf of or chargeable to the credit of the Clients.

Associate Counsel shall be paid a fee consisting of the following: (1) 3% of the gross amount collected from the Defendants with respect to compensatory damages as to each client referred to Associate Counsel; and (2) an amount equal to the necessary expenses incurred by Associate Counsel in the preparation, prosecution and administration of the case. This fee is contingent upon collection and to the extent of collection only.

This document constitutes the only agreement between Fay and Perles and Associate Counsel. The attached list of cases referred to Associate Counsel is attached to and made a part of this document by reference. This document supersedes all prior written or oral agreements and shall be interpreted in accordance with the laws of the District of Columbia.

Date: 6/13/2003

Jay Glenn, Esq
Associate Counsel

FAY & PERLES

By: _____
Thomas Fortune Fay

2

# Jay Glenn, Esq.

## Clients

Belmer, Alvin

Helms, Mark A.

Livingston, Joseph, III

Moore, Lovelle

Olson, John

Phillips, John Arthur, Jr.

Scott, Gary R.

Sommerhof, William Scott

Sturghill, Erik D.

Swinson, Craig

Wheeler, Pastor Danny

Woollett, Donald E.

Young, Thomas P.

## EXHIBIT 2A

**Contingent Retainer Agreements (Belmer Plaintiffs)**

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Mr. Colby Keith Belmer, the son of Alvin Burton Belmer (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

2   06

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 03-16-03

_____
Client

_____
Client

Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

2 OF

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Faye A. Belmer, the spouse of Alvin Burton Belmer (deceased)

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

1   486   1   11

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 10-30-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

1   487   1   12

**EXHIBIT 2B**

**Contingent Retainer Agreements (Livingston Plaintiffs)**



LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Estate of Joseph R. Livingston, Jr. father of Joseph R. Livingston deceased

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33

1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

4   1©

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 5/31/05

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

4

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

### CONTINGENT RETAINER AGREEMENT

[A LIVINGSTON FOX sister of JOSEPH R. LIVINGSTON DECEASED

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33

1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

4    10

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 5/31/05

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

4   1

**EXHIBIT 2C**

**Contingent Retainer Agreements (Moore Plaintiffs)**

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue,** NW
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

### CONTINGENT RETAINER AGREEMENT

**Mr. Jamaal Ali, the brother of Mr. Lovelle Moore**

_____ (Clients) hereby retain and employ Thomas
Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution
and recovery or settlement of all claims and causes of action against The Islamic Republic
of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33
1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;
and (2) an amount equal to the necessary expenses in the preparation, prosecution and
administration of the case. This fee is contingent upon collection and to the extent of
collection only. The percentage attorneys fee above described will be distributed to each of
the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will
be distributed in the proportion which that attorney's expenses bears to the total expenses
of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,
prosecution and administration of the claim, the above provision relating solely to the
computation of the attorney's fee. The Attorneys will, under no circumstances, represent to
any vendor, supplier of services or contractor with regard to services, that they are
incurring expenses on behalf of or chargeable to the credit of the Clients and all such

5    1

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal

obligation of the Clients. Under no circumstances shall any part of the attorney's fee be

considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall

constitute a lien upon any proceeds realized having priority before all other liens on any

sums realized from this claim.

      Clients understand that although the Attorneys have been successful in the past in

prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon

factors beyond their control, including, but not limited to, statutory amendments and the

foreign relations of the United States. Attorneys will assert their best efforts but cannot

guarantee success.


Date: _August 26, 2004_____


_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

5

7

## LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Alice Warren Franklin the sister of Mr. Lovelle Moore
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

5   15

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 28 Feb 03

X _____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

### Estate of James Otis Moore (Deceased), brother of Lovelle Moore

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33

1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal
obligation of the Clients. Under no circumstances shall any part of the attorney's fee be
considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall
constitute a lien upon any proceeds realized having priority before all other liens on any
sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in
prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon
factors beyond their control, including, but not limited to, statutory amendments and the
foreign relations of the United States. Attorneys will assert their best efforts but cannot
guarantee success.

Date:  _____

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____

5    108

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

**Estate of Johnney S. Moore (Deceased), father of Mr. Lovelle Moore**

_____ (Clients) hereby retain and employ Thomas
Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution
and recovery or settlement of all claims and causes of action against The Islamic Republic
of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33
1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;
and (2) an amount equal to the necessary expenses in the preparation, prosecution and
administration of the case. This fee is contingent upon collection and to the extent of
collection only. The percentage attorneys fee above described will be distributed to each of
the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will
be distributed in the proportion which that attorney's expenses bears to the total expenses
of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,
prosecution and administration of the claim, the above provision relating solely to the
computation of the attorney's fee. The Attorneys will, under no circumstances, represent to
any vendor, supplier of services or contractor with regard to services, that they are
incurring expenses on behalf of or chargeable to the credit of the Clients and all such

5

expenses shall be the sole obligation of the Attorneys and not in any manner the legal

obligation of the Clients. Under no circumstances shall any part of the attorney's fee be

considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall

constitute a lien upon any proceeds realized having priority before all other liens on any

sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in

prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon

factors beyond their control, including, but not limited to, statutory amendments and the

foreign relations of the United States. Attorneys will assert their best efforts but cannot

guarantee success.

Date:   8/15/04

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____

5

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Johnnie Mae Moore-Jones the sister of Mr. Lovelle Moore

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

5   1

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may d factors beyond their control, including, but not limited to, statutory amendments foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 2/25/03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

5   1

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Marvin S. Moore brother of  Lovelle Moore
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: June 1, 2005

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

Bronzell

## CONTINGENT RETAINER AGREEMENT

Mr. Vonzell Warren the brother of Mr. Lovelle Moore

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

5   14

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 2-28-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

### CONTINGENT RETAINER AGREEMENT
Ms. Audrey Webb, the sister of Mr. Lovelle Moore

_____ (Clients)  hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

5   133

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 3-12-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

5   13

**<u>EXHIBIT 2D</u>**

**Contingent Retainer Agreements (Phillips Plaintiffs)**

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Victoria Jacobus, the sister of John Arthur Phillips, Jr. (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 3-20-03

_Victoria P. Jacobus_
**Client**

_Victoria P. Jacobus_
**Client**

_Thomas F. Fay_
**Thomas Fortune Fay, Esq.**

**Steven R. Perles, Esq.**

7  2

LAW OFFICE
# FAY & PERLES
**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

Ms. Elizabeth P. Moy, the sister of John Arthur Phillips, Jr. (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 3-8-2003

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

7    25

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Mr. Harold T. Phillips the brother of John Arthur Phillips, Jr. (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

7    24

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 02-10-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

Mr. John Arthur Phillips, Sr. father of John Arthur Phillips, Jr. (deceased)

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

7    29

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 3-1-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

7   22

**EXHIBIT 2E**

**Contingent Retainer Agreements (Swinson Plaintiffs)**

LAW OFFICE
# FAY & PERLES
**601 Pennsylvania Avenue,** NW
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

Ms. Cydia Shaver, Sister of Mr. Craig Swinson (Clients) hereby retain and employ Thomas
Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution
and recovery or settlement of all claims and causes of action against The Islamic Republic
of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33*
*1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;
and (2) an amount equal to the necessary expenses in the preparation, prosecution and
administration of the case. This fee is contingent upon collection and to the extent of
collection only. The percentage attorneys fee above described will be distributed to each of
the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will
be distributed in the proportion which that attorney's expenses bears to the total expenses
of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,
prosecution and administration of the claim, the above provision relating solely to the
computation of the attorney's fee. The Attorneys will, under no circumstances, represent to
any vendor, supplier of services or contractor with regard to services, that they are
incurring expenses on behalf of or chargeable to the credit of the Clients and all such

11 079

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal

obligation of the Clients. Under no circumstances shall any part of the attorney's fee be

considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall

constitute a lien upon any proceeds realized having priority before all other liens on any

sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in

prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon

factors beyond their control, including, but not limited to, statutory amendments and the

foreign relations of the United States. Attorneys will assert their best efforts but cannot

guarantee success.


Date:  2/10/05



_____
Client

_____
Client
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____
Jay J. Glenn, Esq.

11 08

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

### CONTINGENT RETAINER AGREEMENT

_Daniel Swinson_ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: _March, 2, 2005_

_____
Client

_____
Client
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____
Jay J. Glenn, Esq.

LAW OFFICE
# FAY & PERLES
**601 Pennsylvania Avenue,** NW
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

Ms. Dawn Swinson, Sister of Mr. Craig Swinson (Clients) hereby retain and employ Thomas Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution and recovery or settlement of all claims and causes of action against The Islamic Republic of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33 1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type; and (2) an amount equal to the necessary expenses in the preparation, prosecution and administration of the case. This fee is contingent upon collection and to the extent of collection only. The percentage attorneys fee above described will be distributed to each of the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will be distributed in the proportion which that attorney's expenses bears to the total expenses of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation, prosecution and administration of the claim, the above provision relating solely to the computation of the attorney's fee. The Attorneys will, under no circumstances, represent to any vendor, supplier of services or contractor with regard to services, that they are incurring expenses on behalf of or chargeable to the credit of the Clients and all such

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: _____

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____
Jay J. Glenn, Esq.

LAW OFFICE
# FAY & PERLES
**601 Pennsylvania Avenue,** NW
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

Ms. Teresa Swinson, Sister of Mr. Craig Swinson (Clients) hereby retain and employ Thomas
Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution
and recovery or settlement of all claims and causes of action against The Islamic Republic
of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33
1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;
and (2) an amount equal to the necessary expenses in the preparation, prosecution and
administration of the case. This fee is contingent upon collection and to the extent of
collection only. The percentage attorneys fee above described will be distributed to each of
the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will
be distributed in the proportion which that attorney's expenses bears to the total expenses
of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,
prosecution and administration of the claim, the above provision relating solely to the
computation of the attorney's fee. The Attorneys will, under no circumstances, represent to
any vendor, supplier of services or contractor with regard to services, that they are
incurring expenses on behalf of or chargeable to the credit of the Clients and all such

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: February 15 2005

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____
Jay J. Glenn, Esq.

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

William Swinson, brother of Craig Swinson      (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

11
00

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 7/14/05

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

## EXHIBIT 2F

**Contingent Retainer Agreements (Thorstad Plaintiffs)**

# LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Kathleen Hedge, the spouse of THOMAS PAUL THORSTAD (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

12 098

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 5-27-03

Client

Client

Thomas Fortune Fay, Esq.

Steven R. Perles, Esq.

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Mr. Adam Thorstad, the son of THOMAS PAUL THORSTAD (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran. The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 6/2/03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

13 118

LAW OFFICE
# FAY & PERLES
**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

Ms. Barbara Thorstad Warwick, sister of Thomas Paul Thorstad (deceased)

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles. Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 2/28/03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Mr. James Thorstad Jr. brother of Thomas Paul Thorstad (deceased)

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal

obligation of the Clients. Under no circumstances shall any part of the attorney's fee be

considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall

constitute a lien upon any proceeds realized having priority before all other liens on any

sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in

prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon

factors beyond their control, including, but not limited to, statutory amendments and the

foreign relations of the United States. Attorneys will assert their best efforts but cannot

guarantee success.

Date: 02-11-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.


_____
Steven R. Perles, Esq.

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Janice Thorstad Edquist, the sister of Thomas Paul Thorstad (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

12 242

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 3/15/03

Client

Client

Thomas Fortune Fay, Esq.

Steven R. Perles, Esq.

12 243

# LAW OFFICE
# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

ohn Thorstad the brother of Thomas Paul Thorstad (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal

obligation of the Clients. Under no circumstances shall any part of the attorney's fee be

considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall

constitute a lien upon any proceeds realized having priority before all other liens on any

sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in

prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon

factors beyond their control, including, but not limited to, statutory amendments and the

foreign relations of the United States. Attorneys will assert their best efforts but cannot

guarantee success.

Date: ___2/4/05___

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

KATHRYN THORSTAD WALLACE, sister of THOMAS THORSTAD (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 02-14-03

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

13 138

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Ms. Patricia Thorstad Zosso sister of Thomas Paul Thorstad (deceased)

_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal

obligation of the Clients. Under no circumstances shall any part of the attorney's fee be

considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall

constitute a lien upon any proceeds realized having priority before all other liens on any

sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in

prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon

factors beyond their control, including, but not limited to, statutory amendments and the

foreign relations of the United States. Attorneys will assert their best efforts but cannot

guarantee success.

Date: 02-11-03

Patricia Thorstad Zosso
Client

Patricia Thorstad Zosso
Client

Thomas Fortune Fay, Esq.

Steven R. Perles, Esq.

13 143

LAW OFFICE
# FAY & PERLES
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

Mr. Ryan Thorstad, the son of THOMAS PAUL THORSTAD (deceased)
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) 33

1/3 % of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 06/13/63

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

**EXHIBIT 2G**

**Contingent Retainer Agreements (Young Plaintiffs)**

LAW OFFICE

# FAY & PERLES

601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004
Tel. (202) 638-4534
Fax (202) 639-8238

## CONTINGENT RETAINER AGREEMENT

**Ms. Mary E. Stilphen, sister of Thomas David Young**
_____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33

1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: 11/24/04

MARY E. Stiphen
Client

Client

Thomas Fortune Fay, Esq.

Steven R. Perles, Esq.

