UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY GLENN,<br><br>　　　　　　　　　Plaintiff,<br><br>- against -<br><br>THOMAS FORTUNE FAY,<br>FAY LAW GROUP, P.A.,<br>STEVEN R. PERLES, and<br>PERLES LAW FIRM, P.C.,<br><br>　　　　　　　　　Defendants. | Case No. 16-cv-02498 (RCL)<br><br>Judge Royce C. Lamberth<br><br>**CORRECTED[1] DECLARATION<br>OF STEVEN G. STORCH** |

STEVEN G. STORCH declares and states as follows pursuant to 28 U.S.C. § 1746:

1.　　I am an Officer of Storch Amini PC, counsel for Plaintiff Jay Glenn ("Glenn") herein. I make this declaration in support of Glenn's motion for an order of sequestration or injunction securing disputed funds pending the Court's adjudication of Glenn's claims. I have personal knowledge of the facts and circumstances set forth herein.

2.　　I hereby certify, pursuant to LCvR 7(m), that before filing this motion I have conferred with Defendants' counsel in a good-faith effort to determine whether there is any opposition to the relief sought and to narrow the issues of disagreement. As described below, Defendants will oppose this motion.

---

[1] In the declaration I made, and which was filed on April 2, 2018 (Docket No. 35-2), I inadvertently misidentified Steven R. Perles as Mr. Altemus' client in Paragraph 8. This Corrected Declaration changes that error and nothing else.

1

3. Following the issuance and filing of the Judgment and Memorandum Decision of the United States Court of Appeals for the District of Columbia Circuit on February 16, 2018, in Glenn's appeal from the decision of this Court quashing his asserted charging lien filed in *Peterson v. Islamic Republic of Iran*, 1:01-cv-02094-RCL (D.D.C.) (the "*Peterson* Action") (a true and correct copy of the Circuit Court's decision is annexed hereto as **Exhibit A**), I made inquiry of Defendants' counsel to confirm that they were complying with D.C. Rule of Professional Responsibility 1.15(d), by sequestering that portion of the attorneys' fees they were receiving in the *Peterson* Action, as the Circuit Court noted that counsel had represented they were doing during argument of the appeal (*see* Exhibit A at p. 6). Based on the representation of the Qualified Settlement Fund Trustee that approximately 50% of attorneys' fees have already been distributed, Messrs. Fay and Perles have already *each* received approximately $60-70 million.

4. At the same time, I asked whether Defendants were disputing whether they owed Glenn *anything* from the fees they were receiving in the *Peterson* Action because I understand that, more than 10 years ago, Glenn had documented to Defendants the $15,289 he spent out-of-pocket as a damages attorney, and presumed that the Defendants were not contesting their obligation to pay at least that. And I expressed my concern that they were holding hostage the amounts that they could not dispute owing him as a negotiating tactic.

5. The responses I received were entirely unsatisfactory—Defendants would not confirm that they were holding any sums in escrow or explain why Glenn has not been paid anything.

6. In further discussions with counsel for the parties, we have agreed to attempt to mediate this dispute before a Magistrate Judge, and a request for such appointment has been, or imminently will be, made to the Court. Inasmuch as Judge Forrest, in the New York Turnover

Proceeding,[2] has not yet directed the QSF Trustee to distribute the remaining attorneys' fees, and with mediation (hopefully) imminent, it appeared that it might be unnecessary to impose on this Court to use its "considerable equitable powers" that the D.C. Circuit intimated were available to secure Glenn's claim pending trial (*see* Ex. A at p. 7), notwithstanding counsel's initial refusal to confirm that they had escrowed the disputed funds as they had represented to the Circuit.

7. On March 16, 2018, I sent a letter to Defendants' counsel seeking their consent to move for a status conference before this Court in order to seek the Court's guidance as to how best to proceed in light of both the Circuit Court of Appeals' decision and the motions pending before Judge Forrest in the Southern District of New York. A true and correct copy of that letter is annexed hereto as **Exhibit B.**

8. Timothy Altemus responded to my letter by telephone and informed me that his client, Fay,[3] would not agree to a request for a status conference with this Court. Then, despite refusing to escrow the disputed funds, and despite refusing to agree to a conference with this Court, and despite his counsel expressly discussing mediation of this dispute with me, on March 28, 2018, Perles (acting *pro se*) filed a motion in the New York Turnover Proceeding that made it clear that Glenn remained at risk—Perles moved to have the QSF Trustee immediately distribute all attorneys' fees due to Fay and to Perles, and to other counsel, except for disputed amounts which he wants held in escrow, and he not only failed to identify Glenn's fees as a "disputed amount," but failed even to identify Glenn as a damages attorney. Further, despite his counsel having conveyed his agreement to mediate with Glenn, he refuses to include Glenn in the court-ordered mediation he wants to have with the other damages attorneys. True and correct copies of Steven

---

[2] *Peterson v. Islamic Republic of Iran,* No. 10 Civ. 4518 (KBF) (S.D.N.Y.).
[3] *See* pg. 1, n.1, *supra*.

Perles' *pro se* memorandum of law in support of that motion, as well as his declaration in support of same (with exhibits), both dated March 28, 2018 (ECF Nos. 911-1, 911-2 and 911-3) is annexed hereto as **Exhibit C**.

9.      Meanwhile, it turns out that Perles's counsel has been telling counsel for the QSF Trustee and the Southern District Special Master the precise opposite of what this Court and the Court of Appeals were told when Fay & Perles sought to quash Glenn's lien.  At the same time that Fay & Perles were successfully convincing this Court and the Court of Appeals that Glenn did not have an attorney charging lien because his clients—the *Peterson* plaintiffs—had never expressly agreed that Glenn would be paid out of any recovery, Perles was telling counsel for the QSF Trustee (and the Special Master appointed by the District Court) that the real clients of a "damages attorney" like Glenn were actually Fay & Perles themselves (and in Glenn's case, those "clients" indeed had expressly agreed that he would be paid out of the attorneys' fees they themselves collected, *see* Exhibit E-1 to Glenn's accompanying declaration). *See* the May 1, 2017, letter signed by both Douglas M. Bregman and Geoffrey T. Hervey, of Bregman, Berbert, Schwartz & Gilday, LLC, to Shalom Jacob of Locke Lorde, counsel to the Trustee, a true copy of which (without its exhibits) is annexed hereto as **Exhibit D** as filed in the Turnover Proceeding as Exhibit 12 to the Report and Recommendation of the Special Master dated December 4, 2017 [ECF No. 869-12] at pp. 21-22 of 35.  The assertion of Fay & Perles that they were a damages attorney's "real" clients was supported by an opinion from "an expert ethicist, Mr. Jack Marshall of ProEthics, Ltd.," but, curiously, both Mr. Marshall's opinion (Exhibit 13 to the letter) and his CV (Exhibit 12) were "redacted" and not included with the copy of the Special Master's report that was publicly filed [ECF 869-12].

10. While Glenn is moving on notice to Defendants in the expectation that there will be time for the Court to address this application in an orderly fashion, the QSF Trustee could be directed to release the disputed funds to Fay & Perles at any time. Accordingly, Glenn respectfully requests that this be set down for hearing at the earliest practicable date and reserves the right to seek emergency relief should circumstances change.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on April 9, 2018.

_____
Steven G. Storch