15 008

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue**, NW
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

**Mr. James P. Young, brother of Thomas David Young**

_James P Young_ _____ (Clients) hereby retain and employ Thomas

Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution

and recovery or settlement of all claims and causes of action against The Islamic Republic

of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) _33

1/3 %_ of the total gross recovery before deduction of any fees, liens or charges of any type;

and (2) an amount equal to the necessary expenses in the preparation, prosecution and

administration of the case. This fee is contingent upon collection and to the extent of

collection only. The percentage attorneys fee above described will be distributed to each of

the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will

be distributed in the proportion which that attorney's expenses bears to the total expenses

of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,

prosecution and administration of the claim, the above provision relating solely to the

computation of the attorney's fee. The Attorneys will, under no circumstances, represent to

any vendor, supplier of services or contractor with regard to services, that they are

incurring expenses on behalf of or chargeable to the credit of the Clients and all such

15 057

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: _10 - 16 - 04_

_____
Client

_____
Client

_____
Thomas Fortune Fay, Esq.

_____
Steven R. Perles, Esq.

_____

15 058

LAW OFFICE

# FAY & PERLES

**601 Pennsylvania Avenue, NW**
**Suite 900-South Building**
**Washington, DC 20004**
**Tel. (202) 638-4534**
**Fax (202) 639-8238**

## CONTINGENT RETAINER AGREEMENT

**Estate of Nora Young (Deceased), mother of Thomas David Young**
~~Dans P Young   Personal Rep~~ (Clients) hereby retain and employ Thomas
Fortune Fay, Esq. and Steven R. Perles, Esq. (Attorneys) to represent us in the prosecution
and recovery or settlement of all claims and causes of action against The Islamic Republic
of Iran, The Iranian Ministry of Information and Security and their associates and agents.

We agree to pay to said Attorneys a fee which will be computed as follows: (1) *33
1/3 %* of the total gross recovery before deduction of any fees, liens or charges of any type;
and (2) an amount equal to the necessary expenses in the preparation, prosecution and
administration of the case. This fee is contingent upon collection and to the extent of
collection only. The percentage attorneys fee above described will be distributed to each of
the Attorneys in an equal share. The "necessary expenses" portion of the attorneys fee will
be distributed in the proportion which that attorney's expenses bears to the total expenses
of the attorneys.

Clients shall have no liability for any expenses in connection with the preparation,
prosecution and administration of the claim, the above provision relating solely to the
computation of the attorney's fee. The Attorneys will, under no circumstances, represent to
any vendor, supplier of services or contractor with regard to services, that they are
incurring expenses on behalf of or chargeable to the credit of the Clients and all such

15  048

2

expenses shall be the sole obligation of the Attorneys and not in any manner the legal obligation of the Clients. Under no circumstances shall any part of the attorney's fee be considered to be a loan from the Attorneys to the Clients. The fees due the Attorneys shall constitute a lien upon any proceeds realized having priority before all other liens on any sums realized from this claim.

Clients understand that although the Attorneys have been successful in the past in prosecuting cases under the Foreign Sovereign Immunities Act, collection may depend upon factors beyond their control, including, but not limited to, statutory amendments and the foreign relations of the United States. Attorneys will assert their best efforts but cannot guarantee success.

Date: _10 - 16 -04_

_James P Yang_ Personal Rep

Client

Client

_Thomas F. Fay_
Thomas Fortune Fay, Esq.

Steven R. Perles, Esq.

15 049

**EXHIBIT 3**

**Post-Execution Transmittal Letters**

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202                                   FAX (847) 729-9706

February 2, 2003

# MEMO 10

MEMO TO TRIAL STAFF:    THOMAS FORTUNE FAY, P.C.

FILE:    JOSEPH R. LIVINGSTON


Thanks for forwarding the LETTERS OF ADMINISTRATION.

Please note the file contains only one Retainer Agreement in the name of the Estate.

1.    ANNETTE R. LIVINGSTON (spouse)
2.    JOSEPH R. LIVINGSTON (son)
3.    JOSEPH R. LIVINGSTON, JR. (deceased) (father)
4.    CAROL A. LIVINGSTON (mother)

NB.    I don't know yet if JOSEPH LIVINGSTON had any brothers and/or sisters – investigation continuing.

Please let me know if any Retainer Contracts or any information on deceased father. No Retainer Contracts on 1 thru 4.


Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202

FAX (847) 729-9706

February 3, 2003

# MEMO 18

**MEMO TO TRIAL STAFF:** THOMAS FORTUNE FAY, P.C.

FILE: THOMAS PAUL THORSTAD (deceased) - UPDATE

Ms. Patricia Thorstad Zosso, the sister of THOMAS PAUL THORSTAD has signed a CONTINGENT RETAINER AGREEMENT, a copy of which is enclosed.

Original contract is in my file.

There will be other additions to the THORSTAD "IMMEDIATE FAMILY" which will require amendment of the Complaint.

Also enclosed is a copy of her Personal Information Sheet.

Jay

JAY

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202                                              FAX (847) 729-9706

February 23, 2003

# MEMO 19

MEMO TO TRIAL STAFF:     THOMAS FORTUNE FAY, P.C.


FILE:  JOHN ARTHUR PHILLIPS, JR. (deceased) - UPDATE

Mr. Harold T. Phillips, the brother of JOHN ARTHUR PHILLIPS, JR. has signed a CONTINGENT RETAINER AGREEMENT, a copy of which is enclosed.

Original contracts for Ms. Zosso and Mr. Phillips being sent to you by Fed Ex, overnight.

There MAY BE other additions to the PHILLIPS "IMMEDIATE FAMILY" which will require amendment of the Complaint.

Also enclosed is a copy of his Personal Information Sheet.

## NOTE THAT THE PERSONNAL INFORMATION SHEET INDICATES THAT MR. PHILLIPS HAS A SERIOUS MEDICAL PROBLEM WITH HIS WIFE.

I WILL HANDLE ALL CONTACTS.


Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                              FAX (847) 729-9706

February 23, 2003


Mr. Thomas F. Fay
Attorney at Law
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004

TRANSMITTAL

DEAR TOM:

     Pursuant to my MEMO 18-THORSTAD and MEMO 19-PHILLIPS, I
am pleased for forward the original CONTINGENT RETAINER
AGREEMENTS FOR

-    Ms. Patricia Thorstad Zosso; and
-    Mr. Harold T. Phillips.

     Please hold all Personnel Information Sheets Confidential. I note that
Mr. Harold Phillips has an extremely serious medical problem with his wife.
I will make all contacts.

     Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202                                    FAX (847) 729-9706

February 23, 2003

# MEMO  20

**MEMO TO TRIAL STAFF:     THOMAS FORTUNE FAY, P.C.**

FILE:  LOVELLE MOORE (survivor) - UPDATE

    Mr. Bronzell Warren, one of LOVELLE MOORE'S brothers (half-brother / step-brother) has signed a CONTINGENT RETAINER AGREEMENT, a copy of which is enclosed.

    Original contracts for Mr. Warren being sent to you by overnight.

    Personal Information Sheet for Mr. Warren enclosed.

    I have located Mr. Lovelle Moore, he is hospitalized in the VA Hospital in Comery Medical Center (VA) Topeka, Kansas.  I have been in contact with him.

    There MAY BE other additions to the LOVELLE MOORE "IMMEDIATE FAMILY" which will require amendment of the Complaint.

Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202                              FAX (847) 729-9706

March 6, 2003

# MEMO  24

MEMO TO TRIAL STAFF:     THOMAS FORTUNE FAY, P.C.


FILE:  THOMAS THORSTAD (deceased) - UPDATE

Enclosed is the original Contingent Retainer Agreement for

Ms. Kathryn Thorstad Wallace as well as personnal information sheet


Jay

# JAY J. GLENN
### ATTORNEY AT LAW
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                      FAX (847) 729-9706

March 6, 2003


Mr. Thomas F. Fay
Attorney at Law
601 Pennsylvania Avenue, NW
Suite 900-South Building
Washington, DC 20004

TRANSMITTAL

DEAR TOM:

　　　　Pursuant to my MEMO 24, I am pleased for forward the original
CONTINGENT RETAINER AGREEMENTS FOR

- 　　　Ms. Kathryn Thorstad Wallace


　　　　Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202                                    FAX (847) 729-9706

March 13, 2003

# MEMO 26

MEMO TO TRIAL STAFF:     THOMAS FORTUNE FAY, P.C.


FILE:  JOHN ARTHUR PHILLIPS, JR.


    I AM PLEASED TO FORWARD YOU THE CONTINGENT
RETAINER AGREEMENT FOR MS. ELIZABETH P. MOY THE SISTER
OF JOHN ARTHUR PHILLIPS, JR. (DECEASED)

    The  original is being sent to you by overnight letter.

Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202                                FAX (847) 729-9706

March 13, 2003

# MEMO 27

MEMO TO TRIAL STAFF:    THOMAS FORTUNE FAY, P.C.


FILE: MR. LOVELLE MOORE (SURVIVOR)

I AM PLEASED TO FORWARD YOU THE CONTINGENT
RETAINER AGREEMENT FOR THE FOLLOWING "IMMEDIATE
FAMILY";

1.   MS. JOHNNIE MAE MORR-JONES,  THE SISTER OF MR.
     LOVELLE MOORE;
2.   MS. ALICE WARREN FRANKLIN, THE SISTER OF MR.
     LOVELLE MOORE;
3.   MS. DEABORAH J. CRAWFORD, THE SISTER OF MR.
     LOVELLE MOORE.

The  originals are being sent to you by overnight letter.

Jay

JAY J. GLENN
ATTORNEY AT LAW
2275 HALF DAY ROAD
SUITE 350
BANNOCKBURN, ILLINOIS 60015

(847) 526-9202

FAX (847) 729-9706

March 21, 2003

# MEMO 28

MEMO TO TRIAL STAFF:   THOMAS FORTUNE FAY, P.C.

FILE: THOMAS PAUL THORSTAD (DECEASED)

I AM PLEASED TO FORWARD YOU THE CONTINGENT
RETAINER AGREEMENT FOR:

- Mr. James Thorstad Jr. the brother of Thomas Paul Thorstad
  (deceased)
- Ms. Barbara Thorstad Warwick, the sister of Thomas Paul
  Thorstad (deceased)

The originals are being sent to you by overnight letter with personal
information sheets attached.

Jay

Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, IL 60015

(847) 526-9202                                          Fax (847) 526-9207

June 2, 2005

Mr. Thomas F. Fay
Attorney at Law
Fay & Perles

IN RE:      CLAIM OF MR. LOVELLE MOORE

# MEMO 46

Dear Tom:

    Enclosed is a fully executed copy of the CONTINGENT RETINER
AGREEMENT.   Mr. Marvin S. Moore is the brother of Mr. Lovelle Moore,
one of the Plaintiff's in the Beirut Litigation.

    In accordance with prior practices, I am referring this client to you on
your contract, which I have also signed. Also note that Mr. Marvin S. Moore
has completed his damage hearing.

    An original contract has been retained by Mr. Moore and the
undersigned.  Your original will be forwarded in the very near future.


Very truly yours,


Jay J. Glenn

Enc.

5

Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, IL 60015

(847) 526-9202                                          Fax (847) 526-9207

June   3, 2005

Mr. Thomas F. Fay
Attorney at Law
Fay & Perles

IN RE:       CLAIM OF JOSEPH R. LIVINGSTON (Deceased)

# MEMO 47

Dear Tom:

Enclosed are copies of  CONTINGENT RETINER AGREEMENTS for two
new claimants.  Ms. Tia Livingston Fox is the sister of JOSEPH R.
LIVINGSTON (Deceased) and Ms. Tia Livingston Fox is also the Personal
Representative for the Estate of Joseph R. Livingston, Jr. (Deceased),  the father of
JOSEPH R. LIVINGSTON one of the Plaintiff's in the Beirut Litigation.

In accordance with prior practices, I am referring these clients to you on
your contract, which I have also signed. Please note that the damage hearings for
both Ms. Tia Livingston Fox and the Estate of  Joseph R. Livingston are complete.
Please also note that all damage hearings relating to the claim of JOSEPH R.
LIVINGSTON are complete.

One original contract for Ms. Tia Livingston Fox and the Estate of Joseph R.
Livingston, Jr. have been retained by Ms. Tia Livingston Fox.   Original contracts
for both Ms. Tia Livingston Fox and Joseph R. Livingston, Jr. will be forwarded in
the very near future.

Very truly yours,

Jay J. Glenn

Enc.                                                          4    09

**Jay J. Glenn**
**Attorney at Law**
**2275 Half Day Road**
**Suite 350**
**Bannockburn, Illinois 60015**

(847) 526-9202                                              (847) 526-9207

July 26, 2005

## MEMO 50

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001


IN RE:          - CLAIM OF CRAIG SWINSON – SURVIVOR


Dear Tom:

      Enclosed is the original signed Retainer Agreement for William Swinson.

      All Swinson hearing are complete.

      Both Mr. Swinson's father and mother are deceased and claims will be requested on behalf of both of their Estates.


                Very truly yours,


                Jay J. Glenn

Enc.

## <u>EXHIBIT 4</u>

**Family Information Sheet Transmittal Letter**

**Jay J. Glenn**
**Attorney at Law**
2275 Half Day Road
**Suite 350**
Bannockburn, Illinois 60015

(847) 526-9202                                                    (847) 526-9207

August 10, 2005

## MEMO 52

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

- IN RE: SUBMISSION OF THE ESTATE OF
  JOSEPH R. LIVINGSTON, III

Dear Tom:

Enclosed is a signed copy of my Submission and Family Information Sheet for the above claim.

The Complaint is INCORRECT for this Claim.

The Livingston Claim consists of five claims. I located and executed Attorney Client Contracts for JOSEPH R. LIVINGSTON, JR. and TIA FOX. **In accordance with prior discussions, I am entitled to an additional contingent fee of 11.11% of any recovery/interest for these two claims.** The other three claims for the Livingston family were referred by other attorneys.

This file has been filed with Judge Ray.

Very truly yours,

Jay J. Glenn

Enc.

| REFERRAL | File | | Last Name | First Name | Middle Name | Relationship |
|---|---|---|---|---|---|---|
| 16 | LIVINGSTON | Estate | Livingston | Joseph | R. | |
| 17 | LIVINGSTON | | Livingston | Annette | R. | Widow |
| 18 | LIVINGSTON | | Livingston, IV | Joseph | R. | Son |
| 19 X | /INGSTON | Estate | Livingston | Joseph | R. | Father |
| 20 X | /INGSTON | | Fox | Tia | | Sister |

1    73

| Provisional Solatium | Total Provisional Award | TOTAL CLIENT AWARD | Damage Attorney Fee | Damage Attorney Referral Fee | TOTAL PROVISIONAL ATTORNEY ! |
|---|---|---|---|---|---|
| | 1,762,193 | | 52,866 | | |
| 10,000,000 | | | 300000 | | |
| 10,000,000 | | | 300000 | | |
| 10,000,000 | | | 300000 | 1111000 | |
| 5,000,000 | | | 150000 | 555500 | |
| | 35,000,000 | 36,762,193 | 1102865.6 | 1666500 | 2,769,366 |

1  7½

## **EXHIBIT 5**

**Report & Recommendation Transmittal Letters**

Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                        FAX (847) 526-9207

June 2, 2006

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

In Re:          Special Master Order - ESTATE OF ALVIN BURTON BELMER

Dear Tom:

        Yesterday Judge Ray forwarded me her signed 25 page REPORT OF SPECIAL
MASTER PURSUANT TO ORDER OF REFERENCE CONCERNING COUNTS XXV
THROUGH XXVIII dated May 25, 2006, in duplicate. One original signed report is
attached. Also enclosed is copy 2 of  6@ DVD disks, of testimony as follows:

        1.      Dr. Gregory Threatte;
        2.      Ms. Faye Belmer;
        3.      Mr. Colby Keith Belmer;
        4.      Ms. Luddie Belmer and Mr Alue Belmer;
        5.      Mr. Kenneth Belmer, Mr. Clarence Belmer & Ms. Donna Belmer;
        6.      Ms. Annette Belmer & Ms. Denise Belmer.

        I will retain the Trial Notebook which will have copies of all Exhibits and copy 1
of each DVD.

        Judge Ray made the following provisional awards;                    **1   490**

        1.      Claim 1 – Estate of Alvin Burton Belmer
                -       Wrongful Death                        884,746.00
                -       Survival Action – Pain & Suffering    15,000,000.00
        2.      Claim 2 -  Ms. Faye Belmer, Widow             10,000,000.00
        3.      Claim 3 -  Mr. Colby Keith Belmer, Son        10,000,000.00
        4.      Claim 4 -  Ms. Luddie Belmer, Mother          10,000,000.00
        5.      Claim 5 -  Mr. Alue Belmer, Father            10,000,000.00          **1   61**
        6.      Claim 6 -  Ms. Annette Belmer, Sister          5,000,000.00
        7.      Claim 7 -  Ms. Denise Belmer, Sister           5,000,000.00

| 8. | Claim 8 – Mr. Kenneth Belmer, Brother | 6,000,000.00 |
| 9. | Claim 9 - Mr. Clarence Belmer, Brother | 6,000,000.00 |
| 10. | Claim 10 – Ms. Donna Belmer, Sister | 5,000,000.00 |

The provisional Belmer family claims total $82,884,745.00. Please note that Ms. Faye Belmer and Mr. Colby Keith Belmer were referrals from the undersigned. I will submit costs for all my claims in the future.

As always, I am prepared to argue this award before the Court should the need arise.

Very truly yours,

Jay J. Glenn

Enc.

1    491

1    62

| REFERRAL | TOTALS | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | File | Estate | Last Name | First Name | Middle Name | Relationship |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | X | X | BELMER | Belmer | Belmer | Alvin | | Widow |
| | | | | | | | | | | | | BELMER | | Belmer | Faye | A. | Son |
| | | | | | | | | | | | | BELMER | | Belmer | Colby | Keith | Mother |
| | | | | | | | | | | | | BELMER | | Belmer | Luddie | | Father |
| | | | | | | | | | | | | BELMER | | Belmer | Allie | | Brother |
| | | | | | | | | | | | | BELMER | | Belmer | Clarence | | Brother |
| | | | | | | | | | | | | BELMER | | Belmer | Kenneth | | Sister |
| | | | | | | | | | | | | BELMER | | Belmer | Annette | | Sister |
| | | | | | | | | | | | | BELMER | | Belmer | Donna | | Sister |
| | | | | | | | | | | | | BELMER | | Belmer | Denise | | Sister |

1   492



| | Economic Report | Proviisonal Accretion | Provisional Pain & Suffering | Provisional Solatium | Total Provisional Award | TOTAL CLIENT AWARD | Damage Attorney Fee | Damage Attorney Referral Fee | TOTAL PROVISIONAL ATTORNEY F |
|---|---|---|---|---|---|---|---|---|---|
| | 884,746 | 884,746 | 15,000,000 | 10,000,000 | 15,884,746 | | 26,542 | | |
| | 0 | NONE | NONE | 10,000,000 | | | 300,000 | 1111000 | |
| | 0 | NONE | NONE | 10,000,000 | | | 300,000 | 1111000 | |
| | 0 | NONE | NONE | 6,000,000 | | | 300,000 | 1111000 | |
| | 0 | NONE | NONE | 6,000,000 | | | 180,000 | | |
| | 0 | NONE | NONE | 6,000,000 | | | 180,000 | | |
| | 0 | NONE | NONE | 10,000,000 | | | 300,000 | | |
| | 0 | NONE | NONE | 5,000,000 | | | 150,000 | | |
| | | NONE | NONE | 5,000,000 | | | 150,000 | | |
| | | | | 5,000,000 | 67,000,000 | 82,884,746 | 150,000 | | 4,258,542 |

1
493

| | SHIPMENT NO. | SHIPMENT DATE | WEIGHT |
|---|---|---|---|

**DHL**  342134 67411

**FROM** (COMPANY NAME)
Jay J Glenn

ADDRESS
2275 Half Day Road #350

CITY  Bannockburn   STATE  IL   ZIP CODE (REQUIRED)  60015

SENT BY: (NAME/DEPT.)  Jay Glenn   PHONE  (847) 526-9202

**TO** (COMPANY NAME)
Thomas F. Fay

ADDRESS
700 5th Street N.W. #200

CITY  Washington   STATE  DC   ZIP CODE (REQUIRED)  20001

ATTN: (NAME/DEPT.)  Tom Fay   PHONE  (202) 638-4534

2   00

**Jay J. Glenn**
**Attorney at Law**
**2275 Half Day Road**
**Suite 350**
**Bannockburn, Illinois 60015**

(847) 526-9202                                                    (847) 526-9207

August 10, 2005

MEMO 51

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

IN RE:        - SPECIAL MASTER ORDER - ESTATE OF MARK A. HELMS

Dear Tom:

Today Judge Ray forwarded me the enclosed **REPORT OF SPECIAL MASTER PURSUANT TO ORDER OF REFERENCE CONCERNING COUNTS CLXI to CLXIV** dated August 8, 2005. Also enclosed is copy 2 of the Testimony of Mary Ann Turek, Marvin Helms, Chris Helms and Rebecca Gintonio.

I will retain the Trial Notebook which will have copies of all Exhibits and copy 1 of the DVD.

Judge Ray made the following provisional awards":

1.    Claim 1 – Estate of Mark A. Helms $1,028,509.00;
2.    Claim 2- Mary Ann Turek $10,000,000.00;
3.    Claim 3 – Marvin R. Helms $10,000,000.00;
4.    Claim 4 – Christopher Todd Helms $5,000,000.00; and
5.    Claim 5 - Rebecca Gintonio $5,000,000.00.

The provisional Helms claims total $31,028,509 and if confirmed by the Court and liquidated, the total due the undersigned, as Damage Counsel is $930,855.27 plus interest and costs. I will submit costs for all my claims in the future.

I am prepared to forward the Trial Notebook and/or argue this provisional award before the court.

Very truly yours

Jay J. Glenn

Enc.

Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                                    (847) 526-9207

November 3, 2005

MEMO 54

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

IN RE:        -  SPECIAL MASTER ORDER --
                 ESTATE OF JOSEPH R. LIVINGSTON, III

Dear Tom:

    Today Judge Ray forwarded me the enclosed **REPORT OF SPECIAL MASTER PURSUANT TO ORDER OF REFERENCE CONCERNING COUNTS CCXLV to CCXLVII** dated November 1, 2005. Also enclosed are copy 2 of the Disk 1 and Disk 2. Disk 1 memorializes the testimony of ANNETTE LIVINGSTON and JOSEPH LIVINGSTON, IV and Disk 2 memorializes the testimony of TIA FOX. I will retain the Trial Notebook which will have copies of all Exhibits and copy 1 of each of the above DVD's.

    Judge Ray made the following five (5) provisional awards":

    1.      Claim 1 – Estate of  JOSEPH R. LIVINGSTON, III  $1,762,193.00;
    2.      Claim 2 - Annette R. Livingston (widow)  -  $10,000,000;
    3.      Claim 3 -  Joseph R. Livingston, IV (son) - $10,000,000;
    4.      Claim 4 -- Estate of Joseph R. Livingston, Jr. (father)  -  $10,000,000; and
    5.      Claim 5 -  Tia Fox (sister) - $5,000,000.

    The total provisional Livingston claims total $36,762,193. If confirmed by the Court, the fees due the undersigned are as follows:

    1.      Damage Counsel award of $1,102,865.79 [ 3% x 36,762,193]; and
    2.      Referral Award for Claim 4 and Claim 5 of $1,666,500 [11.11% x 15,000,000]

1        74

3.   I will submit my Petition for costs in the future;
4.   This amount will be increased by statutory interest from the date
     Judgment is entered until liquidation.

The total provisional amount due the undersigned for the Livingston claims is
$2,769,365.79 plus costs and interest.

I am prepared to forward the Trial Notebook and/or argue this provisional award
before the court.

PLEASE REVIEW MY MEMO 52 DATED AUGUST 10, 2005 WHICH
ADVISED THAT THE PARAGRAPHS RELATING TO THE CLAIMS OF THE
LIVINGSTON FAMILY MUST BE CHECKED AND CORRECTED.  ASSUMING
THE LIVINGSTON CLAIMS ARE COUNTS CCXLV (559) thru CCXLVII (567).

A.   JOSEPH R. LIVINGSTON, IV (son); and
     JOSEPH R. LIVINGSTON, JR (deceased) (father);

B.   JOSEPH R. LIVINGSTON, JR. (deceased)(father) and TIA Fox (sister)
     have to be added;

Very truly you

Jay J. Glenn

Enc.

FROM (COMPANY NAME)

ADDRESS
2275 HALF DAY Rd                    #35D

CITY                    STATE    ZIP CODE (REQUIRED)
BANNOCKBURN    IL           60015

SENT BY (NAME/DEPT.)                    PHONE
JAY GLENN (847) 526-9202

TO (COMPANY NAME)

ThomAS F. FAY ESQ

ADDRESS
700 5th Street N.W - #200

CITY                    STATE    ZIP CODE (REQUIRED)
WASHINGTON DC           20001

ATTN: (NAME/DEPT.)                    PHONE
T. FAY (202) 638-4534

## BC PRINTING & GRAPHICS
847-487-9210  •  Fax: 847-487-9212

### Receipt                    Date 11/3/05

**B/W Copies**

___ 8.5x11  54

___ 8.5x14  ___

___ 11x17  ___

Total $2.70

**BluePrint Copies**

___ 18x24  ___

___ 24x36  ___

___ 30x36  ___

Total ___

| QTY. | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |
|      |             |        |
|      |             |        |
|      |             |        |
|      |             |        |
|      |             |        |
|      |             |        |
|      |             |        |

### Fax Service
Send: # Pages___  Total_____
Receive: # Pages ___  Total_____

1

Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                              (847) 526-9207

August 29, 2006

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

IN RE:        -   SPECIAL MASTER ORDER –
                  LOVELLE "DARRELL" MOORE

Dear Tom:

Today Judge Ray forwarded me the enclosed **REPORT OF SPECIAL
MASTER PURSUANT TO ORDER OF REFERENCE CONCERNING COUNTS
DXLIX to DLIII** dated August 29,2006 consisting of 34 pages.

Judge Ray made the following eleven (11) provisional awards:

1.      Claim 1 – Lovelle Moore - $20,000,000.00;
2.      Claim 2 – Estate of Johnney S. Moore, (Deceased) Father - $10,000,000.00;
3.      Claim 3 -  Allie Mae Moore, Mother - $10,000,000.00;;
4.      Claim 4 –  Deborah Crawford, Sister - $10,000,000.00;
5.      Claim 5 -   Audrey Webb, Sister- $10,000,000.00;
6.      Claim 6 – Alice Warren Franklin, Sister - $10,000,000.00;
7.      Claim 7 – Bronzell Warren, Brother – $10,000,000.00;
8.      Claim 8 – Marvin S. Moore, Brother - $10,000,000.00;
9.      Claim 9 – Estate of James Otis Moore (Deceased) Brother - $10,000,000.00;
10.     Claim 10 – Jonnie Mae Moore-Jones, Sister - $10,000,000.00; and
11.     Claim 11 - Jamaal Muata Ali, Half-Brother - $10,000,000.00.

The total provisional Livingston claims total $120,000,000.00. If confirmed by
the Court, the fees due the undersigned are as follows:

1.      Damage Counsel award of $3,600,000.00 [ 3% x 120,000,000]; and
2.      Referral Award for Claim 2, Claim 3, Claim 4, Claim 5, Claim 6, Claim 7,
        Claim 8, Claim 9, Claim 10 and Claim 11 of 11,110,000  [11.11% x
        100,000,000]

Page Two
Mr. Thomas F. Fay
August 29, 2006

      3.      I will submit my Petition for costs in the future;
      4.      This amount will be increased by statutory interest from the date
              Judgment is entered until liquidation.

The total provisional amount due the undersigned for the Livingston claims is $14,720,000.00 plus costs and interest.

I am prepared to forward the Trial Notebook and/or argue this provisional award before the court.

Copies of DVD disks will be forwarded this week.

Very truly you

Jay J. Glenn

Enc.

5    002

Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, IL 60015

(847) 526-9202                                        Fax (847) 526-9207

September 12, 2006

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

### MEMO 57

IN RE:     CLAIM OF JOHN OLSON

Dear Tom:

On August 10, 2006 Judge Ray entered the Special Master Order for the above Claim. I have forwarded that Order by previous transmittal. No DVD Disks were forwarded because of time restraints.

Enclosed is Copy 2 of the seven (7) DVD's relating to the Estate of John Olson:

DISK 1 - ROGER OLSON, Personal Representative of JOHN ARNE
        OLSON;

        - ROGER OLSON, Future Personal Representative of SIGURD
          OLSON (Deceased);

        - ROGER OLSON, Future Personal Representative of
          BERTHA OLSON (Deceased);
        - ROGER OLSON, Brother;
        - MARY BAUMGARTNER, Sister;

DISK 2 - JULIA McFARLIN, Sister;
        - WENDY LANGE, Sister;

DISK 3 - RONALD OLSON, Brother;

DISK 4 - JANA CHRISTIAN, Sister;

Mr. Thomas Fortune Fay
September 12, 2006
- Page Two –

      DISK 5 -  SUSAN SINSIOCO, Sister;

      DISK 6 -  KAREN OLSON, Sister;

      DISK 7 -  RANDAL OLSON, Brother.

    The 12 Olson claims have been identified in my records as Claims 32 thru 43. I have attached excerpts of my Excel Spreadsheet which identifies the Claims and indicates the Provisional Awards, Provisional Attorney Fees and Referral Fees.  I am not aware of any changes in addresses or contact numbers. I will be in contact with ROGER OLSON and provide information on the Estates of his Father and Mother.

              Very truly yours,

              Jay J. Glenn

Enc:
   7 @ DVD Disk's   John Olson
   Excel Summary – Olson Claims

| | REFERRAL | File | | Last Name | First Name | Middle Name | Relationship |
|---|---|---|---|---|---|---|---|
| 32 | | OLSON | Estate | Olson | John | L. | |
| 33 | X | OLSON | Estate | Olson | Sigurd | | Father |
| 34 | X | OLSON | Estate | Olson | Bertha | | Mother |
| 35 | | OLSON | | McFarlin | Julia | A. | Sister |
| 36 | | OLSON | | Olson | Ronald | J. | Brother |
| 37 | | OLSON | | Christian | Jana | M | Sister |
| 38 | | OLSON | | Olson | Roger | S. | Brother |
| 39 | | OLSON | | Baumgartner | Mary | E. | Sister |
| 40 | | OLSON | | Olson | Randal | D. | Brother |
| 41 | | OLSON | | Sinsioco | Susan | J. | Sister |
| 42 | | OLSON | | Olson | Karen | L. | Sister |
| 43 | | OLSON | | Lange | Wendy | L. | Sister |

| Economic Report | Provisional Accretion | Provisional Pain & Suffering | Provisional Solatium | Total Provisional Award | TOTAL CLIENT AWARD | Damage Attorney Fee | Damage Attorney Referral Fee | TOTAL PROVISIONAL ATTORNEY |
|---|---|---|---|---|---|---|---|---|
| 1,010,497.00 | 1,010,497.00 | N/A | | 1,010,497.00 | | 30,314.91 | | |
| | | | 10,000,000.00 | | | 300,000.00 | 1111000 | |
| | | | 10,000,000.00 | | | 300,000.00 | 1111000 | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | | | 300,000.00 | | |
| | | | 10,000,000.00 | 110,000,000.00 | | 300,000.00 | | |
| | | | | | 111,010,497.00 | | | 5,552,314.91 |

6   004

dJay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                                    (847) 526-9207

August 25, 2006

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

IN RE:          -   SPECIAL MASTER ORDER –
                    CRAIG SWINSON

Dear Tom:

    Judge Ray forwarded me the enclosed **REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE CONCERNING COUNTS DLXXIV to
DLXXVIII** dated August 21, 2006.

    Judge Ray made the following eight (8) provisional awards":

    1.      Claim 1 – Craig Swinson $15,000,000.00;
    2.      Claim 2 -  Estate of Kenneth J. Swinson $10,000,000;
    3.      Claim 3 -  Estate of Ingrid M. Swinson $10,000,000.00.
    4.      Claim 4 –  Cydia Shaver $10,000,000.00;
    5.      Claim 5 -  Dawn Shaver $10,000,000.00;
    6.      Claim 6 -  Teresa Swinson $10,000,000;
    7.      Claim 7 -  William Swinson $10,000,000; and
    8.      Claim 8 –  Daniel Swinson $10,000,000.00.

    The total provisional Swinson claims total $85,000,000. If confirmed by the
Court, the fees due the undersigned are as follows:

    1.      Damage Counsel award of $ 2,550,000 [ 3% x 85,000,000]; and
    2.      Referral Award for Claims 2, 3, 4, 5, 6, 7, 8 of $ 7,777,000 [11.11% x
            70,000,000];

Page Two
Mr. Thomas F. Fay
August 25, 2006

       3.     I will submit my Petition for costs in the future;

       4.     This amount will be increased by statutory interest from the date
                Judgment is entered until liquidation.

       5.     The duplicate DVD disks will be forward next week.

     The total provisional amount due the undersigned for the Swinson claim is
$10,327,000 plus costs and interest.

     I am prepared to forward the Trial Notebook and/or argue this provisional award
before the court.

                             Very truly you

                             Jay U. Glenn

Enc.

Hyt Jay J. Glenn
Attorney at Law
2275 Half Day Road
Suite 350
Bannockburn, Illinois 60015

(847) 526-9202                                         FAX (847) 526-9207

June 22, 2006

Mr. Thomas F. Fay
Attorney at Law
700 5th Street NW
Suite 200
Washington, D.C. 20001

In Re:        Special Master Order - ESTATE OF THOMAS PAUL THORSTAD

Dear Tom:

        Today Judge Ray forwarded me the enclosed REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE CONCERNING COUNTS CDXXXVII
THROUGH CDXL dated June 20, 2006. Also enclosed are six CD disks as follows:

        DISK 1 - ADAM THORSTAD, Son of Thomas Paul Thorstad;
        DISK 2 -
                - JAMES THORSTAD, Personal Representative of the Estate of
                  Thomas Paul Thorsad;
                - JAMES THORSTAD, Father of Thomas Paul Thorstad;
                - BARBARA THORSTAD, Mother of Thomas Paul Thorstad
                - JAMES THORSTAD, Personal Representative of the Estate of
                - SUSAN B. HUGIS, (Deceased), Sister of Thomas Paul    Thorstad.
        DISK 3 –
                -   JANICE T. EDQUIST, SISTER OF Thomas Paul Thorstad.
        DISK 4 -
                - JOHN THORSTAD, Brother of Thomas Paul Thorstad;
                - JAMES THORSTAD, Brother of Thomas Paul Thorstad;
        DISK 5 -
                - KATHERYN WALLACE, Sister of Thomas Paul Thorstad;
                - BARBARA WARWICK, Sister of Thomas Paul Thorstad;
        DISK 6
                - PATRICIA ZOSSO, Sister of Thomas Paul Thorstad;

        Your office confirmed that they have the 2nd copy of the testimony of
KATHLEEN HEDGE, Widow of Thomas Paul Thorstad and RYAN THORSTAD, Son
of Thomas Paul Thorstad;

12 of

Thomas F. Fay, Esq.
June 22, 2006
- Page Two –

I will retain the Trial Notebook which will have copies of all Exhibits and copy 1 of each DVD.

Judge Ray made the following provisional awards;

| | |
|---|---|
| Claim 1: Estate of Thomas Paul Thorstad (Deceased) | 1,921,086.00 |
| Claim 2: Kathleen Elizabeth Thorstad Hedge, Widow | 15,000,000.00 |
| Claim 3: Adam Thorstad, Son | 15,000,000.00 |
| Claim 4: Ryan Thorstad, Son | 15,000,000.00 |
| Claim 5: James Thorstad, Sr. Father | 15,000,000.00 |
| Claim 6: Barbara G. Thorstad, Mother | 15,000,000.00 |
| Claim 7: Estate of Susan Thorstad Hugis (Deceased) Sister | 10,000,000.00 |
| Claim 8: Janice Thorstad Edquist, Sister | 10,000,000.00 |
| Claim 9: James Thorstad Jr., Brother | 10,000,000.00 |
| Claim 10: Kathryn Thorstad Wallace, Sister | 10,000,000.00 |
| Claim 11: Barbara Thorstad Warwick, Sister | 10,000,000.00 |
| Claim 12: Patricia Thorstad Zosso, Sister | 10,000,000.00 |
| Claim 13: John Thorstad, Brother | 10,000,000.00 |

The Total Provisional Thorstad family claims are $146,921,086.00. The Provisional Damage Attorney Fee is $4,407,632.58.

This office made the following referrals of the above claims:

| | |
|---|---|
| Claim 2: Kathleen Elizabeth Thorstad Hedge, Widow | 15,000,000.00 |
| Claim 3: Adam Thorstad, Son | 15,000,000.00 |
| Claim 4: Ryan Thorstad, Son | 15,000,000.00 |

12 00

Thomas F. Fay, Esq.
June 22, 2006
- Page Two –

| | |
|---|---|
| Claim 7:  Estate of Susan Thorstad Hugis (Deceased) Sister | 10,000,000.00 |
| Claim 8:  Janice Thorstad Edquist, Sister | 10,000,000.00 |
| Claim 9:  James Thorstad Jr., Brother | 10,000,000.00 |
| Claim 10:  Kathryn Thorstad Wallace, Sister | 10,000,000.00 |
| Claim 11:  Barbara Thorstad Warwick, Sister | 10,000,000.00 |
| Claim 12:  Patricia Thorstad Zosso, Sister | 10,000,000.00 |
| Claim 13:  John Thorstad, Brother | 10,000,000.00 |

These referred claims have resulted in a Provisional Awards of $115,000,000.00. The additional Provisional Attorney Fees is $12,776,500.00

The Total Provisional Fees, for the Thorstad family claims due Jay J. Glenn, Esq., or his successor, totals $17,184,132.50 plus costs.

I will submit costs for all my claims in the future.

Very truly yours,

Jay J. Glenn

Enc.

$12\ 00$

**<u>EXHIBIT 6</u>**

**Glenn v. Fay (S.D.N.Y.) Rule 26(f) Report (Excerpt)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

JAY GLENN,

                             **Plaintiff,**

      -against-

**THOMAS FORTUNE FAY, STEVEN R. PERLES
and FAY & PERLES,**

                        **Defendants.**

-------------------------------------------------------------------------x

                             **RULE 26(f) DISCOVERY
PLAN REPORT**

                             **10-cv-8287 (WHP)**

      The parties have conferred and state pursuant to Rule 26(f):

## I.    Summary of Case

      Plaintiff Jay Glenn is an attorney, as are defendants Thomas Fay and Steven

Perles. Defendant Fay & Perles is a law firm in which Fay and Perles are partners.

Plaintiff Glenn seeks a charging lien for legal representation, client referrals and

expenses in the case of Peterson, et al. v. Islamic Republic of Iran, et al., 01-2094

(RCL)(D.D.C.) (hereinafter "Peterson Litigation"). The Republic of Iran ("Iran") defaulted

in the Peterson Litigation, and the Court appointed a Special Master to assess the

damages owed to the Peterson Plaintiffs. Fay & Perles, and a third attorney, Allen

Rothenberg, represented all of the plaintiffs in the Peterson Litigation. Fay & Perles

engaged plaintiff Glenn to provide certain legal services related to the proof of damages

claims on behalf of certain plaintiffs in the Peterson Litigation. Fay, Perles and Fay &

Perles (collectively, "Defendants") contend that Glenn did not fulfill his contractual

obligations to Fay & Perles in connection with the Peterson Litigation. Glenn also

asserts that Defendants agreed to pay him a referral fee for 40 additional plaintiffs in the Peterson Litigation whom he located and referred to Fay and Perles..

The Peterson Litigation arose out of an October 23, 1983 terrorist attack in which a truck carrying a large explosive device drove into the center of the U.S. Marine barracks in Beirut, Lebanon, killing 241 American servicemen and injuring many others. Plaintiff is aware of five additional cases Defendants have filed based upon this terrorist attack (hereinafter "Beirut Cases"). On information and belief, the plaintiffs in the Peterson Litigation and the Beirut Cases and numerous parties in other cases involving Iran have been joined as third party defendants in <u>Levin, et al. v. Bank of New York, JP Morgan Chase, Societe Generale and Citibank,</u> 09-Civ 5900 (RPP) (SDNY). There are two additional cases involving the Peterson Litigation currently pending in the Southern District of New York: <u>Peterson, et al. v. Islamic Republic of Iran, et al.,</u> 16 Misc. 302 (BSJ) (SDNY) and <u>Peterson, et al. v. 650 Fifth Avenue Company, et al.,</u> 10-cv-05900 (RPP)(SDNY). All of the litigation files in those cases (the "Collections Actions") are under seal, and Plaintiff Glenn does not have access to them pursuant to the sealing orders.

In 2002 Glenn was recruited as one of a number of damage attorneys who were retained by Fay & Perles to work on the damages phase of the Peterson Litigation on a contingent fee basis. The written agreement between Fay & Perles and Glenn called for Glenn to aid with prosecuting the case of certain Peterson Plaintiffs in exchange for a contingent fee of 3% of all damages actually collected by these plaintiffs. Glenn alleges that, while performing these services, Glenn became aware of numerous additional potential plaintiffs for the Peterson Litigation, and that he advised Defendant

2

Fay of his findings. Glenn further alleges that Defendant Fay and Plaintiff Glenn entered into an agreement that these new plaintiffs would be joined in the Peterson Litigation and that Plaintiff Glenn would receive an additional referral fee equal to 11.1111% of the amount of any damages collected by those plaintiffs. Glenn alleges this agreement is memorialized in a series of documents. Defendants deny that there was any such agreement. In addition, Defendants state that the supposed "additional potential plaintiffs" to whom Glenn refers: (a) were all members of families that were already plaintiffs in the Peterson Litigation and listed on the attachment to the June 13, 2003 agreement between Glenn and Fay & Perles; (b) were persons unknown to Glenn but known to the Defendants before the parties executed the June 13, 2003 agreement; and (c) were derivative solatium claimants from the families who were already represented by Fay & Perles prior to June 13, 2003. Glenn disputes that these additional plaintiffs were known to Defendants or listed in the attachment to the June 13, 2003 agreement.

Glenn alleges that he investigated and proved the damage claims of 103 Peterson Plaintiffs who have been awarded a combined judgment of $309,741,881.00 and that the 40 Peterson referrals resulted in a combined judgment of $111,750,000.00. Defendants state that the cases of the Peterson plaintiffs for whom Glenn provided services had already been thoroughly investigated prior to Glenn's involvement in the Peterson Litigation and that Glenn conducted roughly one-half of the depositions required to prove those plaintiffs' damages. Fay or an employee of Fay & Perles conducted the remaining depositions. Glenn asserts that he provided all of the required services including preparation and full submission of 103 claims to a Special Master and

3

necessary parties to this action, in which Glenn seeks a declaration regarding the

ownership of that property.  Plaintiff disputes this.

_Daniel Cobrinik_  by _Ian L. Blant_
Daniel Cobrinik (DC 6406)          Ian L. Blant
        Attorney for Plaintiff       (IB-4878)
475 Park Avenue South – 19th Floor
New York, New York 10016
(212) 725-6888

**FAY KAPLAN LAW**
By: /s/ Annie P. Kaplan
777 Sixth Street, N.W., Suite 410
Washington DC 20001

Attorneys for Thomas Fortune Fay and
Fay & Perles

**SHALOV STONE BONNER & ROCCO LLP**
By: /s/ James P. Bonner
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 239-4340

Attorneys for Steven R. Perles

**EXHIBIT 7**

**Glenn v. Fay (S.D.N.Y.) Hearing Tr. (Excerpt)**

```
  1    UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
  2    ------------------------------x

  3    JAY GLENN,

  4                    Plaintiff,

  5             v.                        10 Civ. 8287 (WHP)

  6    THOMAS FORTUNE FAY, et al.,
                                          Argument and Decision
  7                    Defendants.

  8    ------------------------------x

  9                                       New York, N.Y.
                                          July 29, 2011
 10                                       11:25 a.m.

 11    Before:

 12             HON. WILLIAM H. PAULEY III

 13                                       District Judge

 14

 15             APPEARANCES

 16

 17    DANIEL COBRINIK
            Attorney for Plaintiff
 18

 19    FAY KAPLAN LAW, P.A.
            Attorneys for Defendants Fay, Fay & Perles, and Laspada
 20    BY:  ANNIE P. KAPLAN

 21

 22    STONE BONNER & ROCCO LLP
            Attorneys for Defendant Perles
 23    BY:  JAMES P. BONNER

 24

 25
```

1          (Case called)

2          THE COURT:  Good morning.  This is oral argument on

3     the defendants' motion to dismiss.  Do you want to be heard?

4          MS. KAPLAN:  Yes, your Honor.  If it please the Court,

5     I'll argue first, and then Mr. Bonner will argue after me.

6          THE COURT:  Why am I going to hear from two?

7          MR. BONNER:  Your Honor, I think it is very unlikely I

8     will have anything to say at all.  Ms. Kaplan will handle it.

9     If there is some follow-up, I may have a few words to say.

10         MS. KAPLAN:  Good morning, your Honor.  I represent

11    Thomas Fortune Fay, I represent the partnership Fay & Perles,

12    and I represent Anthony Laspada.  This is a Rule 12 motion to

13    dismiss.  The facts in the case, I believe the Court is well

14    acquainted with them, but briefly if I can go over them again.

15         The issue involved is a declaratory judgment action

16    filed by Mr. Glenn.  Mr. Glenn is Mr. Fay's brother-in-law and

17    was one of the damages attorneys on the case whose services

18    were retained back in June of 2003 to help prove damages in an

19    underlying litigation in the District of Columbia.  The

20    underlying litigation which we call the Peterson litigation

21    involved the death of 241 Marines in 1983 at the attack in

22    Lebanon.  We represented, "we" being the defendants Fay &

23    Perles, represented the 153 families.

24         Fay & Perles tried the case as to the liability issues

25    before Judge Lambert down in Washington, D.C., and a liability

 1  verdict was entered on May 30, 2003.  Judge Lambert then

 2  directed Fay & Perles to prove the damage aspect of the

 3  underlying case, the terrorism litigation case, through the use

 4  of special masters.  Fay & Perles retained 14 damage attorneys

 5  for the limited purpose of helping them put together the proofs

 6  to prove the damages that these 153 families had sustained.

 7  Mr. Glenn was one of these individuals.

 8         All of the damage attorneys entered into fee

 9  agreements for representing different members of different

10  families.  The fee agreements were entered June 13, 2003, by

11  all of the damage attorneys.  All of these agreements provided

12  that the fees to be received by attorneys, such as Mr. Glenn,

13  would be 3 percent of the gross amount collected from the

14  defendants.  They further provided the fees were contingent

15  upon collection and to the extent of collection only.

16         In addition, the agreement provided that it was the

17  only agreement between Fay & Perles and each of the damage

18  attorneys, Mr. Glenn specifically in this case, and that the

19  District of Columbia law would apply to any disputes.

20         Notwithstanding this agreement, Mr. Glenn has put

21  forth a petition to this Court for a declaratory judgment that

22  he has another, oral fee agreement as well for a contingency

23  fee of 11.11 percent of every family member that he contends he

24  referred to the Fay & Perles firm.

25         At this point the relief sought is a declaratory

1  judgment that this Court will recognize that there is an oral

2  contingency fee agreement in effect between Fay & Perles and

3  Thomas Fay and Stephen Perles reflecting the fact that Mr.

4  Glenn has an 11.11 contingency fee as well as a written

5  agreement entitling him to a 3 percent contingency fee on any

6  collected funds.

7        We filed motions to dismiss under Rule 12 in this case

8  on four bases:  First, that there was a lack of subject matter

9  jurisdiction; second, that there was a lack of personal

10  jurisdiction; third, lack of venue; and, fourth, that the

11  plaintiff has failed to state a cause of action.  I'm going to

12  run through each one if you want, your Honor.

13        THE COURT:  Quite frankly, I've read your brief.  I

14  think I'd like to hear from Mr. Cobrinik.

15        MS. KAPLAN:  I'll sit down.  Thank you.

16        MR. COBRINIK:  Your Honor, let me address one thing

17  that she has raised, and then I'll address the four arguments

18  that they have made.  It is not completely true that this is a

19  claim based solely on an oral agreement.  There was an oral

20  agreement.  There were, however, confirmatory letters from Mr.

21  Glenn to Fay & Perles.  These confirmatory letters are all

22  alleged in the complaint.

23        Essentially, what happened is after Mr. Glenn was

24  hired as a damages attorney, he discovered that there were

25  other people who ought to have been named as plaintiffs in the

## EXHIBIT 8

**Letter from Glenn to Judge Forrest, Dated May 26, 2016**

# STORCH AMINI & MUNVES PC
A New York Professional Corporation

Steven G. Storch
Member NY & IL Bars

e-mail: storch@samlegal.com
direct: 212.497.8216

May 26, 2016

**Via ECF**

Honorable Katherine B. Forrest
United States District Judge
United States Courthouse
500 Pearl Street, Room 1950
New York, New York 10007

Re:    *Peterson, et al., v. Islamic Republic of Iran, et al.,* Case No. 10-cv-4518 (KBF)

Dear Judge Forrest:

We are counsel for Jay Glenn ("Glenn"), an attorney retained by certain of the Peterson Plaintiffs and/or their counsel to prove damages claims on behalf of those plaintiffs in *Peterson, et al. v. Islamic Republic of Iran, et al.*, Case No. 01-cv-2094 (RCL) (D. D.C.) (the "D.C. Action"). The instant proceeding was brought to enforce the judgments obtained in the D.C. Action.

We write in opposition to the judgment creditors' letter-motion for an order authorizing the distribution of funds held in the QSF Trust [ECF No. 617].

Glenn has an interest in the QSF Trust funds. After Fay & Perles ("F&P"), plaintiffs' counsel in the D.C. Action, prevailed on liability issues, an order was entered on May 30, 2003, directing it to prove plaintiffs' damages. F&P thereafter retained several attorneys, one of which was Glenn, for the purpose of proving damages before the Special Masters. Glenn entered into an agreement with F&P in June 2003 which provided that his fees would be 3% of the gross amount collected with respect to plaintiffs represented by him, and that such fees were contingent upon collection. While performing services, Glenn became aware of additional potential plaintiffs and entered into separate agreements with them and F&P pursuant to which those plaintiffs and F&P agreed to pay him an additional fee equal to 11.11% of the amount collected on their behalves. Ultimately, Glenn proved the damages claims of 103 plaintiffs, including the 40 which are party to the additional fee agreements. The 40 plaintiffs were awarded judgments totaling approximately $110 million, and the other plaintiffs were awarded judgments totaling approximately $200 million. Under his agreements, Glenn is owed approximately $9 million under the June 2003 agreement and approximately $12 million under the additional fee agreements, assuming that the full amount of the judgments will be collected. However, in or about March 2010, after

2 Grand Central Tower • 140 East 45th Street • 25th Floor • New York • NY 10017
main: 212.490.4100 • fax: 212.490.4208 • www.samlegal.com

Honorable Katherine B. Forrest
May 26, 2016
Page 2

approximately eight years of service, F&P advised Glenn that no amount would be paid to him under the additional fee agreements.[1]

To protect his interest, Glenn filed a Notice of Charging Lien in the D.C. Action, a copy of which is enclosed.

The fees to which Glenn is entitled are payable from the portion of the proceeds payable to F&P and, therefore, will not reduce the recoveries to which the injured plaintiffs are entitled, nor should it interfere with their prompt receipt of those funds. However, the proposed order submitted by the judgment creditors in this action [ECF No. 617-1] provides for "distribution of the assets held by QSF in accordance with the terms of the Cooperation Agreement and in written agreements between Plaintiffs and other judgment creditors of Iran" (*id*. at p.3), the terms of which agreements Glenn is not necessarily privy to. His concern is that the QSF Trust will distribute funds directly to the judgment creditors and to F&P (or the other counsel affiliated with F&P identified in Glenn's Notice of Charging Lien) and thereby place such funds beyond the reach of his charging lien.[2] To the extent that the portion due to F&P and such other counsel are not distributed by the QSF Trust, Glenn has no objection to the remainder being promptly distributed to the injured plaintiffs.

Respectfully,

/s/ Steven G. Storch

Steven G. Storch

Enclosure

cc:  Shalom Jacob (via e-mail)
     Alan H. Katz (via e-mail)
     All counsel on ECF Service List

---

[1] In November 2010, Glenn commenced an action against F&P, its principals, and Allen L. Rothenberg and Anthony J. LaSpada, attorneys who referred certain plaintiffs in the D.C. Action to F&P, captioned *Glenn v. Fay, et al.*, Case No. 10-8287 (WHP) (S.D.N.Y). That action was dismissed for lack of jurisdiction and improper venue because the "Iranian assets [as to which Glenn asserted an entitlement] have not yet been recovered." July 29, 2011 Hr'g Tr. at 13:10-15:17. That obstacle was subsequently obviated by this Court's turnover order [ECF No. 462].

[2] Glenn previously sought to intervene in the miscellaneous proceeding related to this action to ensure assets sufficient to pay any judgment entered in *Glenn v. Fay, et al.*, remain in this jurisdiction while that action is pending. Glenn's application to intervene was denied on various grounds, including that his interests are adequately protected by the Peterson Plaintiffs [ECF No. 145]. However, his interests have since diverged, as reflected by the fact that the proposed order at issue herein does not prevent the distribution of funds payable to Glenn beyond the reach of his charging lien.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*,<br><br>                    Plaintiffs,<br><br>        - against -<br><br>ISLAMIC REPUBLIC OF IRAN, *et al.*,<br>                    Defendants. | Case No. 01-cv-2094<br><br>Chief Judge Royce C. Lamberth |

## NOTICE OF CHARGING LIEN

TO THE PLAINTIFFS, ALL OTHER PARTIES IN THIS ACTION, AND THEIR RESPECTIVE ATTORNEYS:

PLEASE TAKE NOTICE:

1.       Jay Glenn ("Glenn"), an attorney admitted to practice in the State of Illinois, hereby asserts an attorney charging lien in and to the proceeds of any and all collection, recovery, judgment, claim, or collateral undertaking (all such amounts, the "Proceeds") now or in the future to be received by each of the respective plaintiffs herein listed on the attached Exhibits 1 and 2 in full or partial satisfaction of their respective judgments in this action, to the extent specified below, including, without limitation, any such Proceeds paid directly to the following attorneys and firms:

(a)      Fay & Perles ("F&P");

(b)      Fay Law Group, P.A.;

(c)      Fay Kaplan Law P.A.;

(d)      Thomas Fay, Esq.;

(e)      Perles Law Firm, P.C.;

(f)      Steven R. Perles, Esq.;

(g)      The Rothenberg Law Firm LLP;

(h)      Allen L. Rothenberg, Esq.;

       (i)       Anthony J. LaSpada, P.A.; and

       (j)       Anthony J. Laspada, Esq.

    2.      Such charging lien is asserted for the purpose of securing Glenn's fee claim of: (a) 3% of the respective gross amounts collected on behalf of the 103 plaintiffs in this action listed on Exhibits 1 and 2, to which Glenn is entitled pursuant to an agreement between Glen and F&P; and (b) 11.11% of the respective gross amounts collected on behalf of the 40 plaintiffs in this action listed on Exhibit 2, to which Glenn is entitled pursuant to agreements between Glenn, F&P, and the respective plaintiffs.

    3.      Any and all collection, recovery, distribution, funds on hand, cash on hand, or any recovery due to the respective plaintiffs listed on Exhibits 1 and 2 are subject to and being impressed by the charging lien in Glenn's favor to the extent specified above.

Dated: May 26, 2016                    STORCH AMINI & MUNVES PC

                                      /s/ Bijan Amini
                                      Bijan Amini
                                      Steven G. Storch
                                        Edward P. Dolido
                                      Jeffrey Chubak
                                      2 Grand Central Tower
                                      140 East 45th Street, 25th Floor
                                      New York, New York 10017
                                      (212) 490-4100
                                      bamini@samlegal.com
                                      sstorch@samlegal.com
                                      edolido@samlegal.com
                                      jchubak@samlegal.com

                                      *Attorneys for Jay Glenn*

**EXHIBIT 1**
**Plaintiffs Whom F&P Retained Glenn to Represent**
**for the Purpose of Proving Damages in this Action**

**Sommerhof Plaintiffs**
1. Estate of William Scott Sommerhof
2. William J. Sommerhof
3. Jocelyn J. Sommerhof
4. John Sommerhof

**Helms Plaintiffs**
5. Estate of Mark A. Helms
6. Mary Ann Turek
7. Marvin R. Helms
8. Christopher Todd Helms
9. Rebecca Gintonio

**Livingston Plaintiffs**
10. Estate of Joseph R. Livingston, III
11. Annette R. Livingston
12. Joseph R. Livingston IV

**Scott Plaintiffs**
13. Estate of Gary Randall Scott
14. Mary Ann Scott
15. Stephen Allen Scott
16. Jon Christopher Scott
17. Kevin James Scott
18. Susan Scott Jordan

**Belmer Plaintiffs**
19. Estate of Alvin Burton Belmer
20. Luddie Belmer
21. Alue Belmer
22. Clarence Belmer
23. Kenneth Belmer
24. Annette Belmer
25. Donna Belmer
26. Denise Belmer

**Sturghill Plaintiffs**
27. Estate of Eric D. Sturghill
28. Marcus L. Sturghill
29. Marcus D. Sturghill
30. NeKeisha Lynn Sturghill

**Woollett Plaintiffs**
31. Estate of Donald Elberan Woollett
32. Beverly Woollett

33. Paul Woollett
34. Lilla Woollett Abbey
35. Lyda Woollett Guz

**Phillips Plaintiffs**
36. Estate of John Arthur Phillips, Jr.
37. Nancy Brocksbank Fox

**Young Plaintiffs**
38. Thomas D. Young

**Swinson Plaintiffs**
39. Craig Swinson

**Moore Plaintiffs**
40. Lovelle "Darrell" Moore
41. Allie Mae Moore

**Wheeler Plaintiffs**
42. Danny Gordon Wheeler
43. Brenda June Wheeler
44. Andrew Wheeler
45. Jonathan Wheeler
46. Benjamin Wheeler
47. Kerry Wheeler
48. Estate of Marlis "Molly" Wheeler
49. Jill Wold

**Thorstad Plaintiffs**
50. Estate of Thomas Paul Thorstad
51. James Thorstad, Sr.
52. Barbara Thorstad
53. Estate of Susan Thorstad Hugis

**Olson Plaintiffs**
54. Estate of John Arne Olson
55. Julia A. McFarlin
56. Mary E. Baumgartner
57. Susan J. Sinsicoco
58. Karen L. Olson
59. Jana M. Christian
60. Wendy L. Lange
61. Ronald J. Olson
62. Roger S. Olson
63. Randall D. Olson

**EXHIBIT 2**
**Plaintiffs Party to Agreements With Glenn and F&P and who were**
**Represented by Glenn in this Action for the Purpose of Proving Damages**

**Livingston Plaintiffs**
1.    Tia Fox
2.    Estate of Joseph R. Livingston, Jr.

**Scott Plaintiffs**
3.    Estate of Larry Scott

**Belmer Plaintiffs**
4.    Faye Belmer
5.    Colby Keith Belmer

**Phillips Plaintiffs**
6.    John Phillips, Sr.
7.    Victoria Jacobus
8.    Elizabeth Phillips Moy
9.    Harold Phillips

**Young Plaintiffs**
10.    Estate of Robert Young
11.    Estate of Nora Young
12.    James Young
13.    Mary Stilpen

**Swinson Plaintiffs**
14.    Dawn Swinson
15.    Teresa Swinson
16.    Cydia Shaver
17.    William Swinson
18.    Daniel Swinson
19.    Estate of Kenneth J. Swinson
20.    Estate of Ingrid M. Swinson

**Moore Plaintiffs**
21.    Deborah Crawford
22.    Audrey Webb
23.    Alice Warren Franklin
24.    Jonnie Mae Moore-Jones
25.    Marvin S. Moore
26.    Jamaal Muata Ali
27.    Estate of Johnney S. Moore
28.    Bronzell Warren
29.    Estate of James Otis Moore

**Thorstad Plaintiffs**
30.    Kathleen Elizabeth Thorstad Hedge
31.    Ryan Thorstad
32.    Adam Thorstad
33.    Janice Thorstad Edquist
34.    Kathryn Thorstad Wallace
35.    Barbara Thorstad Warwick
36.    Patricia Thorstad Zosso
37.    James Thorstad, Jr.
38.    John Thorstad

**Olson Plaintiffs**
39.    Estate of Sigurd Olson
40.    Estate of Bertha Olson

## CERTIFICATE OF SERVICE

I hereby certify that on this May 26, 2016, I served the foregoing Notice of Attorney's Charging Lien on all counsel of record via CM/ECF, and on the attorneys listed below via U.S. mail at the following addresses:

Thomas Fay, Esq.
FAY LAW GROUP, P.A.
777 Sixth Street, NW, Suite 410
Washington, D.C. 20001

Steven R. Perles, Esq.
PERLES LAW FIRM, PC
1050 Connecticut Avenue, NW, Suite 500
Washington, D.C. 20036

Allen L. Rothenberg, Esq.
LAW FIRM OF ALLEN L. ROTHENBERG
1420 Walnut Street, 2nd Floor
Philadelphia, PA 19102

Anthony J. Laspada, Esq.,
ANTHONY J. LASPADA, P.A.
1802 North Morgan Street
Tampa, FL 33602

/s/ Bijan Amini

## **EXHIBIT 9**

**Letter from Salon Marrow to Judge Forrest, Dated June 1, 2016**

# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

### ATTORNEYS AT LAW

LIVIU VOGEL*
Partner

lvogel@salonmarrow.com
direct dial (646) 843-1909

*also admitted in Connecticut

292 MADISON AVENUE • NEW YORK, NY 10017

Telephone (212) 661-7100

Facsimile (212) 661-3339

One University Plaza, Suite 408
Hackensack, NJ 07601
Telephone (201) 662-0656
Facsimile (201) 487-9054

257 Lyons Plains Road
Weston, CT 06883
Telephone (203) 227-0023
Facsimile (646) 843-1910

800 Corporate Drive, Suite 208
Ft. Lauderdale, FL 33334
Telephone (954) 491-0099
Facsimile (954) 491-1544

June 1, 2016

**Via ECF**

Honorable Katherine B. Forrest
United States District Judge
United States Courthouse
500 Pearl Street, Room 1950
New York, New York 10007-1312

Re: *Peterson v. Islamic Republic of Iran*, 10 cv 4518 (KBF)

Dear Judge Forrest:

We write on behalf of the Peterson Plaintiffs in opposition to the recent letters submitted by counsel for David J. Cook (Docket Entry # 620 and 626)[1] and Jay Glenn (Docket Entry # 625) seeking to obstruct the distribution of a significant portion of the approximately $1.8 billion currently held in the QSF Trust established by the Court in this action (the "QSF funds"). We also write in response to Defendant Banca UBAE SpA's ("UBAE") letter request to escrow its attorney's fees. (Docket Entry # 619).

## The Cook and Glenn Applications Should Not Impede The Distribution of Plaintiffs' Funds

While Cook and Glenn generally claim an interest in the Peterson Plaintiffs' share of the QSF funds, they concede that they really only seek to prevent the distribution of a portion of the attorney's fees owed to the Peterson Plaintiffs' counsel, and not to increase the amount of those

---

[1] The Court's May 25, 2016 order directed: "Any party wishing to **respond** to any recent filing in this action must do so not later than June 1, 2016. The Court will not accept any filings after June 1." (emphasis added). This evening, Cook and Glenn filed motions to intervene that do not respond to any recent filings. Those motions should therefore be denied because they violate the Court's order. If the Court nonetheless decides to hear the motions, the Peterson Plaintiffs request a full and fair opportunity to oppose the motions.

SERVING THE BUSINESS COMMUNITY FOR MORE THAN **60** YEARS

# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Page 2

fees. Thus, Cook and Glenn have advanced no reason for interfering with the distribution of the Peterson Plaintiffs' portion of the QSF funds. In any event, as demonstrated below, this is not the proper proceeding to litigate Cook's and Glenn's supposed entitlement to the payment of attorney's fees, and neither Cook nor Glenn are entitled to the relief they seek from this Court.

## Neither Cook Nor Glenn Is Entitled to Any Relief in This Court

Both Cook and Glenn are attorneys who claim they are entitled to a substantial share of the attorney's fees payable by the Peterson Plaintiffs. Although Cook never even appeared in these proceedings, which have spanned eight years, he claims entitlement to a fee that equals 10% of the Peterson Plaintiffs' recovery. He asserts that right although the District Court in the *Peterson* action in the District of Columbia deemed the little work Cook did perform in that proceeding incompetent and bordering on sanctionable.[2] We are advised by Peterson Plaintiffs' counsel, Fay & Perles, that Cook's continued dereliction of his duties led to his termination for cause almost five years ago.[3]

Glenn seeks an 11.11% contingent referral fee based on an alleged agreement that we are advised is not reflected anywhere in writing. While Glenn omits that fact in his letter to this Court, the absence of a writing bars any recovery on his supposed agreement.[4] He also seeks an

---

[2] Writing about Cook, the Hon. Royce Lamberth, U.S.D.J. noted:

> Here, plaintiffs' counsels' misstatements of law may be attributed to lack of relevant legal expertise and incompetence, but this conduct standing alone is not sufficiently egregious to warrant imposition of sanctions. . . . . The Court advises the parties, however, that it will never excuse conduct that no reasonable attorney would pursue. Plaintiffs' counsel has come dangerously close in this case to such sanctionable conduct.

*Peterson et al. v. Islamic Republic of Iran, et al.* Docket Nos. 01-2094, slip op. at p. 4 (D.D.C. September 7, 2008)(copy attached hereto as Exhibit A).

[3] Cook has already instituted an arbitration against the Peterson Plaintiffs and some of their counsel in the District of Columbia seeking to establish his right to attorney's fees relating to the Peterson Plaintiffs judgment. *See* Folkenflik May 27, 2016 Letter (Docket # 626) at Ex. C. Glenn has already unsuccessfully sued the *Peterson* Plaintiffs' counsel, Thomas Fay and Steven Perles, in a separate proceeding in this District that was dismissed in 2011 for lack of jurisdiction and improper venue. *See* Storch May 26, 2016 Letter (Docket # 625) at p.2, n.2; July 29, 2011 Order in *Glenn v. Fay, et al.*, 10-Civ-8287 (WHP) (S.D.N.Y.) (Docket Entry # 32).

[4] Glenn is a member of the Illinois bar. As such, he was ethically barred from entering into the unwritten, contingent referral agreement that he claims, rendering it unenforceable, even if it were to exist. *See Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 89 (7th Cir. 1993) (a fee-sharing agreement between attorneys that is not in writing and not signed by the client is contrary to Rule 2-107 of the Illinois Code of Professional Responsibility and is therefore unenforceable as a matter of public policy).

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Page 3

additional 3% contingency fee under a written retainer agreement with Fay & Perles, but neglects to mention that he breached that agreement by failing to perform his assigned duties. That non-performance caused Fay & Perles's 2010 decision to withhold any compensation from Glenn.

Irrespective of the merits of their underlying claims, which are not before the Court, neither Cook nor Glenn is entitled to *any* relief in this Court. Neither Cook nor Glenn is counsel of record in, or a party to, these proceedings. Their submissions fail to cite a single legal authority to support: (a) their standing to disturb the imminent distribution of the QSF funds, (b) the enforcement in this District of the charging liens that they purport to have under the laws of the District of Columbia, or (c) their entitlement to a New York lien and/or any modifications of Plaintiffs' proposed order distributing the QSF funds.

An attorney's right to a charging lien in this Court is governed by Section 475 of the New York Judiciary Law. Insofar as out-of-state counsel are concerned, Section 475 dictates that *only counsel of record* in an action filed in this District may avail themselves of an attorney's charging lien. *See Jaghab & Jaghab v. Marshall*, 256 A.D.2d 342, 343, 681 N.Y.S.2d 330 (2d Dep't 1998) ("Since the petitioner law firm neither appeared as attorney of record in an action or proceeding (Judiciary Law § 475) nor filed a proper notice of lien pursuant to Judiciary Law § 475–a, it was not entitled to a charging lien under the Judiciary law"); *Law Office of Allan Khoshbin v. Law Office of Michael Ruiz*, 6 Misc. 3d 1029(A) at *3, 800 N.Y.S.2d 349 at *4 (Civ. Ct. 2005) ("Under Judiciary Law section 475, petitioner was, in short, obligated to have commenced an action or other proceeding on the underlying personal injury case in any court. This is a threshold issue. . . . Khoshbin fails to attach any pleading to show that it participated in *any* stage of the lawsuit."). Moreover, the "mere existence of a retainer agreement is insufficient to create a charging lien pursuant to Judiciary Law § 475." *Ebert v. New York City Health & Hosps. Corp.*, 210 A.D.2d 292, 292-93, 619 N.Y.S.2d 756 (2d Dep't 1994). To the contrary, Section 475 "provides that an attorney [must] 'appear' for the client, in the sense of participating in a legal proceeding on the client's behalf or by having his name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter." *Id.*

As a result, neither Cook nor Glenn is entitled to a charging lien because neither has ever appeared in these proceedings. Moreover, they have provided no basis for enforcing in this District the charging liens they filed in the District of Columbia, especially given that they would not be entitled to such a lien under Section 475 of the New York Judiciary Law. Likewise, Cook cites no authority that would justify his alternative request that the Court effectively grant him a charging lien by "withhold[ing]" QSF funds in an amount "sufficient to satisfy Cook's

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Page 4

entitlement to payment of his contractual fees and costs." Docket No. 626, Ex. A, p.4 [Cook's proposed Alternative Order Authorizing Distribution of Funds].

Even if, contrary to the law and facts here, Cook and Glenn were counsel of record eligible to assert a charging lien under Section 475, their requests for a lien would nonetheless fail. As the Peterson Plaintiffs and their counsel, Fay & Perles, will demonstrate in the arbitration proceeding Cook has initiated in the District of Columbia and in any forum where Glenn may file his claim, both attorneys neglected to carry out the work they were retained to perform, justifying their termination for cause. That failure provides another insurmountable bar to their ability to assert an attorney's charging lien in this action. *See Klein v. Eubank*, 87 N.Y.2d 459, 463, 640 N.Y.S.2d 443, 663 N.E.2d 599 (1996) ("a charging lien is waived by an attorney who without just cause neglects or refuses to proceed with the prosecution of the case"); *see also Campagnola v. Mulholland, Minion & Roe*, 76 N.Y.2d 38, 44, 555 N.E.2d 611, 614 (1990) ("Where [any attorney's] discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement.").[5]

But this Court need not reach the merits of these underlying claims, because both Cook and Glenn are improperly seeking to put the proverbial cart before the horse. Whether Cook and Glenn are entitled to any fee will be determined by the arbitrator in the District of Columbia action Cook has already filed and by the fact-finder in any proceeding Glenn initiates. Only if Cook and Glenn succeed in proving their claims in those separate proceedings will they have any entitlement to the payment of attorneys' fees. Their submissions do not suggest any reason why Cook and Glenn could not succeed in collecting their judgments against Fay & Perles, the party with whom Cook and Glenn purport to have executed contracts, in the unlikely event they prevail in those proceedings.

---

[5] There is also no basis under NY law for the contingent percentage fees that Cook and Glenn seek given their termination as counsel long ago. As the *Campagnola* court held:

> It is well established that notwithstanding the terms of the agreement between them, a client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney. Where that discharge is without cause, the attorney is limited to recovering in quantum meruit the reasonable value of the services rendered. Where the discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement.

76 N.Y.2d 38 at 43-44(citations omitted); cf. *Robinson v. Nussbaum*, 11 F. Supp. 2d 1, 5 (D.D.C. 1997) (generally, an attorney discharged before settlement or judgment may not recover from his former client the full amount stated in the contingency fee contract, but instead is limited to a quantum meruit recovery); *King & King, Chartered v. Harbert Int'l., Inc.*, 503 F.3d 153, 156-57 (D.C. Cir. 2007) ("an attorney terminated for good cause cannot recover a contingent fee").

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Page 5

In the absence of a proper charging lien, Cook's and Glenn's submissions in this Court are nothing more than an improper effort to obtain a *prejudgment* attachment against the attorneys they claim owe them money under separate contracts. Even if Cook and Glenn were proper parties before this Court, which they clearly are not, the prejudgment attachment procedure is not available to them under *any* circumstances.[6] CPLR 6201 authorizes prejudgment attachment only in a pending action for money damages where a plaintiff shows "a viable cause of action and the probability that it will succeed on the merits, that one or more grounds exist for attachment as set forth in CPLR 6201, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." *VisionChina Media Inc. v. S'holder Representative Servs., LLC,* 109 A.D.3d 49, 59, 967 N.Y.S.2d 338, 345 (1st Dep't 2013). The party seeking pre-judgment attachment must also "demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment." *Id.,* 109 A.D.3d at 60, 967 N.Y.S.2d at 345-46. Neither Cook nor Glenn has satisfied any of these requirements for attachment.

Attachment is a drastic remedy because it deprives defendants of the free use of their property *before* a final adjudication on the merits of their liability. Thus, New York courts have consistently construed the attachment statutes narrowly in favor of the parties against whom the remedy is invoked. *See, e.g., Penoyar v. Kelsey,* 150 N.Y. 77, 80, 44 N.E. 788, 789 (1896); *Michaels Electrical Supply Corp. v. Trott Electric Inc.,* 231 A.D.2d 695, 695, 647 N.Y.S.2d 839, 840 (2d Dep't 1996); *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.,* 5 Misc.3d 285, 300-01, 783 N.Y.S.2d 758, 773 (Sup. Ct. N.Y. Co. 2004). Accordingly, this Court should not delay the distribution of the QSF funds based on the baseless speculation of Cook and Glenn that they will ultimately prevail on their claims, particularly because they provide no evidence that they will be left without adequate means to collect their judgments. *See VisionChina, supra,* 109 A.D.3d at 60, 967 N.Y.S.2d at 345-46 (trial court abused its discretion in granting an order of attachment pursuant to CPLR 6201(1) where the plaintiff failed to adequately demonstrate a risk that the defendant would not be able to satisfy a judgment).

In sum, Cook and Glenn improperly seek to inject themselves into a case in which they do not belong, involving assets against which they have no valid claim. Their unsubstantiated claims for fees against some of the Peterson Plaintiffs' lawyers lie elsewhere, not in this case. For all of the foregoing reasons, this Court should deny in their entirety Cook's and Glenn's requests to delay the distribution of the QSF funds.

---

[6] "[A]ttachment of property for the purpose of securing satisfaction of the judgment to be obtained is subject to the law of the state in which the district court is held." *Ashland Oil Inc. v. Gleave,* 540 F. Supp. 81, 83 (W.D.N.Y. 1982) (citing Fed. R. Civ. Pro. 64(a), which provides in relevant part that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

Page 6

**UBAE's Request To Escrow Its Attorney's Fees**

UBAE has submitted a letter requesting that the Trustee of the QSF be directed to escrow an amount from the QSF funds sufficient to satisfy the Supplemental Judgment for costs and attorneys' fees awarded by this Court in *Peterson v. Islamic Republic of Iran, et al.*, Case No. 13-cv-9195 ("*Peterson II*") in the amount of $70,128.40. Notwithstanding that many Plaintiffs in *Peterson II* are not parties in this matter, counsel for the Peterson Plaintiffs have offered to escrow the full amount of the Court's Supplemental Judgment in *Peterson II* (i.e., $70,128.40), pending the outcome of the appeal of that judgment. Counsel for UBAE has rejected that offer and has demanded an escrow in the amount of $450,000 (four hundred fifty thousand dollars), an amount 642% larger than UBAE's judgment. UBAE has offered no explanation of how its attorneys' fees have managed to multiply to that extent on appeal of the same narrow issue it addressed in the District Court – whether the release the Peterson Plaintiffs granted in *Peterson I* covers the fraudulent conveyance claims they assert in *Peterson II*. While the Peterson Plaintiffs have no objection to escrowing the $70,128.40 previously awarded by this Court, they cannot consent to escrowing the excessive amount requested by UBAE, which is patently disproportionate to any imaginable reasonable fee for the appeals.

Respectfully submitted,

*[signature]*

Liviu Vogel

cc: All Counsel on ECF List (via ECF filing)

## EXHIBIT 10

**Memorandum of Law in Support of Glenn's Motion to Intervene in Turnover Action**

Steven G. Storch
Edward P. Dolido
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Proposed Intervenor-Plaintiff*
*Jay Glenn*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*,<br><br>                    Plaintiff,<br><br>    - against -<br><br>ISLAMIC REPUBLIC OF IRAN, *et al.*,<br><br>                  Defendants. | Case No. 10-cv-4518 (KBF) |
| JAY GLENN,<br><br>                Intervenor-Plaintiff,<br><br>    - against -<br><br>STANLEY SPORKIN, as Trustee of the Peterson § 468B Qualified Settlement Fund,<br><br>                Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF JAY GLENN'S**
**MOTION TO INTERVENE AND FOR ADDITIONAL RELIEF**

# **TABLE OF CONTENTS**

**PAGE**

Table of Authorities ................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ....................................................................................2

    I.     THE DC ACTION ......................................................................................2

    II.    THE DECLARATORY JUDGMENT ACTION AND PRIOR
          INTERVENTION MOTION ....................................................................4

    III.   THE INSTANT ACTION ...........................................................................5

ARGUMENT ............................................................................................................6

    I.     GLENN IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT ....6

          A.  Glenn's Motion is Timely .................................................................7

          B.  Glenn Has a Direct, Financial Interest in the QSF Trust ......................9

          C.  Glenn's Interest Will Be Impaired if the Relief Sought Herein is Denied ..........9

          D.  The Peterson Plaintiffs' Counsel in the Instant Action Cannot
              Adequately Represent Glenn ..............................................................9

    II.    ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE .............9

CONCLUSION........................................................................................................10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
386 U.S. 129 (1967)......................................................................................... 6

*John v. Sotheby's, Inc.*,
141 F.R.D. 29 (S.D.N.Y. 1992) .......................................................................... 6

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
471 F.3d 377 (2d Cir. 2006)................................................................................ 7

*Peterson v. Islamic Republic of Iran*,
264 F. Supp. 2d 46 (D.D.C. 2003) ...................................................................... 2

*Peterson v. Islamic Republic of Iran*,
290 F.R.D. 54 (S.D.N.Y. 2013) ................................................................... 7, 10

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972)............................................................................................ 9

*U. S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978)................................................................................ 6

**State Cases**

*Wolf v. Sherman*,
682 A.2d 194 (D.C. App. 1996)........................................................................ 9

**Statutes & Rules**

New York Judiciary Law § 475 ................................................................................... 9

Federal Rules of Civil Procedure 24 ................................................................... passim

Jay Glenn ("Glenn") respectfully submits this memorandum of law, together with his proposed Complaint in Intervention (the "Complaint") and the accompanying declaration of Steven G. Storch dated June 1, 2016 (the "Storch Decl."), in support of his motion for an order permitting him to intervene in this action pursuant to Fed. R. Civ. P. 24(a) and/or (b).

## PRELIMINARY STATEMENT

Glenn was counsel for 103 of the Peterson Plaintiffs and represented them in damages proceedings pursuant to which they were awarded judgments aggregating over $300 million, which judgments will imminently be satisfied, in part, from the Peterson §468B Qualified Settlement Fund (the "QSF Trust") established by this Court. By reason of having represented such plaintiffs pursuant to engagement agreements by which he is entitled to portions of any amounts collected on their judgments, Glenn has a charging lien against the respective portions of the QSF Trust allocated to such plaintiffs.

Accordingly, by this motion, Glenn seeks to intervene in this action to protect his interest in the QSF Trust and to secure the fees to which he is contractually entitled. Importantly, the fees to which Glenn is entitled are a subset of the fees claimed by lead counsel Thomas Fay and Steven Perles (sometimes acting as "Fay & Perles") and, therefore, granting him leave to intervene to assert the claim set forth in his accompanying Complaint in Intervention should not reduce or delay the amounts otherwise to be distributed to the individual plaintiffs from the QSF Trust. Further, intervention for this purpose is required by the terms of this Court's July 9, 2013, Order (Dkt. No. 462) inasmuch as that Order prohibits any claim from being asserted against the QSF Trust in any other jurisdiction or tribunal (*id.* ¶ 10) and resolving Glenn's entitlement to his fees in this action will serve the interests of judicial economy by avoiding a multiplicity of proceedings.

1

## Factual Background

### I.    THE DC ACTION

Thomas Fortune Fay and Steven R. Perles (acting through their respective firms) served as lead counsel for certain plaintiffs in the action brought in the United States District Court for the District of Columbia to seek redress on behalf of the Marines injured or killed (and their respective families) in the suicide bombing of the Marine Barracks in Beirut, Lebanon, on October 23, 1983. *Peterson, et al., v. Islamic Republic of Iran, et al.*, Case No. 01-cv-2094 (D. D.C.) (as consolidated, the "DC Action").  By Order in the DC Action dated May 30, 2003, United States District Judge Royce C. Lamberth entered default judgments in favor of plaintiffs as to all issues of liability and Ordered that Special Masters would be appointed to assess and report on damages to be awarded to the respective individual plaintiffs.  Storch Decl. Exhibit 1; *see also Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003) (accompanying memorandum opinion).

Thereafter, Thomas Fay and Steven Perles, acting as "The Law Offices of Fay & Perles" (hereinafter, "Fay & Perles") retained Glenn to represent individual plaintiffs "in the prosecution of [plaintiffs'] claims for compensatory damages," including being "responsible for preparation of all witnesses for hearing, presentation of all evidence to the Court or Special Master and presentation of all records and medical reports to the Court."  *See* the engagement agreement (the "Glenn Engagement Agreement") annexed as Exhibit A to his proposed Complaint.

Fay & Perles represented in the Glenn Engagement Agreement that each family that had retained them had executed a contingent agreement [sic] providing for attorneys' fees consisting of 33 1/3% of the total gross recovery before deduction of any fees, liens or charges of any type and an amount equal to the necessary expenses incurred.  The Glenn Engagement Agreement provided that Glenn "shall be paid a fee consisting of the following: (1) 3% of the gross amount collected from the Defendants with respect to compensatory damages as to each client referred to

2

[Glenn]; and (2) an amount equal to the necessary expenses incurred by [Glenn] in the preparation, prosecution and administration of the case.  This fee is contingent upon collection and to the extent of collection only."

Fay & Perles thereafter referred 63 clients to Glenn and Glenn prosecuted their claims for damages before the Special Master.  Those clients are identified on Exhibit B to the Complaint and were, as a result of Glenn's efforts, awarded aggregate damages of $197,991,881 as memorialized in the judgment entered in the DC Action on September 7, 2007.  Storch Decl. Exhibit 2.

During the course of representing those 63 plaintiffs, Glenn identified an additional 40 potential plaintiffs who were not represented in the DC Action.  Thomas Fay told Glenn that if he referred such potential plaintiffs to Fay & Perles, Glenn would receive one-third of the fees those clients would pay.  (Complaint ¶ 10.)  In reliance upon that promise, Glenn had such new clients execute Fay & Perles' standard engagement agreement and, in most if not all cases, Glenn executed the engagement agreement on behalf of Fay & Perles and also executed it individually as well.  *Id.* Glenn was fully authorized to execute the engagement agreements on behalf of Fay & Perles.  *Id.* The clients expressly agreed that Glenn was entitled to one-third of the contingent fees due to Fay & Perles.  *Id..*  Glenn's 40 clients that he referred to Fay & Perles in this manner are identified on Exhibit C to his Complaint.

Glenn thereafter prosecuted the damages claims on behalf of the 40 plaintiffs identified on Exhibit C to his Complaint and, due to his efforts, they were awarded an aggregate of approximately $111,750,000 in damages as memorialized in the judgment entered in the DC Action on September 7, 2007.  Storch Decl. Exhibit 2.

Immediately after the Special Master issued a report and recommendation as to the damages sustained by each of the 103 plaintiffs Glenn represented, Glenn forwarded the report to

Fay & Perles together with his computation as to the amount that would be due to Glenn if and when the plaintiff collected in full upon his or her such judgment. Fay & Perles never objected to or disputed Glenn's fee calculations. *See* Complaint ¶ 13.

Pursuant to his fee agreements, if the 103 plaintiffs he represented in the DC Action fully collect their judgments, Glenn will be owed $22,263,181.43. Glenn has not been paid any part of the fees due him with respect to the 103 plaintiffs he represented in the DC Action and has incurred $15,288.56 in unreimbursed out-of-pocket expenses incurred in connection with his representation of those plaintiffs. Complaint ¶¶ 9, 12, 15, 20.

On June 1, 2016, Glenn filed and served via ECF an Amended Notice of Charging Lien in the DC Action. Complaint ¶ 16 and Exhibit D thereto.

## II. THE DECLARATORY JUDGMENT ACTION AND PRIOR INTERVENTION MOTION

In or about March 2010—approximately two-and-one-half years after the judgment was entered in favor of Glenn's clients in the DC Action, Thomas Fay told Glenn that Fay & Perles would not honor the agreement to pay him 3% of the judgments collected by the 103 plaintiffs he represented in the DC Action and the agreement to pay him 11.111% (*i.e.*, one-third of the one-third fee that Fay & Perles would receive) of the judgments that 40 of those 103 plaintiffs collected. *See* Complaint ¶ 14.

On November 3, 2010, Glenn commenced an action in this Court (the "Declaratory Judgment Action") against Fay & Perles, Thomas Fay, Steven Perles, Allen L. Rothenberg, and Anthony J. LaSpada seeking a declaratory judgment affirming Glenn's charging lien on any recovery by the 103 plaintiffs he represented in the DC Action. On July 29, 2011, that action was dismissed, without prejudice, on jurisdictional and venue grounds because, at that point, the QSF Trust had not yet been created and funded (nor had this Court's July 9, 2013, "Turnover Judgment"

4

(Dkt. No. 462) awarding plaintiffs the assets held in the QSF Trust been issued). Therefore, there was no *res* upon which the charging lien could attach nor any basis for *in rem* jurisdiction. *See* Storch Decl. Exhibit 3 at pp. 13-15.

On March 22, 2011, Glenn sought to intervene in the miscellaneous proceeding related to this action (18-mc-302 (BSJ)) to ensure that assets remained in this jurisdiction sufficient to satisfy the lien he sought to have declared in his Declaratory Judgment Action. However, that motion was denied on various grounds by Order of the Honorable Barbara S. Jones, entered November 7, 2011 (Dkt. No. 145), including because the Declaratory Judgment Action had already been dismissed, and because, at that point, there had not yet been any recovery on behalf of the Peterson Plaintiffs. Therefore, the Court found that Glenn's interests were still being adequately represented by the Peterson Plaintiffs. *See* Storch Decl. Exhibit 4 at pp. 4-5.

## III.     THE INSTANT ACTION

By Order entered on July 9, 2013 (Dkt. No. 460), this Court created the QSF Trust for purposes of holding funds belonging to the defendants in the DC Action and ultimately distributing them to judgment creditors including the 103 plaintiffs Glenn represented in the DC Action. By Order dated July 9, 2013 (Dkt. No. 462), this Court entered a judgment (the "Turnover Judgment") in favor of the plaintiffs (including the 103 plaintiffs represented by Glenn in the DC Action) awarding them the assets held in the QSF Trust and enjoining them from pursuing any claim to those assets in any other jurisdiction.

On May 24, 2016, after the Second Circuit's decision affirming the Turnover Judgment was affirmed by the Supreme Court, and the mandate was issued (Dkt.No. 616), counsel for the Peterson Plaintiffs in this action filed a letter motion for an order directing the distribution of the QSF Trust "in accordance with the terms of the Cooperation Agreement and in writing and in written agreements between the Plaintiffs and other judgment creditors of Iran." (Dkt. No. 617.)

On May 26, 2016, Glenn filed a letter with the Court opposing the letter motion seeking distribution of the funds in the QSF Trust on the grounds that his interests had diverged from that of counsel representing the Peterson Plaintiffs because any distribution to such plaintiffs and their counsel herein, before his charging lien was enforced, would destroy his ability to enforce his charging lien (ECF No. 625). He specifically stated that as long as an amount sufficient to pay his fees and expenses was withheld from distribution to Fay & Perla (and their associated counsel), he had no objection to the remainder being promptly distributed to plaintiffs. *Id.*

This motion to intervene followed.

## ARGUMENT

## I.    GLENN IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Fed. R. Civ. P. 24(a)(2) provides:

> [T]he court must permit anyone to intervene who … claims an interest relating to the property … that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Second Circuit has held that Fed. R. Civ. P. 24(a) should be construed liberally.  *U. S. Postal Serv. v. Brennan*, 579 F.2d 188, 193 n.2 (2d Cir. 1978) ("The policy of liberalizing the right to intervene … is reflected in the change of language of Rule 24(a) in 1966").  In addition, courts have held that intervention as of right is particularly appropriate in an interpleader action, such as this effectively is, because "a traditional basis for intervention [as of right] derives from interpleader practice; when a number of persons possess claims to a fund which are or may be mutually exclusive, intervention is allowed by a claimant." *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 146 (1967); *see also John v. Sotheby's, Inc.*, 141 F.R.D. 29, 34-35 (S.D.N.Y. 1992).

To intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), a party must demonstrate:

6

      (a)      the application is timely;

      (b)      it claims "an interest relating to the property … which is the subject matter of the action;"

      (c)      it is situated such that "disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interests;" and

      (d)      its interest is "not adequately protected by an existing party."

*Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) (the "*Wultz Decision*") (citations omitted).

For the reasons set forth below, Glenn satisfies each of the foregoing requirements.

**A.**      **Glenn's Motion is Timely**

The timeliness of an intervention is a matter left to the district court's discretion. In determining timeliness, a court may consider, *inter alia*:

      (a)      "the length of time the applicant knew or should have known of its interest before making the motion,"

      (b)      "prejudice to the existing parties resulting from the applicant's delay;"

      (c)      "prejudice to the applicant if the motion is denied;" and

      (d)      "the presence of unusual circumstances militating for or against a finding of timeliness."

*Wultz Decision*, 290 F.R.D. at 57 (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)). All of these factors favor intervention here.

As noted above, Glenn has long tried to assert his interest in the assets that are now held in the QSF Trust but those attempts had been rebuffed in large part because they were premature before the QSF Trust was created and the Turnover Judgment entered. *See* Storch Decl. Exhibit 3 (holding that there was not yet any *res* to support *in rem* jurisdiction) and Storch Decl. Exhibit 4 at pp. 4-5 (holding that with the dismissal of his Declaratory Judgment Action in Storch Decl. Exhibit 3, "the underlying rationale for Glenn's application to intervene . . . no longer exists"),

and Storch Decl. Exhibit 4 at p. 4 (holding that until the Peterson Plaintiffs recovered in this action, Glenn's interest was aligned with theirs and, therefore, was adequately being represented).[1]

Even after the Turnover Judgment was entered, until it was affirmed by the Supreme Court, there was no assurance that it would be upheld and that the QSF Trust would in fact constitute a "recovery" on behalf of the plaintiffs that Glenn represented and from which he is entitled to his contingent fees. Once the Supreme Court affirmed the Turnover Judgment and the Second Circuit's mandate issued on May 24, 2016, Glenn moved quickly to intervene.

Nor is there any prejudice to any party from the lapse of one-week before seeking to intervene as this Court has not yet ordered any distributions from the QSF Trust. Indeed, even apart from issues of timeliness, there is no prejudice—and in fact there is benefit—to the parties from the intervention motion itself. Glenn's proposed Complaint in Intervention does not seek to diminish or delay distribution of funds to the plaintiffs themselves, but only to adjudicate his claim with respect to the portion of the QSF Trust that would otherwise be distributed to their counsel. Moreover, such counsel would actually benefit from Glenn's intervention as it would enable Glenn's entitlement to his fees to be resolved quickly in this action, where there are funds to satisfy it, instead of having to litigate the issue less efficiently in separate actions where the result potentially would be personal judgments against the counsel that received distributions from the QSF Trust.

For the same reason that intervention would benefit the other counsel who are obligated to share their fees with Glenn, denial of his motion would prejudice Glenn because distribution of

---

[1] In the Order denying Glenn's motion to intervene prior to entry of the Turnover Judgment, Judge Jones also held that his application was untimely when measured from Fay & Perla's statement that Glenn would not receive all the money due to him if the Peterson Plaintiffs collected their judgment. Storch Exhibit 4 at p. 3. However, as discussed in the text, that is no longer the appropriate point from which to measure timeliness after entry and affirmance of the Turnover Judgment.

the QSF Trust would evade his charging lien, and compel him to bring separate actions to obtain personal judgments which may not be easily enforceable.

### B.    Glenn Has a Direct, Financial Interest in the QSF Trust

Glenn has a direct financial interest in the property to be distributed by the QSF Trust by virtue of his contingency fee arrangement and the resulting judgment entered in favor of his clients. Under both New York law (Judiciary Law § 475) and District of Columbia law (*see, e.g., Wolf v. Sherman*, 682 A.2d 194 (D.C. App. 1996)) those facts give rise to a charging lien against his clients' respective shares of the QSF Trust.

### C.    Glenn's Interest Will be Impaired if the Relief Sought Herein is Denied

As noted above, denial of Glenn's motion to intervene will deny him access to the funds in the QSF Trust against which his charging lien attaches and thereby impair his ability to collect the fees and expenses to which he is contractually entitled.

### D.    The Peterson Plaintiffs' Counsel in the Instant Action Cannot Adequately Represent Glenn

An intervenor's burden of showing its interests may not be adequately represented is, generally speaking, "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Glenn easily meets this burden. The Peterson Plaintiffs' counsel in the instant action cannot adequately represent Glenn because, as alleged in his Complaint (at ¶ 14), they have already denied his entitlement to the fees and expenses to which he is entitled by contract. They have no incentive to protect his interests because denial of his right to fees means "a bigger slice of the pie" for them.

## II.    ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE

Alternatively, Glenn should be permitted to intervene under Rule 24(b), which provides that "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact," subject to the limitation that "[i]n exercising its

discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

In evaluating requests to intervene under Rule 24(b), courts typically consider the same four factors that apply to requests to intervene as of right under Rule 24(a). *Wultz Decision*, 290 F.R.D. at 57 (citations omitted).

The reasons supporting Glenn's request to intervene as of right also supports his request to intervene permissively under Rule 24(b). The amount sought by Glenn will not impact distributions to the Peterson Plaintiffs, only their counsel. Moreover, as noted above, Glenn's interests would be significantly prejudiced without the relief sought herein and he cannot be adequately represented by the Peterson Plaintiffs' counsel in the instant action.

## CONCLUSION

For the foregoing reasons, this Court should grant Glenn's motion and permit him to intervene while directing the Trustee of the QSF Trust to hold sufficient funds to satisfy Glenn's charging lien until Glenn's entitlement to those funds is determined.

Dated: New York, New York
June 1, 2016

STORCH AMINI & MUNVES PC

By: /s/Steven G. Storch
    Steven G. Storch
    Edward P. Dolido
    Jeffrey Chubak
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
Fax: (212) 490-4208
sstorch@samlegal.com

*Attorneys for Proposed Intervenor-Plaintiff
Jay Glenn*

10